UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| PRODUCTIVE MD, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 3:12-cv-00052 |
| v. | ) |
| | ) Judge Aleta A. Trauger |
| AETNA HEALTH, INC, and | ) |
| AETNA LIFE INSURANCE COMPANY, INC., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

The defendants have filed a Motion to Dismiss, or in the Alternative, for a More a Definite Statement (Docket No. 12) ("Motion"), to which the plaintiff has filed a Response in opposition (Docket No. 14), and the Defendant has filed a Reply (Docket No. 15).

## BACKGROUND

### I. Procedural History and Complaint Allegations

On December 22, 2011, the plaintiff, Productive MD, LLC ("Productive MD"), filed suit against the defendants, Aetna Health, Inc. and Aetna Life Insurance Company, Inc. (collectively, "Aetna"), in Tennessee state court. (Docket No. 1, Ex. A ("Complaint").) Aetna then removed the matter to this court, asserting that this court has (1) original subject matter jurisdiction because the claims arise under and are therefore preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*; and (2) diversity jurisdiction. (Docket No. 1.)[1]

---

[1] Productive MD alleges that it is a citizen of Tennessee and that defendant Aetna Life Insurance Company is a Connecticut corporation. Although the Complaint also alleges that

1

According to the Complaint, Productive MD is a company that provides cardiopulmonary exercise tests, pulmonary function tests, resting metabolic tests, and other studies to patients when ordered by their primary care physicians. Aetna provides health insurance coverage to Tennessee insureds and handles the processing, adjudication, denial and/or payment of medical claims by those insureds. The plaintiff also alleges that Aetna is "in the business of contracting as the third-party administrator for claims for some self-insured companies, and handle[s] the processing, adjudication, denial and/or payment of medical claims for such companies." (Compl. ¶ 8.)

With respect to Aetna's health insurance coverage, Productive MD is an "out of network" provider. As an "out of network" provider, Productive MD charges reimbursement rates that are higher than those charged for similar service providers within Aetna's network.[2]

Productive MD alleges that patients on whom it performs tests have assigned their rights to payment under Aetna insurance policies to Productive MD. In 2004, Aetna consistently paid for the majority of all billed charges that Productive MD submitted to Aetna for payment. At an unspecified point after 2004, Aetna began to refuse to pay for some of Productive MD's services. By 2007, Aetna paid only about 27% of all billed charges that Productive MD submitted for

---

defendant Aetna Health, Inc. is a citizen of Tennessee (Compl. ¶ 2), which might otherwise defeat diversity, Aetna's removal papers attached merger documents indicating that Aetna Health, Inc. merged into Aetna Health, Inc. (PA), a Pennsylvania corporation with a principal place of business in Pennsylvania. (Docket No. 1, Ex. B). Productive MD has not challenged these representations and the parties have not addressed the issue of subject matter jurisdiction in their briefs.

[2]Although not stated in the Complaint, the court presumes that in-service providers enter into contractual arrangements with Aetna that define the rate at which Aetna will reimburse those providers.

payment. In unspecified "subsequent years," Aetna paid less than 2% of charges billed to it by Productive MD.[3] Productive MD alleges that, as of November 2011, Aetna had wrongfully failed to pay approximately $300,000.00 in claims. The Complaint does not specify any efforts by Productive MD to determine why these claims were denied. However, it states that Aetna denied an unspecified number of claims on the basis that "further review of the claim [is] necessary" and that Aetna offered unspecified "meritless excuses" relative to other claims. The Complaint does not state that Productive MD undertook any efforts to appeal these determinations.

Productive MD alleges that Aetna's actual motive in denying the claims was to force Productive MD into Aetna's provider network at unreasonably low reimbursement rates. Productive MD also alleges that, as part of this effort to coerce Productive MD into a network contract, Aetna communicated with Productive MD's referring physicians and patients, thereby interfering with Productive MD's existing contracts and prospective business relations. The Complaint does not provide any details concerning these alleged communications or the manner in which they allegedly interfered with Productive MD's existing or prospective business relations.

As a result of Aetna's failure to pay Productive MD's claims, Productive MD asserts the

---

[3]The tests performed by Productive MD apparently include both a "technical component" for the study itself, which Productive MD performs, and a "professional component" reflecting the interpretation of the tests by the treating physician. With respect to procedures performed by Productive MD on a particular patient insured by Aetna, Aetna allegedly paid the physician's "professional component" fee for interpreting the results of the test but denied payment to Productive MD for its "technical component" fee for administering that test. The Complaint does not state the frequency with which this practice occurred relative to claims that were denied.

following causes of action: (1) violation of the Tennessee Prompt Pay Act, Tenn. Code. Ann. § 56-7-109; (2) bad faith failure to pay first-party claims, in violation of Tenn. Code Ann. § 56-7-105 *et seq.*; (3) breach of contract; (4) unjust enrichment; (5) recovery in *quantum meruit*; and (6) interference with contractual relations and prospective business relations, in violation of Tenn. Code. Ann. § 47-50-109 and Tennessee common law. Productive MD demands a jury trial.

## II. <u>Gaps in the Record</u>

Although not stated in the Complaint, Productive MD asserts in its Response that there are actually "150+ claims" for which it seeks reimbursement from Aetna as assignee, although it has not specified the time frame in which these claims were submitted and/or denied. (Response at p. 4.) Although it is not entirely clear from the record, it appears that Productive MD may have sent a list of these claims to Aetna in January 2012.[4]

Neither the Complaint nor Productive MD's Response contains any of the following essential details: (1) the precise number of underlying claims at issue; (2) the number of underlying policies at issue (under which those claims purport to arise); (3) whether all, some, or none of the underlying policies are employer benefit policies subject to ERISA; (4) whether

---

[4]Productive MD alleges that this itemized list of claims is included as "Attachment A" to a document that, as of the date of the Complaint, was "to be served" on Aetna. (*See* Compl. ¶¶ 13, 14, 19.) That document was not attached to the Complaint and has not otherwise been presented to the court. In its Response, Productive MD states that Aetna "has had in its possession since January 12, 2012 a list of each wrongfully denied claim." (Response at p. 9.) This statement may reflect the recent transmittal of "Attachment A," or least the relevant information allegedly contained therein, to Aetna. Regardless, it is not clear from the Complaint or the parties' briefing whether Productive MD submitted an itemized list of these claims to Aetna before January 2012 or, for that matter, whether Productive MD brought its generalized grievances about Aetna's repeated denials to Aetna's attention in any manner before filing this lawsuit.

Productive MD sought to exhaust administrative remedies as to all, some, or none of the claims; (5) what procedure(s) the policies outlined with respect to administrative exhaustion; (6) what steps Productive MD took in compliance with those procedures, if any; (7) to the extent Productive MD did not exhaust its administrative remedies as to any claims, an explanation for why it did not do so and, if appropriate, why those efforts would have been futile; and (8) any non-conclusory allegations concerning the acts Productive MD believes give rise to the interference with contractual and business relations claim against Aetna, in a manner that does not "relate to" the underlying claims.

Furthermore, Aetna states in its Memorandum and Reply that, based on its interpretation of the Complaint allegations, *all* of the underlying policies at issue must be governed by ERISA. (*See* Motion at p. 4; Reply at p. 2, n.1.) It appears that Aetna simply bases this determination on its reading of ¶ 8 of the Complaint, which alleges that Aetna provides insurance to some "companies." (Motion at p. 4.)

### III. Aetna's Motion

Aetna has moved to dismiss the Complaint for failure to state a claim pursuant to Fed. R. Civ. P . 12(b)(6), or, in the alternative, for a more definite statement pursuant to Fed. R. Civ. P. 12(e). Aetna contends that all of the underlying policies are governed by ERISA. As such, Aetna argues that Productive MD's claims are preempted by ERISA and that, even if construed as ERISA claims, Productive MD's claims should be dismissed because it has not pled – nor could it – that it exhausted administrative remedies before filing suit.

In the alternative, Aetna moves the court to order Productive MD to file a revised complaint that alleges the identities of the insureds who allegedly assigned their claims to

Productive MD, any ERISA plans under which those insureds received health benefits, whether those plans allow for such an assignment, and whether Productive MD exhausted its administrative remedies under ERISA before filing suit. Aetna also moves the court to strike Productive MD's demand for a jury trial.[5]

## ANALYSIS

I. **Applicability of ERISA**

    A. **Preemption of State Law Claims Under ERISA**

ERISA provides a comprehensive federal statutory scheme that governs certain types of "employee benefit plan[s]." *See* 29 U.S.C. § 1003(a) (2011); *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 207-208, 124 S. Ct. 2488, 159 L. Ed. 2d 312 (2004).[6]

To further ERISA's purposes, ERISA includes expansive preemption provisions that are intended to ensure that employee benefit plan regulation would be exclusively a federal concern. *Aetna*, 542 U.S. at 208. State law claims may be preempted in either of two ways: (1) they are "completely preempted" if they duplicate, supplement, or supplant the civil enforcement remedies set forth in ERISA § 502; or (2) they are "expressly preempted" if they conflict with ERISA § 514, which states that any state law claims that "relate to" an employee benefit plan are

---

[5]There is no right to a jury trial on claims for benefits under ERISA § 502(a). *Daniel v. Eaton Corp.*, 839 F.2d 263 ("Although there may be actions under ERISA in which a jury trial is proper, in actions for recovery of benefits under section 502, there is no right to a jury trial") (internal quotation marks omitted).

[6]Certain types of employee benefit plans are not subject to ERISA, such as, *inter alia*, a governmental plan, a church plan, or an unfunded excess benefit plan. *See* 29 U.S.C. § 1003(b). Individual plans that are not sponsored by an employer or an employee organization representing employees are also not subject to ERISA. *See id.* § 1003(a) (stating that ERISA covers only "employee benefit plan[s]" established or maintained by an employer or an employee organization representing employees).

6

expressly preempted. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54, 107 S. Ct. 1549, 95 L. Ed. 2d 39 (1987) ("The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme [in § 502] would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA."); *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 582 (6th Cir. 2002) (quoting *Pilot Life*, 481 U.S. at 52) (stating that preempting state law causes of action "give[s] effect to Congress's intent that 'the civil enforcement provisions of ERISA § 502(a) be the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits.'"); 29 U.S.C. § 1144(a) (ERISA § 514(a)); *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 732, 105 S. Ct. 2380, 85 L. Ed. 2d 728 (1985) (noting "expansive sweep" of § 514(a) preemption clause). Thus, with respect to employee benefit plans subject to ERISA, claims by beneficiaries or their assignees for payment pursuant to such plans is generally preempted, subject to certain narrow exceptions. *See Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1275-76 (6th Cir. 1991) ("[V]irtually all state law claims relating to an employee benefit plan are preempted by ERISA"); *Caffey*, 302 F.3d at 582; *Tolton v. Am. Biodyne, Inc.*, 48 F.3d 937, 941-942 (6th Cir. 1995).[7] Ultimately, "[i]t is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit." *Cromwell*, 944 F.2d at 1276.

Here, Aetna contends that all of the underlying policies are governed by ERISA and that,

---

[7]State laws or state law claims may not be subject to preemption if their effect on employee benefit plans is merely tenuous, remote or peripheral, *see Cromwell*, 944 F.2d at 1276, or if they fall within (and are not exempted from) the "insurance saving clause" within ERISA § 514(b)(2)(A). *See Metro Life*, 471 U.S. at 733.

as a consequence, all of Productive MD's claims are completely and/or expressly preempted. Productive MD appears to concede that at least some of the policies may be governed by ERISA, but it does not specify how many. (Response at p. 4 ("The 150+ patients with unpaid claims referenced in Plaintiff's Complaint are <u>not</u> limited only to claims through employer sponsored plans.").) It is not clear whether Productive MD possesses those policies, whether Productive MD has asked Aetna for them, and/or whether Productive MD knows which of the policies are governed by ERISA.

Accordingly, the court has no way of knowing whether the underlying policies are governed by ERISA. Absent this information, the court cannot determine whether ERISA completely or expressly preempts any of Productive MD's state law claims, which would certainly impact the management of this case and could lead to the conversion and/or dismissal of many if not all of the pending claims.

Furthermore, Productive MD has asserted, without any supporting factual allegations, a state law claim for interference with contractual and business relations. Productive MD argues that, even if the underlying policies are in fact subject to ERISA, the tortious interference claim is not subject to preemption because that cause of action does not specifically "relate to" the underlying policies. For its part, Aetna has identified at least one decision in which this court found, at the motion to dismiss stage, that tortious interference claims were preempted by ERISA, although the circumstances were somewhat different than those presented here. *See Adkins v. Unum Provident Corp.*, 191 F. Supp. 2d 956, 959 (M.D. Tenn. 2002). The court has also identified cases both within and outside of the Sixth Circuit in which tortious interference claims were dismissed under potentially more analogous circumstances. *See, e.g.*, *Riverview*

*Health Inst., LLC v. Med. Mut. of Ohio*, No. 3:07-cv-354, 2008 WL 4449482, at *6-*7 (S.D. Ohio Sept. 30, 2008), *aff'd* 601 F.3d 505 (6th Cir. 2010); *Wayne Surgical Ctr., LLC v. Concentra Preferred Sys.*, Civil Action No. 06-928, 2007 WL 2416428, at *5 (D.N.J. Aug. 20, 2007); *Ctr. for Special Procedures v. Conn. Gen. Life Ins. Co.*, Civil Action No. 09-6566 (MLC), 2010 WL 5068164, at *2-*3 (D.N.J. Dec. 6, 2010). Here, Productive MD's allegations concerning the tortious interference claim are conclusory, making it difficult to determine whether that cause of action "relates to" the underlying claims for which Productive MD seeks reimbursement.[8]

### B. Assignment

It is well-settled within the Sixth Circuit that, if the underlying medical benefits plan permits assignment, an ERISA plan beneficiary may assign his or her right to payment to a medical services provider, who may then "stand in the shoes" of that individual in seeking payment for services. *See Cromwell*, 944 F.2d at 1277-78 (6th Cir. 1991) ("A health care provider may assert an ERISA claim as a 'beneficiary' of an employee benefit plan if it has received a valid assignment of benefits."). Here, the Complaint alleges that, as a general matter, "Defendant Aetna had a contractual obligation to pay for the studies rendered to its insureds. Those rights have been assigned to [Productive MD]." (Compl. ¶ 12.)

In its Memorandum, Aetna states that Productive MD failed to plead, *inter alia*, whether each underlying policy allowed for an assignment of benefits. It does not appear that either party has identified case law establishing whether Productive MD must plead that it received a valid assignment of benefits with respect to each underlying policy. Of course, if some of the

---

[8]Of course, to the extent the underlying policies are not governed by ERISA, the court may not need to reach to this question as to certain reimbursement claims.

underlying policies did not speak to assignment or contained a non-assignment provision, that fact could raise additional threshold issues.[9]

## C. Administrative Exhaustion

ERISA requires employee benefit plans to provide internal dispute resolution procedures for participants whose claims for benefits have been denied. *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 90 (6th Cir. 1997) (citing 29 U.S.C. § 1133(2)).[10] The employee benefit plans must provide adequate, written notice of the specific reasons for such denial and must afford claimants "a reasonable opportunity . . . for a full and fair review . . . of the decision denying the claim." 29 U.S.C. § 1133; *see also* 29 C.F.R. § 2560.503-1 (1987) (Department of Labor regulations governing plan remedies). Although ERISA itself is silent on the issue, the Sixth Circuit and various other circuits have interpreted ERISA as requiring a plan participant to exhaust his or her administrative remedies prior to commencing suit. *Ravencraft v. UNUM Life Ins. Co. of Am.*, 212 F.3d 341, 343 (6th Cir. 2000); *Weiner*, 108 F.3d at 90 (6th Cir. 1997). Administrative exhaustion under ERISA serves the following purposes: (1) to help reduce the number of

---

[9]With respect to any underlying policies that are not governed by ERISA, the same assignment issue would presumably arise.

[10]A valid assignee of the insured's rights to payment from the insurer, such as a medical provider with an assignment of benefits from a patient for services rendered, constitutes a "participant" for purposes of exhaustion. *See Weiner*, 108 F.3d at 90-91 (stating ERISA's requirements for internal dispute resolution procedures and finding that dismissal of podiatrist's ERISA claims for failure to exhaust administrative remedies was appropriate, where podiatrist was seeking to recover from insurers for services rendered to six beneficiaries who had assigned to him their right to benefits); *Barix Clinics of Ohio v. Longaberger Family of Cos. Grp. Med. Plan*, 459 F. Supp. 2d 617, 622-623 (S.D. Ohio 2005) (dismissing clinics' ERISA claims for failure to adequately plead exhaustion of administrative remedies, where plaintiff had not alleged sufficient facts to show that plan procedures did not comply with ERISA's requirements or that they had not been followed with respect to clinics' claims as assignee).

10

frivolous law-suits under ERISA; (2) to promote the consistent treatment of claims for benefits; (3) to provide a nonadversarial method of claims settlement; (4) to minimize costs of claims settlement for all concerned; (5) to enhance the ability of trustees of benefits plans to expertly and efficiently manage their funds by preventing premature judicial intervention in their decision-making processes; (6) to enhance the ability of trustees of benefit plans to correct their errors; (7) to enhance the ability of trustees of benefit plans to interpret plan provisions, and (8) to help assemble a factual record which will assist a court in reviewing the fiduciaries' actions. *Costantino v. TRW, Inc.*, 13 F.3d 969, 975 (6th Cir. 1994) (citing *Makar v. Health Care Corp. of Mid-Atlantic (CareFirst)*, 872 F.2d 80, 83 (4th Cir. 1989); *see also Weiner*, 108 F.3d at 90.

However, if resort to the prescribed administrative remedies is "futile or the remedy inadequate," a district court has discretion to excuse a participant from the exhaustion requirement under appropriate circumstances. *See Weiner*, 108 F.3d at 90; *Costantino v. TRW, Inc.*, 13 F.3d at 974-75; *Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 505 (6th Cir. 2004); *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 418 (6th Cir. 1998). "The standard for judging the futility of resorting to the administrative remedies provided by a plan is whether a clear and positive indication of futility can be made." *Coomer*, 379 F.3d at 505; *Fallick*, 162 F.3d at 419. Thus, "[a] plaintiff must show that "it is *certain* that his claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision." *Id.* (emphasis added).

Within the Sixth Circuit, a plaintiff must demonstrate that it exhausted administrative remedies in compliance with the underlying polices or provide detailed allegations establishing that further attempts at administrative relief would be futile. The standard for demonstrating

11

futility is significant. For example, in *Fallick*, the plaintiff contended that the insurer had breached its own insurance contracts by applying a "reasonable and customary" limitation on its reimbursement rates in a manner inconsistent with the contractual policy provisions. 162 F.3d at 411. The plaintiff spent nearly two years attempting to seek relief from the insurer, including a prolonged series of communications among the plaintiff, the State of New York Insurance Department, and the insurer. *Id.* at 414-17. Despite these efforts, which included repeated inquiries from the plaintiff and his counsel seeking to ascertain whether the defendant's reimbursement methodology conformed with the contracts, the defendant refused to provide more than a cursory explanation on that issue and repeated, multiple times, that it regarded the matter as closed. *Id.* The Sixth Circuit found that these extraordinary efforts, which did not precisely comply with the administrative exhaustion terms of the underlying policy, justified excusing the plaintiff from the exhaustion requirement, particularly where the plaintiff sought to challenge the defendant's entire methodology, not just individual claim payments. *Id.* at 419-421.

Although *Fallick* involved a motion for summary judgment, the Sixth Circuit and district courts within it have found that plaintiffs must plead sufficient allegations satisfying the exhaustion requirement and/or futility to survive dismissal. *See Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 718-19, 721-723 (6th Cir. 2005); *Weiner*, 108 F.3d at 90-91; *Barix,* 459 F. Supp. 2d at 622-623 (S.D. Ohio 2005). Here, Productive MD asserts that, even if the policies are governed by ERISA, it need not have pleaded administrative exhaustion or futility. The court disagrees with that assessment, for which Productive MD identifies no applicable legal authority. To the contrary, it would plainly frustrate the purposes of ERISA's administrative

exhaustion requirement if a plaintiff could survive a motion to dismiss simply by failing to state whether it exhausted administrative remedies in the first place when it was required to do so. Courts in other jurisdictions applying essentially the same standard as the Sixth Circuit have reached similar conclusions under analogous circumstances. *See, e.g.*, *Urulogy Ctr. Of Ga., LLC v. Blue Cross Blue Shield Health Plan of Ga., Inc.*, Civil Action No. 5:09-cv-161 (CAR), 2010 WL 797204, at *2-*3 (M.D. Ga. Mar. 4, 2010).

Here, it is not clear how many of the policies are subject to ERISA and its concomitant exhaustion requirement in the first place. To the extent that the claims are subject to ERISA, Productive MD's vague and conclusory statements concerning its efforts to resolve the dispute through administrative means appear to be insufficient as they are alleged. Also, to the extent that the claims are governed by ERISA but Productive MD believes that efforts to exhaust its administrative remedies with regard to those claims would be futile, Productive MD's Complaint allegations also appear to be insufficient. Regardless, absent additional basic information, the court does not know whether ERISA applies to any of the claims in the first place, let alone whether Productive MD was required to exhaust administrative remedies, attempted to do so, and/or may be excused from doing so, even based on sufficient factual allegations.

## II. Necessary Information

The Motion is largely premised on the assumption that all of Productive MD's claims are governed by ERISA, but the Complaint does not establish that fact one way or the other with respect to any of the underlying claims. Before taking any additional actions concerning the Motion, the court requires additional information from the parties. By March 29, 2012, the parties are **ORDERED** to file a joint statement that identifies a process for presenting the

13

following information to the court:

    (1)    The number of reimbursement claims at issue;

    (2)    The total number of insurance policies at issue with respect to those claims;

    (3)    Which of the underlying policies are governed by ERISA and which are not;

    (4)    A.    Whether each policy contains an assignment clause; and/or

              B    Whether, at this stage, Aetna intends to contest the assignment of any particular claim to Productive MD pursuant to those policies, identifying the contested claims/policies, if any.[11]

Of course, if the parties are in a position to present all of this information to the court without qualification by March 29, 2012, they are encouraged to do so. On the other hand, if the parties cannot agree on a process that will definitively establish all of this information – particularly as to whether ERISA applies to each particular underlying policy – the parties shall articulate to the court why that information cannot be ascertained without further court intervention.

In light of the various concerns identified in this Memorandum and Order, provision of this information may not represent the final step in the court's resolution of the pending Motion. However, the information will, at a minimum, enable the court to determine what additional steps may be necessary to do so. In that regard, to the extent that Productive MD ascertains that some or all of the underlying policies are governed by ERISA, Productive MD is advised to

---

[11]Logically, this step must occur only after the parties have established which policies are at issue. It is worth noting that the Sixth Circuit has already found that, where a claimant references the underlying health insurance plan(s) in a complaint, those underlying policy documents are considered part of the complaint, whether or not they are not attached thereto, and are properly considered at the motion to dismiss stage upon production. *See Weiner*, 108 F.3d at 89. With respect to the assignment issue, the court regards validity of assignment as a predicate issue that presumably was or would have been addressed through the administrative process.

consider whether, if permitted to provide a more definite statement or to amend its Complaint, it could: (a) reasonably allege factual contentions establishing that it exhausted the administrative remedies applicable to each claim; and/or (b), reasonably allege sufficient facts establishing that, under the legal standard for futility applicable within the Sixth Circuit, such out-of-court efforts would certainly have been futile.

## CONCLUSION

The parties are hereby **ORDERED** to submit a joint statement in conformity with this Memorandum and Order by March 29, 2012.

It is so ordered.

_____
ALETA A. TRAUGER
United States District Judge