# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### AT NASHVILLE

PRODUCTIVE MD, LLC )
Plaintiff, )
) Case # 3:12-CV-0052
)
v. ) JURY DEMAND
)
) Judge Trauger
AETNA HEALTH, INC. and )
AETNA LIFE INSURANCE COMPANY, INC. ) Magistrate Judge Griffin
Aetna Defendants. )

## SECOND AMENDED COMPLAINT

Plaintiff files its Second Amended Complaint and would show the Court the following:

### JURISDICTION AND VENUE

1. This Court has in personam jurisdiction over Aetna Defendants because they have done business in Davidson County, Tennessee during the relevant time period giving rise to this lawsuit. Furthermore, Aetna Defendants have committed torts, entered into contracts, and taken other actions, in whole or in part, in Davidson County, Tennessee and have had continuing and ongoing contacts with Tennessee.

2. This Court has subject matter jurisdiction based upon Plaintiff's claims based upon the Employment Retirement Income Security Act of 1974, 29 U.S.C. 1001 et seq., ("ERISA"), including 29 U.S.C. 1132(a)(1)(B). Attachment E identifies those patients whose claims Plaintiff believes are and are not subject to ERISA.

3. This Court has diversity jurisdiction under 28 U.S.C. 1332 based upon the fact that Aetna Defendants are domiciled in Pennsylvania and Plaintiff is domiciled in Tennessee. Aetna Defendants have represented that Aetna Health, Inc. merged into a Pennsylvania corporation, Aetna Health Inc. (PA).

1

4.      This Court has pendent jurisdiction over the Tennessee state law claims relating to Aetna's actions relating to the claims designated as non-ERISA on Collective Attachment A in which there are other grounds for federal jurisdiction. The non-ERISA claims arise out of a common nucleus of operative facts as the ERISA claims, and the claims would normally be expected to be tried in one judicial proceeding.

5.      This Court has supplemental jurisdiction under 28 U.S.C 1367 over the non-ERISA claims based upon Aetna's actions that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy, or involve the same pattern of conduct involved in the claims in which there are other grounds for federal jurisdiction.

6.      Venue is proper because a substantial part of the events made the basis for this lawsuit occurred in the Middle District of Tennessee, including Davidson and Williamson County, and/or other counties within the Middle District of Tennessee. Aetna Defendants do business and maintain an office in Davidson County, Tennessee.

7.      Aetna Defendants have been served with process and have removed this case to this Court, asserting both subject matter and diversity jurisdiction.

## PARTIES

8.      Plaintiff ("PRODUCTIVE MD") is a Tennessee LLC which at all times giving rise to this lawsuit was doing business in middle Tennessee, including Davidson County, Tennessee.

9.      Aetna Defendants Health, Inc. ("AHI") is a Tennessee corporation which at all times giving rise to this lawsuit was doing business in middle Tennessee, including Davidson County, Tennessee.

2

10.    Aetna Defendants Life Insurance Company ("ALICO") is a Connecticut corporation who at all times giving rise to this lawsuit was doing business in Davidson County, Tennessee.

11.    Aetna Life Insurance Co., Inc., and Aetna Health, Inc. have both been served through CT Corporation System, Inc., 800 Gay Street, Suite 2021, Knoxville, TN 37929. Aetna Defendants shall be referred to as "Aetna Defendants" or "Aetna".

12.    Each Defendant identified on Attachment B are the Employer Benefit Plans that provided coverage for the patients identified on Collective Attachment A.   Plaintiff has not included these Plans as Defendants in reliance upon Aetna's representation in the jointly submitted Initial Case Management Order that there is no issue regarding whether it is the proper defendant for determination of liability for unpaid medical benefits at issue in this litigation.

## FACTUAL BACKGROUND

13.    (a)  Aetna Defendants are insurance companies that provide health insurance coverage to Tennessee insureds, and handle the processing, adjudication, denial and/or payment of medical claims.

(b)  Aetna Defendants provide insurance coverage to individuals, and also to groups such as employer-sponsored health plans, as well as groups that are not employer sponsored health plans.

(c)  Aetna Defendants also provide insurance to employer health plans providing health care coverage to employees of some governmental employers and religious organizations not within the coverage of ERISA.

(d)  Aetna Defendants are also in the business of contracting with employer-sponsored health plans for some self-insured companies (both ERISA and non-ERISA

3

companies). In such arrangements, the Plan typically delegates to Aetna some of the functions and responsibilities of the Plan Administrator for adjudication and payment, and as such, handles the processing, adjudication, approval, denial and/or payment of claims for medical benefits provided by the health plans.

(e)  Aetna, pursuant to its insurance contracts and/or its contracts with the benefit Plans providing health care benefits to the patients listed on Collective Attachment A, was responsible for paying legitimate benefit claims within the coverage of the policy or Plan, and was responsible for notifying the covered individual of reasons if the claims were disallowed.

(f)  Pursuant to its contracts with the Plans that provided health care coverage to the patients listed on Attachment A, when claims were submitted to Aetna for payment, Aetna had the responsibility to adjudicate whether to pay (or allow) the claim, or whether to disallow it. On claims made relating to the Plans listed on Attachment B, Aetna made its determination without involving the Plan or Plan Administrator (if other than Aetna) in the adjudication process prior to its decision and action on the claim.

(g)  In making claims approval decisions as described above in (f), Aetna exercised its discretion, and acted as the "Claims Administrator" and de facto Plan "Administrator", whether or not so designated in the Plan documents.

(h)  In making claims approval determinations, Aetna exercised its discretion, and was a fiduciary as defined by ERISA as to claims relating to Plans to which ERISA applied.

14.  (a)  Plaintiff PRODUCTIVE MD is a provider of healthcare services. Plaintiff provides the technical component of certain types of medical testing, such as EKG testing, cardiopulmonary exercise tests, pulmonary function tests, resting metabolic tests, and other

4

studies, when ordered by physicians for their patients.

(b)    Productive MD provides only the "technical component" of the diagnostic studies it performs, by providing the equipment and technicians to perform the testing when ordered by a patient's physician. The physician who orders the study then performs the "professional component" of interpreting and utilizing the results of the tests he/she ordered in the care and treatment of the patients.

(c)    Productive MD provides testing equipment that is mobile, allowing the tests to be administered in the offices of the patients' physicians rather than at a hospital, and with test results available without delay.

(d)    Other health care providers perform the types of testing performed by Plaintiff at issue in this lawsuit.

(e)    Aetna pays and/or allows the majority of claims for such services performed by other providers of these tests who are in the Aetna network.

15.    (a)    PRODUCTIVE MD's diagnostic services are important for patients and their physicians.  Many of the patients to whom testing is administered have or are found to have heart disease, lung disease, or other maladies.  In others, the testing serves to identify and define or rule out certain problems, often avoiding other more expensive and invasive testing.

(b)    Plaintiff performs testing only when the patients' physician has made a determination that the testing is medically necessary and has ordered that Plaintiff perform testing.

16.    The treating physicians of the patients whose unpaid balances are listed on Collective Attachment A gave an order requesting that ProductiveMD perform testing because the testing was medically necessary based upon the physician's findings.

5

17. The services provided by Plaintiff are described on Attachment C utilizing Current Procedural Terminal ("CPT") Code.

18. Plaintiff submitted a claim to Aetna for each service listed on Attachment C.

19. Aetna has refused to allow and make payment for these services without valid reason.

20. In most instances, Aetna has allowed the corresponding professional component claim by the physician, while disallowing Plaintiff's technical component claims,.

21. Prior to 2005, Aetna consistently allowed and paid the majority of claims that PRODUCTIVE MD submitted to Aetna. Aetna then began wrongfully refusing to pay Plaintiff's charges, such that by 2008, the percentage of Plaintiff's charges paid by Aetna dropped to less than 2% percent.

22. On July 3, 2009, Plaintiff and Aetna entered into a settlement relating to Aetna's failure to pay Plaintiff's claims relating to Aetna's failure to pay claims on behalf of Aetna members enrolled in Aetna fully insured and self-funded coverage plans, relating to claims for dates of service prior to and including May 31, 2009;

23. From this settlement to the present, Aetna has disallowed payment of claims for substantially all claims for plaintiff's services, and has disallowed at least most claims for every patient on whom Plaintiff performed physician-ordered testing and submitted claims to Aetna for adjudication and payment.

24. Aetna has disallowed all claims for services that Plaintiff rendered to Aetna enrollees listed on Collective Attachment A.

25. The services listed on Attachment C to the patients listed on Collective Attachment A were provided upon the order of a physician certifying that the services were

6

medically necessary.

26.     For most of the patients listed on Collective Attachment A, Aetna made a determination that claims made by physician's for his/her professional component portion of the testing the testing were covered and allowable, while disallowing Plaintiff's technical component claims for the very same service.

27.     Compiled on Attachment D are the service claims as to which Aetna paid or allowed the professional component claim while disallowing Plaintiff's corresponding technical component claim.

## IDENTIFICATION OF DISALLOWED CLAIMS

28.     (a)     Collective Attachment A is a list of patients upon whom Plaintiff performed testing and submitted claims to Aetna Defendants for which payment is still due.  A unique identifier has been assigned to each patient to protect patient confidentiality.  A key has been provided to Defendants that indicates the identity of the patient.

(b) Collective Attachment A consists of Attachment A-1 (Patients upon whom Plaintiff performed testing through 11-30-11) and Attachment A-2 (additional patients upon whom Plaintiff performed through 2-29-2012).  A copy of Attachment A-1, including patient names and other identifying information, was delivered to Aetna prior to the filing of this lawsuit.

(c) Collective Attachment A also contains the dates of service and the unpaid amount due from Aetna Defendants for testing, and where provided pursuant to a group health care plan, information available to Plaintiff regarding the sponsor of the Plan with which Aetna contracted.

29.     For each claim listed on Collective Attachment A, the patient's treating physician has signed an order for the study, certified that such study was medically necessary, stated the

7

diagnosis, and listed some or all of the indications establishing the medical necessity for the study.

30.     Attachment E identifies the patients whose claims were wrongfully disallowed by Aetna, indicates whether the patient's claims are within the coverage of ERISA, Aetna's representation regarding the name of the employer (if any), and whether the Plan is fully insured or self-insured.

31.     The specific services provided by Plaintiff relating to each patient are listed by Current Procedural Terminology ("CPT") code on Attachment C.

32.     In most instances, the treating physician has also submitted separate claims to Aetna that includes the physician's certification as to some or all of the patient's diagnoses, identified by ICD diagnosis code.   Attachment D indicates the services that Aetna has determined to be within the coverage of the Plans or policies at issue, and has paid or allowed the professional component of these same services, while disallowing Plaintiff's claims.

33.     Aetna failed to allow and/or pay claims for services rendered by Plaintiff to the patients listed in Collective Attachment A for reasons that were invalid, or without giving a reason, or failed to process such claims. Aetna was obligated to allow and/or pay for the services identified on the claims Plaintiff submitted to Aetna because they were within the coverage of the Plan and/or insurance policy that Aetna was obligated by contract and law to allow and/or pay.

34.     Aetna has given Plaintiff inconsistent and varied reasons for its refusal to allow and pay the claims on Collective Attachment A, and has failed to identify the actual reasons.

35.     Aetna's failure to allow and pay plaintiff's claims itemized on Attachment D is without merit as a matter of law, in that Aetna has already determined that the tests provided are

8

allowable under the coverage of the patient's respective Plans and insurance policies. Although Aetna failed to pay Plaintiff for performing the "technical component" for each of the listed tests performed by ProductiveMD, Aetna nevertheless allowed and/or paid the physician's claim for the interpretation ("professional component") of these same tests. Paying or allowing the professional component of a study, but failing to pay or allow Plaintiff's claim for the technical component of the same study, is an inconsistency and an admission by Aetna that demonstrates, beyond question and as a matter of law, that the refusal to pay Plaintiff for the same service was unjustified.

36.   Aetna has admitted in its sworn response to Interrogatory 1(c) that it has allowed and/or paid "professional component" physician claims for the very same services that were disallowed in response to Plaintiff's "technical component" claims for the same medical tests:

> In some instances, some portion of the professional component for a CPET was paid by Aetna while Plaintiff's claim for the technical component was denied. These benefit claim results occurred because the technical and professional components of CPETs performed by Plaintiff are, and have been, reviewed for payment by two independent departments at Aetna with no automated means to compare for consistency.

37.   Aetna's response to Interrogatory 1(c) further establishes that, in allowing the professional component claims, that it was applying the terms of the respective Plans:

> Generally, when a healthcare provider submits a claim to Aetna for payment, the data submitted by the provider is submitted electronically and processed electronically. *Aetna has in place electronic systems that determine whether the claim is payable, in whole or in part, subject to applicable plan criteria.* By way of example, Aetna's automated systems — driven by provider codes, member codes, diagnosis codes, and CPT codes, etc. — electronically determine who is responsible for paying portions of the claim (the plan or the member) *based on the applicable benefit plan*, and determine whether the specific services billed are internally consistent with payment guidelines (i.e., a CPT code for a component part of a service should not be billed on top of a global code that designates the entire service). This process of evaluating the submitted data is largely electronically

9

automated and does not necessarily involve individual human review of particular claims.

38. Aetna's determination in conjunction with the professional component claims that the services were within the coverage of the applicable Plan also constitutes its determination that Plaintiff's technical component claims for the same tests were likewise within the coverage of the Plan.

39. On belief, the true reason for Aetna's inconsistency between paying and/or allowing Productive MD's claims and the physician's claims for the same service is that ProductiveMD is an "out of network" provider. Aetna's non-payment would tend to force ProductiveMD into the network at reimbursement rates that are unreasonably low and increase Aetna's profits, and/or cause Plaintiff to stop providing services to Aetna insureds due to the lack of payment and "hassle factor".

### AETNA'S FLAGGING OF PLAINTIFF'S CLAIMS

40. Aetna has tried to explain treated and adjudicated Plaintiff's technical component claims differently than it treated physicians' professional component claims for the same test.

41. Aetna has contended that it treated Plaintiff's claims differently because it had "flagged" Plaintiff so that a different claims adjudication process would be applied to Plaintiff's claims. Plaintiff has requested, but not yet received, discovery relating to the "flagging" process.

42. The effect of "flagging" was that Plaintiff's claims went to a special unit within Aetna, rather than being processed as other claims were.

43. Aetna's claims and appeals files reflect that when Plaintiff's claims were reviewed, initially and when Plaintiff appealed, Aetna communicated to its reviewers that Plaintiff had been "flagged", using language such as "outlier", "overutilization" and "unbundling", suggesting to the reviewer that Plaintiff had engaged in improper or fraudulent

10

behavior. The reviewer's written comments often specifically state that the reviewer drew such a conclusion.

44.     Although Aetna has contended that it "flagged" Plaintiff as an "outlier" because it was performing a substantial number of CPETs as a "front line" or "general screening test," and for "unbundling" its services when claims were submitted, Aetna's assertions do not withstand scrutiny, as described below.

45.     In reality, Plaintiff, not a physician, cannot even order its own services; they must be ordered by the physician, as part of performing the professional component. Plaintiff simply comes to physicians' offices and performs testing when requested by the physician; it therefore cannot "overutilize" its services.  It can only perform studies requested by a physician, who determines "utilization

46.     Being a utilization "outlier" suggest a data comparison; it requires that a study demonstrating data showing that Plaintiff utilized services more than other similar utilizers; Plaintiff has sought discovery responses relating to flagging, and questions where such a study was ever even performed.  It denies that it is an "outlier" or "overutilized".  Plaintiff requests the right to supplement this allegation upon receipt of such information.

47.     With regard to "unbundling" as a reason for "flagging", Plaintiff's claims were billed in the same way as the in-network providers who filed professional component claims for these services, who were not "flagged" and whose claims were allowed by Aetna and not considered "unbundling", as Attachment D indicates.

48.     Aetna never communicated to Plaintiff that its claims were being "flagged", or that Aetna considered it Plaintiff to be a utilization outlier, or that it considered Plaintiff to be "unbundling".

11

49.     Although Defendant contends in Interrogatory responses that it "flagged" Plaintiff because it was performing a substantial number of CPETs as a "front line" or "general screening test," this was not stated as a reason for disapproval of claims on its adverse benefit determinations, which were required by 29 CFR 2560 - 503-1(g) to include reasons for non-payment.

50.     Plaintiff believes the requested discovery will reveal that the real reason that Aetna "flagged" Plaintiff was because it was an out of network provider that its in-network providers were utilizing frequently.

51.     Aetna's network executive, Jayna Harley, stated to Productive MD owner Joel Marshall that "your claims are not getting paid because you are out of network", suggesting that the "flagging" was in fact due to Plaintiff's out of network status.

52.     Aetna's "flagging" of a non-participating provider has the likely effect of causing such providers' claims to be disallowed, as this case demonstrates. Plaintiff's claims were thus disallowed, while other providers' claims relating to the exact same medical service were allowed, even though the patient, diagnosis, and other circumstances were the same.

53.     Plaintiff has sought discovery from Aetna regarding these inconsistent payments, and the circumstances and motives of Aetna in "flagging" Plaintiff, but complete responses have not yet been received. Plaintiff therefore requests that leave to amend to supplement these allegations be permitted when the discovery responses are received.

### FAILURE TO ADJUDICATE CLAIMS

54.     On some claims, Aetna asserted that further review of the claim was necessary, but then Plaintiff never received further communication that it had taken any further action on the claim.

55.     On some claims, Aetna requested copies of records from Plaintiff. Plaintiff provided its records demonstrating medical necessity, but Aetna still failed to allow or pay the

12

claims, asserting that it had insufficient information to allow the claim, or in some instances, to even process the claim. Yet Aetna paid or allowed the physician's professional component claim for his interpretation of the same test based upon the information the physician submitted, demonstrating that it obviously had sufficient information to process and allow claims relating to the testing, and to determine that the service was a covered benefit.

56. Aetna "failed to process" many of Plaintiff's claims, although the claims were submitted on fully completed standard claims submission forms, including an accurate diagnosis code and procedure codes. Aetna was required by its policies and procedures to adjudicate claims that were submitted by providers.

57. Aetna was obligated to process and adjudicate Plaintiff's claims, even if disallowed, so that Plaintiff could appeal the adverse benefit determination.

58. Aetna was required by 29 CFR 2560 - 503-1(g) to process and adjudicate claims that were submitted by providers for services covered by ERISA, and if disallowed, to provide an adverse benefit determination – with reasons for the determination - that could be appealed.

59. Aetna was required by Tennessee law to adjudicate claims submitted by healthcare providers.

60. By failing to process Plaintiff's claims, Aetna has waived defenses to the claims that it failed to raise.

61. As to claims submitted by Plaintiff that Aetna failed to process and provide an appealable adverse benefit determination, Aetna is precluded from contending that Plaintiff did not exhaust administrative remedies.

62. In some instances, Aetna based its failure to process Plaintiff's claims upon "lack of information". Yet Aetna did "process" and adjudicate and pay physician's claims for

13

the professional component of the same studies in which Plaintiff's technical component claims were not "processed" by Aetna. Thus, Aetna Defendants had all information necessary to adjudicate and allow and/or pay the claims.

63.    Aetna disallowed some claims on the grounds that it had not received the physician's records; yet it did not have the records because it had paid the physician's claims without requesting the records or otherwise questioning that the services were covered.

64.    In some instances, Aetna requested records for a specific timeframe from the physician who ordered the tests performed by Plaintiff, yet did not request the records that contained the findings that related to the reason that the tests were ordered by the physician.

65.    Other excuses given in an effort to justify refusal to allow or pay Plaintiff's claims are similarly without merit.

### THREE RIVERS PROVIDER NETWORK CONTRACTS

66.    As to the claims indicated on **Attachment H**, Aetna invoked the terms of a network contract arranged between Plaintiff and Aetna by Three Rivers Provider Network ("TRPN") that directly obligated Aetna to comply with the terms of the TRPN network agreement.

67.    In almost every instance in which Aetna adjudicated Plaintiff's claims and sent an Explanation of Benefits ("EOB"), Aetna made a notation on the EOB similar to the following: "Network ID: 02709 **TRPN** HOSP/ANCILLARY NAP."

68.    The inclusion of the language "Network ID: 02709 **TRPN** HOSP/ANCILLARY NAP" on the Aetna Explanation of Benefits constituted Aetna's acceptance of the terms of the TRPN Agreement previously entered into by Plaintiff as to the services listed on the Explanation of Benefits with the TRPN notation.

14

69.     This acceptance created a direct contract between Plaintiff and Aetna in which Aetna was contractually bound to comply with the terms of the TRPN Provider Agreement in its adjudication of Plaintiff's claims. In return, Plaintiff was obligated to accept a discounted payment of 80% of Plaintiff's usual charge, if Aetna made payment within thirty days of the claim date.

70.     On July 21, 2008, ProductiveMD entered into a Network Agreement with Three Rivers Provider Network ("TRPN") (Attached as **Attachment I**) that was in effect until July 9, 2009.

a.     The TPRN contract with ProductiveMD provides that "TRPN contracts with insurance companies, third party administrators, health plans, individuals and entities hereinafter referred to as 'Clients' that directly or indirectly access TRPN contracted providers for covered services."

b.     Aetna also entered into a contract with TRPN that was in effect at the time that Productive MD submitted some or all of the claims to Aetna that are listed on Collective Exhibit A to the First Amended Complaint, and at the time it made its entry of "TRPN" on the EOB sent to Plaintiff. (Plaintiff has submitted discovery to Defendant regarding this contract but responses have not been received.)

c.     The TRPN contract with Productive MD provides that clients who access contracted providers "are obligated to make payments directly to Provider only at the contracted rate as payment in full." Clients accessing the agreement agree that the rate used in conjunction with the agreement is "a twenty percent (20%) discount off of Provider's usual charge for Covered Services, less any applicable co-payments, co-insurance or deductibles."

15

d. The TRPN Agreement with Productive MD provides that, "Covered Services shall include all services that are medically necessary..."

e. Network Providers agree that "Providers shall not balance bill the patient upon receipt of payment in full **at the contracted rate.**"

f. The ProductiveMD agreement with TRPN specifies that "payments shall be made within 30 calendar days of receipt of clean claim."

g. On information and belief, Plaintiff alleges that the agreement between TRPN and Aetna provides that Aetna's notation of "TRPN" on the Explanation of Benefits sent to participating providers such as Productive MD constitutes Aetna's acknowledgement of its acceptance of the TRPN Provider Network Agreement terms, and contractually binds both Productive MD and Aetna to those terms. (See, *Three Rivers Provider Network, Inc. v. Meritain Health, Inc.*, 2008 WL 2872664.)

h. On more than one hundred of the patients on Collective Attachment A, Aetna sent Productive MD at least one Explanation of Benefits document that included the wording, "Network ID: 02709 **TRPN** HOSP/ANCILLARY NAP."

i. Aetna's acceptance of the terms of the TRPN Agreement in consideration for Plaintiff's agreement to accept those terms upon payment constituted a contract between Aetna and Productive MD as to the terms in the TRPN Agreement executed by Productive MD.

j. Aetna has failed to pay 80% of Plaintiff's usual charge for its services within thirty days of receipt of Plaintiff's clean claims for services that it had determined were medically necessary.

k. The services provided to Aetna's enrollees were medically necessary.

16

l.   The medical necessity of these services provided by Plaintiff was confirmed by each patient's treating physician who ordered the services.

m.   The fact that the services provided by Plaintiff were medically necessary was confirmed as a matter of law by Aetna's payment of professional component claims for those services provided by the patients' treating physicians.

n.   Upon acceptance of the terms of the TRPN Agreement by its notation, while the TRPN agreement was in force, Aetna became contractually obligated to pay 80% of Plaintiff's usual billed charges for the services provided to the patient listed on the EOB for that patient.

o.   In addition to contractually obligating itself for payment of 80% of Plaintiff's usual charge, Aetna also obligated any employer on whose behalf Aetna provided claim administration services, acting as an authorized agent for such employer in making arrangements to satisfy the employer's and Aetna's obligations relating to the payment of employer health plan benefits.

p.   The TRPN agreement terms adopted by Productive MD and Aetna did not require that Productive MD comply with the terms or policies of the Aetna network agreement.

q.   The TRPN agreement terms adopted by Productive MD and Aetna did not require that Productive MD comply with the terms or policies of Aetna or the patient's employer benefit plan, but rather was a separate agreement entered into by Aetna to satisfy the obligations of Aetna, and employers with whom it contracted, to pay for incurred fees for services provided to covered patients listed on EOBs in which TRPN terms were invoked.

r.   Productive MD attempted to meet and confer with Aetna to resolve disputes relating to the claims at issue in this litigation prior to the filing of this lawsuit, but Aetna declined.

17

71.     Aetna is individually liable pursuant to the TPRN contract to pay claims on which it made the notation "TRPN" on the Explanation of Benefits, in addition to obligations arising from its contract with the Plans providing coverage to the patients listed on Collective Attachment A.

### AETNA'S BIAS AGAINST PLAINTIFF, OUT OF NETWORK "NON-PARTICIPATING" PROVIDERS, AND PATIENTS WHO UTILIZE THEM.

72.     Aetna has acknowledged in its responses to Plaintiff's interrogatories that it treated Plaintiff differently than other providers in the claims adjudication process, paying or allowing physicians. professional component claims while simultaneously disallowing Plaintiff's technical component claims, an irreconcilable inconsistency. Its stated reasons for this different treatment ("flagging for being an outlier and unbundling"), make so little sense that bias against Plaintiff, presumably because it is an out of network provider, is evident.

73.     Aetna has engaged in an overzealous "scorched earth" campaign against out of network providers in recent years. Aetna's disallowance of claims filed by Plaintiff is one aspect of this campaign. Other aspects of Aetna's campaign that have been asserted in other lawsuits filed against Aetna include:

a.   Underpaying out of network providers by incorrect calculations of the "usual and customary" fee amount;

b.  Sending letters to in-network physicians who refer patients to out of network healthcare providers, in an effort to intimidate them into not doing so.

74.     Plaintiff suspects that Aetna's "flagging" of Plaintiff so that Plaintiff's claims are directed to its "Special Investigations Unit" is similarly a tactic to intimidate and harass out of network providers. This is consistent with the statement of Jayna Harley that Plaintiffs' "claims

18

are not getting paid because you are out of network". Plaintiff is seeking additional discovery regarding this "flagging", and leave to amend this allegation is requested upon completion of discovery if necessary.

75.    Defendant is further biased against Plaintiff as a result of Plaintiff's legal efforts to challenge Aetna's failure to pay its claims, resulting in a settlement in 2009.

76.    Plaintiff biased actions occur in both fully insured and self-funded situations, in that both utilize the same network and the same claims adjudication process, and because patients' use of out of network providers in self-funded situations increases their frequency of use in fully insured situations.

77.    Aetna was named as a defendant in a lawsuit filed in July, 2012 by the California Medical Association, the Los Angeles County Medical Association, and multiple individual physicians, alleging a similar pattern of intimidation through letters sent to physicians who had utilized the services of out of network health care providers. The letters referenced in that litigation further demonstrate this bias of Aetna against out of network providers like Plaintiff.

78.    The circumstances surrounding the adoption of CPT 0825, described below, are further evidence of Aetna's bias.

### INTERFERENCE WITH CONTRACT AND PROSPECTIVE BUSINESS RELATIONS THROUGH LETTERS AND CALLS TO PHYSICIANS WHO HAVE UTILIZED PLAINTIFF'S SERVICES

79.    Aetna has interfered with Plaintiff's relationships with Plaintiff's referring physicians and patients through its communications with them in violation of Tennessee statutory and common law, entitling Plaintiff to treble damages, and evidencing Aetna's bias and conflict of interest.

80.    These communications did not just arise in regard to specific claims, but were a pattern of conduct intended to prevent providers from utilizing Plaintiff's services on future

19

claims involving patients enrolled in its network.

81.    Aetna has sent letters to multiple physicians who utilize Plaintiff's services, attempting to dissuade the physicians from utilizing Plaintiff's services. One such letter was reportedly sent to Cameron Shearer, MD in May, 2010. Aetna acknowledged sending such letters in a letter from Jayna Harley to Joel Marshall dated October 15, 2010, stating "When we identify a participating provider utilizing or referring to a non-participating provider, it is our standard business practice to send a letter, informing the participating provider of the impact of this behavior". In reality, the letters do more than "inform of the impact".

82.    Aetna has now admitted in discovery responses that it sent such letters, and its responses included several of these letters. This has confirmed Plaintiff's earlier allegations that such letters were sent; Plaintiff is seeking discovery regarding whether there are other letters. Aetna has also admitted that Network Vice President Jayna Harley and Network Manager Linda Phillips have had discussions with Plaintiff's referring physicians. Defendant has objected to Plaintiff's attempts to depose Jayna Harley. Until discovery is completed, Plaintiff cannot make further detailed allegations regarding the number of physicians to whom such letters were sent, other similar tactics, or how many physicians stopped using Plaintiff's services as a result, until completion of discovery.

83.    Aetna was named as a defendant in a lawsuit filed in July, 2012 by the California Medical Association, the Los Angeles County Medical Association, and multiple individual physicians, alleging a similar pattern of intimidation through letters sent to physicians who had utilized the services of out of network health care providers.

84.    The similar pattern suggests that there is a company-wide Aetna strategy to interfere with referrals to and business relations with out of network providers.

20

85. These communications by Aetna to Plaintiff's referring physicians interfered with Plaintiff's business relations with the physicians through a chilling effect of implying (or possibly stating outright, as alleged in the California lawsuit) that Aetna may remove such referring physicians from its network, which would then likewise subject them to Aetna's "out of network" treatment.

86. Plaintiff has sought, but not yet been permitted to obtain, discovery seeking documents and other evidence relating to the extent of Aetna's campaign to interfere with physicians' obtaining services from out of network providers such as Plaintiff. This conduct is not only actionable, it constitutes evidence of Aetna's bias, conflict of interest, and motives in the conduct interfering with physicians' referral of patients to Plaintiff.

87. Aetna's interference with Plaintiff's business relations does not "relate to" specific ERISA claims at issue, or failure to allow or pay other ERISA claims, because the letters relate to future requests for Plaintiff's services, do not relate to specific patients or treatment, and were sent to physicians who provided treatment to non-ERISA patients.

88. Aetna further attempts to interfere with Plaintiff's relationships with patients and physicians by routinely failing to pay claims submitted by plaintiffs, including claims that are submitted in non-ERISA plans. This results in patients receiving documents suggesting that the services were not medically necessary, and that the patient remained liable for the cost of the care.

89. While undertaking this campaign against out of network providers, Aetna has nevertheless advertised its network by stating that Aetna has plans that permit selection of providers who are outside the network.

90. Aetna's refusal to pay Plaintiff's claims and communications with third parties

21

are a component of Aetna's efforts to force Plaintiff to enter into a network contract to accept payments for its claims that are less than the reasonable or usual and customary charges for such services, and to discourage the use of services provided by Plaintiff.

91.    Plaintiff has remained willing to participate in the Aetna network on reasonable terms. Plaintiff's President proposed to Aetna that he would agree to be a "participating in-network" provider, and would accept payment levels consistent with those of other payors and paid by Aetna to other providers of similar services. Jayna Harley failed to provide Plaintiff with a response for months, despite numerous inquiries and reminders from Plaintiff.

92.    Plaintiff requests leave to amend these allegations after completion of discovery.

### AETNA'S CONFLICT OF INTEREST

93.    In many of the claims listed on Collective Attachment A (and identified on Attachment E), Aetna serves as an insurer as well as Plan and/or claims administrator for employer sponsored plans and individuals, so that allowing payment of claims reduces its profit. This creates an inherent conflict of interest in Aetna's claims adjudication decision-making.

94.    Aetna's role as an insurer creates an incentive for Aetna to prevent patients from utilizing services, and to disallow claims for services, even those medically necessary, particularly for the services of providers who it has not accepted into its network and to whom Aetna's fee schedule and other network agreement terms are not applicable.

95.    In other claims listed on **Collective Attachment A** [and/or identified on **Attachment E**), Aetna serves as administrator for self-funded employer sponsored Plans. Even though Aetna may not pay claims in such situations from its own funds, Aetna still has the same or similar conflict of interest and incentive to disallow claims and prevent the utilization of out of network providers. Thus, the conflict of interest pervades all of the claims due to Aetna's status

22

as an insurer.

96.    Aetna's conflict of interest and incentive to disallow services even for self-funded plans arises for the following reasons:  (a) Insured and self-funded plan patients are both included in Aetna's single "network", so that to the extent that a provider orders a certain type of services from an out of network provider for a patient in a self-funded plan, the provider is also likely to order the same type of services from the same provider in insured plans, which reduces Aetna's profit; (b)  if Aetna can "starve" out of network providers, they may be able to force the provider to agree to payment for their services that are ridiculously low, and to agree to egregious terms in the network agreement, thereby increasing profits in its insurance line of business.

## AETNA'S FAILURE TO PROVIDE DUE PROCESS

97.    In many instances, Defendant's communication to Plaintiff has failed to communicate the true basis for its adverse claim determination, as indicated by entries contained in Aetna's claims and appeals files.  This prevented Plaintiff from addressing the reason in its appeal response.

98.    In many instances, Plaintiff has received no response to its submission of records or filing of an appeal despite the passage of many months.

99.    Defendant has failed to communicate the "policy" that it now claims it was applying prior to the official adoption of the policy.

## AETNA'S ADOPTION OF POLICY BULLETIN 0825

100.    At the time the services listed on Collective Attachment A were provided, Aetna had not adopted any policy relating to cardiopulmonary exercise testing.

23

101. After Plaintiff instituted this lawsuit, Aetna adopted Policy Bulletin 0825 on January 13, 2012.

102. Aetna adopted Policy Bulletin 0825 in response to information provided by Plaintiff to Jayna Harley, demonstrating that Plaintiff's services are provided in circumstances in which it is recommended by recognized medical authorities.

103. Aetna has contended in its response to interrogatory #12 that it applied the Policy, even before its adoption on January 13, 2012, although this policy was not included as a reason for disallowance of claims on any EOB or letter sent to Plaintiff prior to that time.

104. CPB 0825 was adopted with the involvement of Aetna's Regional Legal Counsel, who had been involved in Plaintiff's challenge of Aetna's disallowance of its claims. Communications suggest that the policy was adopted at least in part in response to Plaintiff's assertions that Aetna's disallowance of claims on medical necessity grounds was inconsistent with the medical literature.

105. Although Aetna contends that it "flagged" Plaintiff for performing its testing as "front line" or "routine screening" (two separate concepts), Plaintiff first learned of this concern through a letter from Aetna's Regional Legal Counsel.

106. Although CPB 0825 states that it is based upon the standards of the American Heart Association and the American College of Cardiologists, in fact CPB 0825 varies from and is inconsistent with those recommendations.

107. The circumstances surrounding the creation and adoption of CPB 0825 are further evidence of Aetna's bias against Plaintiff, and its extreme efforts to avoid the payment of Plaintiff's claims.

108. Although Aetna obtained Policy Bulletins from other payors, such as CIGNA,

24

Aetna also varied from these policies, and created a more restrictive policy.

109.    Plaintiff has sought, but not been given, discovery relating to the adoption this policy, and therefore requests leave to amend these allegations upon receipt of this discovery if necessary.

## PLAINTIFF'S STANDING BASED UPON ASSIGNMENTS OF BENEFITS

110.    Plaintiff has derivative standing to bring all claims arising from Aetna's failure to allow and pay claims for medical services, including, without limitation, claims based upon 29 U.S.C. §1132(a)(1)(B) and other claims, because each patient listed on Collective Attachment A has given Plaintiff, a health care provider, a signed assignment of benefits including the following language: "I authorize payment of medical benefits to Productive MD for services rendered", in the form attached as Attachment G.

111.    The Sixth Circuit Court of Appeals recognizes that a valid assignment of benefits given to a health care provider by a patient gives that provider derivative standing to enforce the patient's right to exercise the patient's rights to recover medical benefits provided in an employer-sponsored health benefit plan within the coverage of ERISA.

112.    The Plans providing medical benefits to the patients on Attachment A do not contain a valid, unambiguous prohibition on assignment of healthcare benefits to a health care provider.

113.    Aetna concedes that there is no prohibition on assignment in at least one hundred (100) of the Plans of patients listed on Collective Attachment A.  These patients are listed on Attachment F.

114.    The Plan applicable to each patient on Collective Attachment A either:

a.   Does not have any language suggesting that assignment of benefits is prohibited;

25

b. Has language that is an invalid attempt to prohibit assignment of benefits under controlling law;

c. Has language that is ambiguous, and/or is inconsistent with other language in the Plan that suggests that assignment of benefits is permissible. For example, on the Aetna Health Choice II Plan, such as the Brueggers' Plans, although Aetna contends that page 75 provides that written consent is required for assignment, page 76 states that "benefits will be paid to a service provider unless instructed otherwise by the policyholder prior to payment of the claim", and that "Aetna will provide written notification upon receipt of the claim when an assignment of benefits to a health care provider will not be accepted". The Vanderbilt Plan contains similar provisions, as do other plans. No such notification was provided on the claim of any patient on Collective Attachment A.

d. Has language that is not intended to apply to assignment of benefits to a healthcare provider, but rather is intended as a "spendthrift provision" as to other aspects of the Plan, as can be determined from the language of the Plan;

115. Aetna has waived any provision that purports to prohibit assignments of benefits based upon such an alleged prohibition, and is estopped to raise it at this late date, by failing to include this as a reason for non-payment of claims on its Explanation of Benefits sent to the patient and Plaintiff relating to any patient listed on Collective Attachment A. As to medical services within the coverage of ERISA, Aetna was required by 29 U.S.C. 1133 and its related regulations, including 29 CFR 2560-503-1(g), to state every reason for disallowance of submitted claims, and to cite any portions of the Plan relied upon in disallowing the claim, in addition to other requirements.

116. None of the documents that Aetna sent to Plaintiff or any patient on Collective

Attachment A based disallowance of claims upon the fact that it was made pursuant to an assignment of benefits.

117. Aetna has waived the right to reject assignments of benefits based upon such an alleged prohibition and is estopped to raise it at this late date, by its allowance and/or payment of the professional component of services on Collective Attachment A, based upon assignments of benefits;

118. In some instances the health benefit plan contractually requires Aetna to notify the enrollee if it is rejecting the assignment, and there was no such notification in any case.

119. Rejection of assignment of benefits in this setting is prohibited by Tenn. Code Ann. 56-7-120, and reflects the policy of Tennessee in favor of assignments, which is similar to the public policy considerations applied by the Sixth Circuit on this issue.

120. Any prohibition on assignment would not affect Plaintiff's right to recover under its contract with Plaintiff pursuant to the TRPN agreement language.

121. Plaintiff has provided Aetna with copies of multiple assignment of benefit forms upon its request at the outset of this litigation. Plaintiff offered to provide more if needed; Aetna has not requested additional forms.

122. Aetna has failed to communicate that there was any issue relating to the validity of Plaintiff's assignments of benefits or to cite assignment of benefits as a reason for disallowing any claim during the claims adjudication process.

123. Aetna is obligated by 29 U.S.C. 1133 and 29 CFR 2560-503-1(g) to communicate information to participants and beneficiaries when a claim for Plan benefits relating to an ERISA plan is disallowed. This includes the reasons for failure to pay benefits as to any claims, and the sections of the Plan upon which disallowance is based.

124.    Aetna's failure to cite assignment as a reason for disallowance not only waives that defense in this litigation, it constitutes Aetna's admission that the applicable Plan language is not intended to prohibit assignment of benefits in this setting.

125.    Aetna failed to communicate that it was rejecting assignment upon receipt of any claim involved in this litigation.

126.    Plaintiff has failed to include patients as Aetna Defendants in this litigation. To the extent that Aetna contends that patient's assignments of benefits were ineffective, Plaintiff seeks the opportunity to amend the Complaint to add these patients as Defendants.

## STANDING BASED UPON THREE RIVERS PROVIDER NETWORK AGREEMENTS

127.    Plaintiff has independent standing to bring claims based upon Aetna's breach of contract arising from the contract between Aetna and Plaintiff arising from the participation of Aetna and Plaintiff in the Three Rivers Provider Network ("TRPN").

128.    Prior to the dates that Plaintiff provided the services listed on Collective Attachment A, Aetna had entered into a contract with TRPN. Plaintiff has requested discovery regarding the TRPN contract with Aetna, but was required to first make these allegations.

129.    In Aetna's TRPN contract, Aetna agreed that if a provider who had also entered into the TRPN agreement submitted an out of network claim to Aetna, that Aetna could accept the terms of the TRPN agreement applicable to the provider by making the notation "TRPN" on the Explanation of Benefits

130.    Aetna's notation of "TRPN" on Explanation of Benefit documents that it sent to Plaintiff after receiving claims from Plaintiff constituted Aetna's acknowledgement that it was

28

adopting the terms of the TRPN agreements in its adjudication of Plaintiff's claims for services identified in the EOB.

131. Plaintiff thus has independent standing to pursue its claims against Aetna based upon the TRPN Network contracts.

132. Plaintiff's causes of action under the TRPN contract are in addition to the patients' rights that have been assigned to Plaintiff.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES AND FUTILITY

133. For each disallowed claim for each patient listed on Exhibit A, Plaintiff has either received a letter stating Plaintiff has exhausted all appeal procedures, or has filed an appeal and has not received a final response, in circumstances sufficiently exhausting administrative remedies due to the futility of waiting further. Further, in cases subject to ERISA, Aetna's failure to comply with 29 CFR 2560-503-1(g) precludes Aetna from asserting failure to exhaust administrative remedies.

134. The appeal procedure in Plans at issue in this lawsuit contain the appeal procedure required, and are incorporated herein by reference. The appeals process in Aetna administered Plans typically calls for a two level appeal process. Aetna was required by 29 CFR 2560 - 503-1(g)(1)(iii) to communicate this process to Plaintiff. The process, according Aetna's communications, allows 180 days for the first level to be filed, and 60 days for the second level. Plaintiff has initiated appeals in compliance with the appeal procedures identified in Aetna's adverse benefit determinations as complying with the Plan procedure.

135. Plaintiff's efforts to appeal complied with the appeal process set forth in communications from Aetna. The appeal process followed by Plaintiff thus complied with the administrative remedy set forth in the Plans, in that Aetna was required by 29 CFR 2560 -

29

503-1(g)(1)(iii) to communicate to Plaintiff "A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;".

## Cases in which final adverse claim determination letters have been received.

136.   For each disallowed claim for each patient listed on Collective Attachment A, Plaintiff has promptly filed an appeal in compliance with the appeal procedure specified in the adverse claim determination. If permitted, Plaintiff re-appealed to the next level when a response was received, until Aetna's stated that its appeal process was concluded or did not provide Plaintiff an opportunity to appeal in its communication.

137.   Aetna has admitted in Court filings that Plaintiff has exhausted administrative remedies on 41 patient's claims governed by ERISA, as listed in **Attachment F**.   [See exhibits Aetna filed in support of its proposed Memorandum of Law in Support of Partial Motion to Dismiss filed on September 28, 2012 (Doc. # 59-2); Aetna stated that it does not assert failure to exhaust administrative remedies as to the patients on its Exhibit B (14 patients) (Doc. # 59-6) and Exhibit D (27 patients) (Doc. # 59-11).]

138.   Plaintiff's records reflect that a final appeal letter has been received on the appeals of each patient listed on **Attachment J**, some of which are not included in the 41 patients whose claims Aetna admits have had administrative remedies exhausted.   Aetna only creates a CATS appeal file when a second stage appeal is filed.   Therefore, Aetna's CATS records do not indicate whether Plaintiff has filed an appeal, only whether it has reached the second level. Aetna has, in its supplementation of discovery responses on December 7, 2012,

stated that it has created appeals files on ten additional patient's appeals, without identifying the final status of those appeals.

**Futility: Cases in which an appeal has been filed, but further exhaustion of administrative remedies is not required due to futility.**

139. The clear and positive conclusion from the facts below is that completing Aetna's appeal process will certainly be futile as to the additional claims that have been appealed, but no final decision has been received. Moreover, the policies of this Circuit behind generally requiring exhaustion will be served by including in this litigation the disallowed claims that Plaintiff has appealed but not received a final adverse determination.

140. As to each claim on Collective Attachment A, Plaintiff had, at the time of the filing of this lawsuit, exhausted all administrative remedies to the maximum extent possible by filing an appeal in compliance with the specified process.

141. Aetna's consistent disallowance of Plaintiff's claims and refusing to reverse its action despite appeal over the previous three years, while simultaneously allowing the technical component claims, demonstrated that the reasons for disallowance were invalid, and that appeal would be futile.

142. Some appeals had received no response from Aetna despite the passage of several months; an inordinate amount of time, which should be treated as exhaustion of remedies.

143. On none of the 41 patients that Aetna admits its administrative remedies have been exhausted has Aetna changed its disallowance decision on appeal and allowed payment for Plaintiff's medical services prior to the filing of this lawsuit.

31

144.    Aetna only creates a CATS appeal file when a <u>second</u> stage appeal is filed. Therefore, these records do not indicate whether Plaintiff has filed an appeal, only whether it has reached the second level.

145.    Aetna has, in its supplementation of discovery responses on December 7, 2012, stated that it has created appeals files on ten additional patient's appeals, without identifying the final status of those appeals.

146.    This is demonstrated by the fact that the group of 41 claims in which administrative remedies by Aetna's admission have been unsuccessfully exhausted are factually indistinguishable from the group of claims in which the appeal procedure has not yet been completed, and that the appeal process has been unsuccessful in each case.

147.    Aetna's disallowance of claims for Plaintiff's testing services for every ProductiveMD patient's claims since 2009 establishes with clear and positive certainty that further exhausting Aetna's appeal process would certainly be futile.

148.    On all or substantially all of the appeals completed by Aetna, the Aetna appeal reviewer commented that Aetna has "flagged" Plaintiff for being an "outlier", "overutilization," "unbundling," or other improper conduct that the reviewer characterized as some type of abusive billing behavior. Such communication increased the chances that the reviewer would disallow the claim and further demonstrate futility of the appeal process, in addition to Aetna's bias.

149.    ERISA contains no statutory requirement that administrative remedies be exhausted. Plaintiff's use of the appeal process in each case complies with the policy considerations behind the judicial policy of encouraging use of administrative remedies, and

32

the inclusion of such cases in this litigation complies with the policy objective of efficient and inexpensive determination of the validity of adverse benefit determinations.

150. By including in this lawsuit the claims of patients with similar issues regarding unpaid claims, and in which an appeal has been filed, but not concluded, the policy objectives of requiring exhaustion of administrative remedies are still served, including:

a) Reducing the cost involved by resolving similar issues in the same proceeding;

b) Providing for consistency of decisions on similar issues by resolving them in the same proceeding.

c) Because an appeal has already been filed long ago on each patient's claims, Aetna has had an opportunity to develop an administrative record of its actions, and an opportunity to reverse and correct its disallowance of Plaintiff's claims (although it has consistently failed to do so).

151. Irregularities in records of Aetna's claims adjudication process also require determination in this lawsuit of claims on which Plaintiff alleges that an appeal has been filed, whether or not shown as exhausted in Aetna's records. In some cases, Plaintiff has filed an appeal, and has submitted additional information in some instances, but never received any further communication of the results of the appeal despite the passage of many months. In some instances, Aetna's appeals files do not reflect that an appeal was filed, although Plaintiff's records reflect that an appeal was filed by Plaintiff. Plaintiff is presently reviewing Aetna's list of cases in which it shows no appeal was filed, and comparing this to its list of filed appeals. Exhaustion should not be required where Aetna fails to acknowledge the filing of the appeal and/or fails to complete the appeals process.

33

152. Aetna has had the opportunity to render a decision and develop a factual record in the time that has passed since the patient's claims on Attachment A-1 were transmitted in December, 2011, and on Attachment A-2 in February 2012.

153. Additional circumstances demonstrating that administrative remedies will be futile are that:

a) Aetna has consistently disallowed Plaintiff's claims for services over the past two years;

b) Aetna has not reversed its position on appeal on any of the claims which have been administrative exhausted;

c) Aetna has demonstrated a bias against out-of-network providers in its claims adjudication process;

d) The claims on which the appeals have not been completed are similar or identical to those in which the administrative appeals have been completed, providing a clear and positive indication of futility, and that it is certain that Aetna's decisions will be unfavorable on the claims which appeals have not been completed.

154. Not including the claims of patients whose appeals have been filed but not finally concluded in this litigation would serve none of the policy objectives for requiring exhaustion of administrative remedies in that:

a) Requiring a separate lawsuit would increase the costs of resolving the issues;

b) It could possibly result in inconsistent determinations;

c) It would increase, rather than reduce, the number of ERISA lawsuits;

d) It would delay resolution in those cases;

e) There would be no reduction of "frivolous lawsuits";

34

f) In that it has now been eight months since any patients' claims were added; the appeals process should be completed or nearing completion by now.

155. Plaintiff attempted for several months to resolve the dispute as to unpaid claims without resort to litigation. These efforts were unsuccessful, and demonstrate the futility of further efforts. Plaintiff's owner communicated with Jayna Harley repeatedly in efforts to resolving issues leading to non-payment of claims. Prior to filing this lawsuit, Plaintiff provided Aetna with a list of claims on Attachment A-1 that had been submitted to Aetna, but which Aetna had refused to provide payment. The list of unpaid claims through the end of November, 2011 was also itemized in Attachment A-1 to Plaintiff's interrogatories previously served upon Aetna. This Attachment A-1 list was hand delivered to Aetna's litigation counsel on January 12, 2012. This list identified the patients/enrollees to whom the services were rendered, the date of service, and the outstanding balance. Aetna has still failed to pay such claims.

156. Aetna's Jayna Harley stated that Aetna's failure to pay Plaintiff's claims was due to the fact that Plaintiff is not a member of Aetna's network, and is further evidence that the appeal process will be futile.

157. Patients have reported to Plaintiff's employees that when they call Aetna to find out why their claims are not being paid, they are told that it is because Plaintiff is an out of network provider.

158. Aetna's extreme bias against Plaintiff demonstrates that any further administrative remedy would certainly be unsuccessful. This bias is at least primarily due to its out of network status, and is demonstrated by Aetna's payment of professional component claims while disallowing Plaintiff's claim for the same service,

35

159.  Attachment A-1 lists the 143 patient services that were put at issue in the original complaint.  This same list, with actual patient names and dates of birth, as well as dates of service and amounts billed and unpaid,  has been provided to Aetna on the following dates:

December 2, 2011, prior to filing suit, to Aetna's Regional Counsel;

January 12, 2012, hand delivered to Waverly Crenshaw;

March 23, 2012, hand delivered to Waverly Crenshaw; and

March 28, 2012, e-mail to Waverly Crenshaw.

160.  Plaintiff has also delivered to Aetna's counsel on March 28, 2012 an updated Collective Attachment A, that included claims listed on Attachment A-2 that were unpaid as of February 29, 2012. Aetna's counsel was provided with actual patient names and dates of birth, as well as dates of service and amounts billed and unpaid, and information available to Plaintiff regarding identification of the patients' health plans.

## Aetna's Failure to Provide a Full and Fair Review Precludes it from Requiring Exhaustion of Administrative Remedies.

161.  Aetna has failed to provide a full and fair review of Plaintiff's claims, as required by 29 U.S.C. 1133, and 29 CFR 2560 - 503-1(g).  This failure precludes Aetna's reliance on administrative exhaustion.  These failures include a pattern of failing to adequately inform Plaintiff of the true reasons for its disapproval, so that additional information could be presented.

162.  By way of example, in the case of Patient # 16, Aetna not only failed to communicate that its determination was based upon lack of documentation of shortness of

Case 3:12-cv-00052   Document 98   Filed 01/22/13   Page 36 of 127 PageID #: 2200

breath until the final, non-appealable adverse benefit determination, it chose to ignore the physician's notation of a diagnosis of "dyspnea" on 4/7/11, when the test was ordered, and the medical record entry on June 2, 2011 of "shortness of breath" that "has been noted for the past three months." The final decision explained, *for the first time*, the reason for disapproving 94150, and *changed* the reason for disapproval of 94375 and 94200. It further gave inconsistent statements of the language upon which it was relying for its decision. Aetna's records regarding the physician's claim adjudication reveals, however, that they allowed CPT codes 94010, 94200, 94240, 94360, 94375, and 94720. Plaintiff could have addressed these reasons for disapproval in more detail had they been communicated.

### Disposition of claims in which appeal process not concluded.

163. As to any patients claims that have initiated but not completed, the appeal process should be stayed until completion of the appeal process, so that the futility can be demonstrated by the Court's review of those patient's claims in which the appeal process has been completed,

164. The Court's review of the claims Aetna contends are "ripe" will assist in its determination of whether further utilization of appeals would be futile.

165. In any event, any dismissal for failure to exhaust remedies under these circumstances should without prejudice.

### CAUSES OF ACTION

166. (a) Plaintiff is the assignee of the rights to payment of Aetna's enrollees listed on Collective Exhibit A by virtue of the assignments of benefits executed by such individuals. Plaintiff is entitled to enforce the rights of such assignors.

37

## BREACH OF THE THREE RIVERS PROVIDER NETWORK AGREEMENTS

167.    Plaintiff incorporates the previous allegations relating to the TRPN contract.

168.    Aetna is contractually obligated to Plaintiff for the payment of the services rendered to the patients listed on Collective Attachment A in accordance with the terms of Plaintiff's contract with TRPN, Attachment H.    As to those patients whose Explanation of Benefits documents contain the notation, "TRPN", Aetna has expressly acknowledged its acceptance of those terms.

169.    Aetna breached its contractual obligations to Plaintiff, by failing to pay Plaintiff 80% of its usual billed charges within thirty days for the medically necessary services identified on the claims submitted to Aetna by Plaintiff.

170.    Aetna further breached its contract with TRPN by failing to pay Plaintiff 80% of its usual billed charges within thirty days for the medically necessary services identified on the claims submitted to Aetna by Plaintiff.    Aetna is a third party beneficiary of Aetna's contract with TRPN.

171.    Plaintiff has an independent contractual right of action against Aetna by virtue of Aetna's acceptance of the terms of the TRPN agreement.

172.    Aetna is liable for payment of 100% Plaintiff's usual charges, in that it failed to pay within thirty days, a condition of obtaining a 20% discount from Plaintiff's charges.

173.    Aetna is liable for prejudgment interest on amounts owed to Plaintiff.

174.    Plaintiff was required by the Court to make TRPN claim allegations before it obtained discovery from Aetna about the contract.  Therefore, Plaintiff seeks the right to amend these allegations upon obtaining discovery from Aetna and TRPN about the additional contract terms.

38

175.    Plaintiff's direct contractual rights of action against Aetna are in addition to its assigned ERISA benefits from patients on Collective Attachment A.

176.    Aetna's notation of "TRPN" on the EOBs transmitted to Plaintiff are an admission by Aetna as to Plaintiff's right of action against Aetna for breach of the TRPN agreements.

## ERISA CLAIMS

177.    As to those claims to which the Employee Retirement Income Security Act of 1974, 29 U.S.C. 1001 et seq. ("ERISA") provisions are applicable, Plaintiff makes the following allegations and claims for relief.

178.    As described in additional detail above, Plaintiff has standing to make ERISA claims in this lawsuit by its status as a health care provider that:

a.  has received a valid assignment of benefits from each of the participants or beneficiaries listed on Collective Attachment A;

b.  Plaintiff's assigned rights from each patient arise from employee benefit plans that do not contain a prohibition on assignment, or do not have such a prohibition that is unambiguous and valid, and any issues relating to assignment have been waived by the failure to raise such issues in conjunction with adjudication of the claims at issue;

c.  Plaintiff has exhausted administrative remedies, or taken such action that exhaustion is excused, or that the facts alleged elsewhere demonstrate that further efforts are certainly futile;

d.  There are no other impediments to Plaintiff's enforcement of rights against defendants.

179.    To the extent that Aetna Defendants contend that State law claims of Plaintiff are preempted by ERISA, Defendants bear the burden of establishing the applicability of ERISA and such preemption.

39

180.    Aetna has possession of or access to Plan documents and/or contracts under which Aetna contracted to pay claims for medical services on behalf of the patients listed on Collective Attachment A, pursuant to which it acted as actual or de facto Plan Administrator and adjudicated claims for medical benefits and related duties.

## AETNA'S ROLE

181.    Aetna effectively controlled the decision of whether to honor or deny a claim under the healthcare benefit programs applicable to the patients listed on Collective Attachment A.

182.    The Plans under which patients listed on Collective Attachment A received healthcare benefits were not involved in adjudicating individual claims for healthcare benefits. This function was performed by Aetna.

183.    Therefore, Aetna served as de facto Plan Administrator in adjudication of the claims for benefits at issue in this litigation.

184.    Aetna was obligated by contract and ERISA law to pay legitimate claims for benefits for each patient listed on Collective Attachment A at the time Plaintiff provided the services listed on Collective Attachment A.

185.    Although the Plans identified herein remain liable for paying Plan benefits and taking actions required by ERISA, Aetna is an appropriate defendant in that it had assumed the obligation to pay such claims for benefits.

## ERISA – 29 U.S.C. §1132(a)(1)(B) - RECOVERY OF MEDICAL BENEFITS DUE

186.    29 U.S.C. §1132(a)(1)(B) provides as follows:

(a) Persons empowered to bring a civil action.
A civil action may be brought--

40

**(1) by a participant or beneficiary--**
**(B) to recover benefits due to him under the terms of his plan,** to enforce his rights under the terms of the plan, or **to clarify his rights to future benefits under the terms of the plan;**

187.     The patients listed on Collective Attachment A whose claims are listed as within the coverage of ERISA as indicated herein, are entitled to recover from Defendants for the medical benefit payments due for the services provided by Plaintiff. These benefits are within the coverage of their respective policies and Plans under the health plans which qualify as employee welfare benefit plans under ERISA, 29 U.S.C. §1002 et seq. The rights needed to collect these benefit payments have been assigned to Plaintiff.

188.     Aetna is a proper party to this action based upon 29 U.S.C. 1132(a)(1)(B), in that Aetna:

a.  controlled administration of the benefit claims aspect of the Plans providing benefits to the patients listed on Collective Attachment A;

b.  replaced the listed "Plan Administrator" as the party with authority to pay benefit claims;

c.  replaced the listed "Plan Administrator" as the party with the responsibility to pay benefit claims;

d.  was listed as an "administrator" in Plan documents providing benefits to the patients listed on Collective Attachment A, thereby qualifying as an "Administrator" as defined in 29 U.S.C. 1002 (16)(A).

e.  was responsible by contract with the Plan to pay covered claims;

f.  was responsible by contract with the Plan and by insurance contract to pay valid claims, in situations in which coverage under the Plan was through an insurance policy;

g. contractually obligated itself to payment of claims by accepting the terms of the TRPN contract when it adjudicated Plaintiff's claims by noting "TRPN" on the Explanation of Benefits;

h. functioned as the Plan Administrator when benefit claims were submitted;

i. was the party to whom the other Plan Administrator delegated its duties for claims adjudication and payment;

j. is either individually responsible to pay claims from its funds pursuant to the Plan coverage, for which it is reimbursed by the Plan, or is provided funds with which to pay covered claims, which it is then individually responsible;

k. responsible for administering and interpreting the plan and was solely responsible for a denial of benefits;

l. was a de facto Plan Administrator with regard to claims payment; and/or

m. is a logical party to an action to recover benefits due under the terms of the respective Plans and to enforce her rights under the terms of the Plans.

189. Aetna is a fiduciary and actual or de facto Plan Administrator under these plans, and made all decisions regarding allowance of claims for benefits under the plans applicable to the patients (participants and beneficiaries) identified in Collective Exhibit A.

190. That Aetna was serving as de facto Plan Administrator is further demonstrated by its actions in making decisions as to compromising and settling disputes arising from its failure to allow claims arising from employer-sponsored health benefit plans, and paying such settlements.

191. Plaintiff incorporates the allegations set forth above. Plaintiff seeks medical benefit payments due and owing to patients listed on the attached Collective Attachment A, as

42

payment for healthcare services more fully described herein and on Attachment C, provided to such plan participants and beneficiaries under the health plans which qualify as employee welfare benefit plans under ERISA, 29 U.S.C. §1002 et seq., including, without limitation 29 U.S.C. §1132(a)(1)(B).

192. Plaintiff is the assignee of the plan participants and beneficiaries listed on Collective Attachment A and is entitled to all the same protections and benefits under the plans and to stand in their place to enforce and clarify their rights under 29 U.S.C. §1132(a)(1)(B).

193. Aetna had the obligation, pursuant to its contract with the Plan for each participant or beneficiary listed on Collective Attachment A whose benefits were provided pursuant to an ERISA plan, to pay claims for benefits within the coverage of the Plan made by or on behalf of the participant or beneficiary listed. As such, Aetna is individually liable to Plaintiff for payment of the services provided by Plaintiff to the patients on Collective Attachment A whose benefits are provided through an ERISA plan, as previously submitted to Plaintiff, which are indentified herein and which claims are confirmed in records maintained by Aetna.

194. Each Plan identified herein is likewise liable to Plaintiff under the terms of the Plan applicable to the participants and beneficiaries listed on Collective Attachment A at the time Plaintiff rendered services to such individuals.

195. Plaintiff, as a health care provider who has received a valid assignment of benefits owed to such patients pursuant to an employer health plan, with no valid prohibition on such assignments, is entitled to recover these benefits from Aetna. Plaintiff and the participants/beneficiaries have been denied benefits under these plans through Aetna's failures to pay benefits which are due and owing under these plans. Aetna Defendants have breached their contracts and statutory duties relating adjudication of the claims made to receive Plan benefits.

43

196. Aetna's adverse benefit determinations were not only against the weight of the information available to Aetna, it denied benefits in an arbitrary or capricious manner unsupported by the evidence, and under circumstances demonstrating that its decisions were based upon factors other than the application Plan criteria to the claims for benefits. This is demonstrated by its inconsistent benefit determinations, and circumstances relating to its "flagging" of Plaintiff.

197. Aetna's conflicts of interest and bias, described above and incorporated herein, and claims adjudication irregularities also described herein, and about which discovery is being sought, require that the Court conduct a de novo review of the decisions of Aetna in adjudicating the claims for services provided to the patients on Collective Attachment A.

198. Plaintiff's assignors have been denied assigned benefits in the reimbursement of charges described further herein, including Attachment C, which Aetna and the respective Plans and have wrongly withheld or denied under the terms of the plans.

199. Plaintiff seeks an award of attorneys' fees incurred in obtaining these medical benefits pursuant to 29 U.S.C. 1132(g)(1).

200. Aetna's failure to process and adjudicate claims by providers who are not in Aetna's network in the same manner as those in the network was arbitrary and capricious, and violated the terms of the respective Plans.

201. Aetna's failure to provide payments for cardiac and/or pulmonary exercise testing services when ordered under situations in which such testing is medically appropriate under recognized peer reviewed medical authorities, including without limitation, publications of the American Heart Association and the American College of Cardiology.

202. Plaintiff has been denied assigned benefits of approximately $400,000, for its

44

services, which the plan administrators has wrongly withheld or denied under the terms of the plans.

203.    Aetna's bias. conflict of interests and procedural irregularities and lack of due process described in this Complaint require a hearing so that the Court can consider these matters into account in conjunction with Aetna's actions in adjudicating claims filed by Plaintiff.

<u>29 U.S.C 1133 AND 29 C.F.R. 2560 -503-1 (g):</u>
## FAILURE TO PROVIDE A FULL AND FAIR REVIEW

204.    Aetna and the applicable Plans have failed to provide a full and fair review of the disallowance of Plan benefits, as required by 29 U.S.C 1133:

> In accordance with regulations of the Secretary, every employee benefit plan shall—
> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

205.    Aetna failed to comply with the applicable regulations, found at 29 CFR 2560 - 503-1. For example, Aetna and the Plan failed to comply with 29 CFR 2560 - 503-1(g):

> (g) Manner and content of notification of benefit determination.
>
> (1) Except as provided in paragraph (g)(2) of this section, the plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination. Any electronic notification shall comply with the standards imposed by 29 CFR 2520.104b-1(c)(1)(i), (iii), and (iv). The notification shall set forth, in a manner calculated to be understood by the claimant -
>
> (i) The specific reason or reasons for the adverse determination;
>
> (ii) Reference to the specific plan provisions on which the determination is based;

45

(iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

(iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;

(v) In the case of an adverse benefit determination by a group health plan or a plan providing disability benefits,

(A) If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request; or

(B) If the adverse benefit determination is based on a medical necessity or experimental treatment or similar exclusion or limit, either an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances, or a statement that such explanation will be provided free of charge upon request.

206.    Aetna failed to notify Plaintiffs and/or the Participants/Beneficiaries of the true and complete reasons for its adverse claim determinations.

207.    Aetna and the Plans have further violated these provisions because they have failed to have safeguards to assure that plan provisions are applied consistently with respect to similarly situated claimants, in that claims of claimants who utilized out of network providers are treated differently than claimants who utilized in-network providers, in violation of 29 CFR 2560-503-1(b)(5).

208.    Aetna has represented in sworn interrogatory responses that it applied its policy in CPB 0825 prior to its adoption on January 13, 2012, after the majority of Plaintiffs claims at issue had been disallowed by adverse benefit determinations, and after this lawsuit was filed.

46

209. Although Aetna contends in this litigation that it is not obligated to pay Plaintiff's claims because assignment of benefits are prohibited or otherwise invalid, Aetna failed to notify claimants or Plaintiff of this reason as required by 2650.503-1(g)(1)(i) and (ii).

210. As to any Plan in which defendants contend that the participant/beneficiary must personally file a claim involving an out of network provider, and/or obtain permission to do so, Aetna and the Plans failed to establish and maintain reasonable claims procedures as required by 29 CFR § 2560.503-1 (b)(3). Such requirements violate Section (b)(4) in that claims procedures are not deemed reasonable unless "the claims procedures do not preclude an authorized representative of claimant from acting on behalf of such claimant in pursuing a benefit claim or appeal of an adverse benefit determination".

211. To the extent that the Plans prohibit the filing of a health care claim on behalf of a claimant by a health care provider who holds an assignment of benefits because the health care provider is not a member of the Aetna network, this is an unreasonable claims procedure in that this provision unduly hampers the filing of claims of claimants in violation of section of 29 CFR 2560-503-1(b)(3); and the claims procedure precludes an authorized representative of the claimants from acting on behalf of the claimant in pursuing a benefit claim and appeal, in violation of 29 CFR 2560-503-1(b)(4);

212. The explanations of reasons for adverse benefit determinations was inadequate to explain to Plaintiff and the participant/beneficiary the true reason for the determination and the information needed to allow the claim.

213. The explanations of reasons for adverse benefit determinations was inadequate to explain to Plaintiff and the participant/beneficiary the particular portion(s) of the Plan relied upon.

47

214.   Aetna failed to consider all information submitted in conjunction with the service for which payment was sought. For example, Aetna failed to consider the information submitted in conjunction with the professional component of the same service, which Aetna found sufficient to enable it to allow or pay the claim. Moreover, Aetna did not notify Plaintiff of the discrepancy between its determination of the professional and technical component claims for the same service/test, so that this could be addressed in the appeal review process.

215.   In light of the failure to provide a full and fair review, the adverse benefit determinations are entitled to no deference and should be reviewed de novo; Aetna and the Plans are precluded from asserting failure to exhaust administrative remedies; Aetna is limited to the reasons stated in the communications as justification for its adverse determination; and to the extent of a conflict between the Administrative Record and the communication of reasons for the determination, Plaintiff is entitled to provide supplemental information to respond to such reasons.

216.   In that Aetna just provided Plaintiff with the Administrative Record supplements on December 7, 2012, Plaintiff requests that leave be granted to amend these allegations based upon a more detailed review of the administrative record.

### PLAINTIFF IS ENTITLED TO ATTORNEYS FEES PURSUANT TO 29 U.S.C 1132 (g)(1 )

217.   Plaintiff seeks an award of attorneys' fees pursuant to 29 U.S.C. 1132(g)(1):

> **(g) Attorney's fees and costs; awards in actions involving delinquent contributions**
> **(1)** In any action under this subchapter [other than an action described in paragraph (2)] by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

218.   An award of attorneys' fees against Aetna is particularly appropriate in this matter in light of the fact that Aetna failed to pay for benefits on claims submitted for Plaintiff's

48

services in performing testing, although Aetna had made the determination that the services were allowable under the Plan and/or insurance policy and had allowed payment for the professional component of the same service.

219.    The circumstances surrounding this inconsistent treatment of claims suggest bad faith on the part of Aetna.

## 29 U.S.C. 1132(a)(3) -BREACH OF FIDUCIARY DUTY

### 29 U.S.C 1132(C) - FAILURE TO PROVIDE PLAN DOCUMENTS

220.    To the extent that Defendant breached its fiduciary interests by its biased treatment of claims on behalf of beneficiaries utilizing out of network providers, and attempts to influence such patients' physicians, and failed to provide information regarding the true reasons for disallowance of medical benefits inherent in making a claim for such benefits, and in Plaintiff alleges that Defendant's actions violated 29 U.S.C. 1132(c) and 29 U.S.C 1132(a)(3). However, absent further assignment or a declaration of the Court, Plaintiff asserts that these claims were retained by the respective patients.

### BREACH OF CONTRACT

221.    As to each patients listed on Collective Attachment A who was an insured under a policy of insurance provided by Aetna, Aetna breached such contract by failing to pay claims submitted by Plaintiff for medically necessary services provided to such patients. Plaintiff is an assignee of such patients. These policies are in the possession of Defendant.

### VIOLATION OF TENN. CODE ANN. § 56-7-109

222.    Plaintiff submitted clean claims to Aetna. Aetna failed to timely take action on Plaintiff's claims. Aetna failed to timely pay claims that were payable; pay portions of claims that were payable; and/or provide written notification to Plaintiff as to why claims were not

49

going to be paid.

223. All of Plaintiff's claims listed on Collective Attachment A were payable, but Aetna has failed and refused to pay them. As a direct result, Plaintiff has sustained damages.

224. Aetna's actions constitute a violation of the Prompt Pay law at TENN. CODE ANN. § 56-7-109, rendering Aetna liable for the amount of Plaintiff's unpaid claims, interest, and Plaintiff's reasonable attorneys' fees. This is a law regulating the business of insurance.

### TENNESSEE CODE ANNOTATED CHAPTER 56-7-105 ET SEQ. BAD FAITH FAILURE TO PAY FIRST-PARTY CLAIMS

225. Plaintiff is the assignee of the medical claims and rights to payment of Aetna's insureds listed on Collective Attachment A by virtue of assignments of benefits executed by individuals enrolled with Aetna.

226. Aetna is a health insurance company which at all times giving rise to this lawsuit was engaged in business in the State of Tennessee.

227. Aetna failed to pay the claims listed on Attachment A-1 on or before the 60th day after receiving all items, statements and forms reasonable requested and required under § 56-7-105 of the Tennessee Code. As a direct result, Plaintiff has sustained damages.

228. Therefore, as the assignee for all the claims listed on Attachment A-1, Plaintiff is entitled to recover the balance due on those claims, interest on the balance due on those claims, and its reasonable costs and attorneys' fees.

229. The failure of Aetna to properly pay or even adjudicate claims promptly entitles Plaintiff to a 25% penalty and attorneys fees pursuant to Tenn. Code Ann. § 56-7-105. This is a law regulating the business of insurance.

### BREACH OF CONTRACT

230. Aetna's enrollees had contracts of insurance with Aetna under which Aetna was

50

obligated to pay for the medical services which were provided to them by Plaintiff. Aetna breached their contracts with the enrollees whose claims are listed on Collective Attachment A by failing and refusing to pay for their necessary medical services.

231. As the assignee of Aetna's enrollees, Plaintiff has sustained damages as a direct result of Aetna's breach of contract for which Aetna is liable to Plaintiff.

## UNJUST ENRICHMENT

232. By providing its medical services to Aetna's insureds and enrollees, and satisfying Aetna's obligation to provide such necessary services, Plaintiff has conferred a benefit on Aetna. By wrongfully withholding payment for such services and materials, Aetna obtained a benefit by the taking of an undue advantage.

233. Aetna will be unjustly enriched if it is able to retain the benefit of Plaintiff's services without paying for them.

234. Therefore, Plaintiff is entitled to recover actual damages from Aetna for the equitable remedy of unjust enrichment.

235. Equitable remedies are further available pursuant to ERISA law. To the extent that case law has held that such monetary remedies such as unjust enrichment are not available pursuant to ERISA, Plaintiff submits that such holdings are incorrect and that a change in such common law is appropriate.

## QUANTUM MERUIT

236. Plaintiff provided valuable medical services to Aetna and its insureds. Aetna is the party sought to be charged for these valuable services. Aetna accepted Plaintiff's services under circumstances where Aetna was reasonably notified that Plaintiff, in providing its services, expected Aetna to pay for them.

51

237.    Therefore, Plaintiff is entitled to recover from Aetna on its equitable claim for quantum meruit.

238.    Equitable remedies are further available pursuant to ERISA law. To the extent that case law has held that monetary equitable remedies are not available pursuant to ERISA, Plaintiff submits that such holdings are incorrect and that a change in such common law is appropriate.

## INTERFERENCE WITH CONTRACT AND PROSPECTIVE BUSINESS RELATIONS

239.    Aetna has interfered with Plaintiff's relationships with its referring physicians and patients through its communications with them in violation of Tennessee statutory and common law, entitling Plaintiff to treble damages.

240.    Specifically, Aetna has sent letters to physicians who utilize Plaintiff's services, attempting to dissuade them from doing so. One such letter was reportedly sent to Cameron Shearer, MD in May, 2010. Aetna acknowledged sending such letters in a letter from Jayna Harley to Joel Marshall dated October 15, 2010, stating "When we identify a participating provider utilizing or referring to a non-participating provider, it is our standard business practice to send a letter, informing the participating provider of the impact of this behavior". Until discovery is completed, Plaintiff cannot make further detailed allegations regarding the number of physicians to whom such letters were sent, or how many physicians stopped using Plaintiff's services as a result.

241.    Aetna has now admitted in discovery responses that it sent such letters, and has produced copies of some that have been sent. Plaintiff has reason to believe that additional letters were sent, but has not had the opportunity to obtain discovery on this issue yet.

242.    Aetna further attempts to interfere with Plaintiff's relationships with patients and

52

physicians by routinely failing to pay claims submitted by plaintiffs, including claims that are submitted in non-ERISA plans.

243.    Aetna's refusal to pay Plaintiff's claims and communications with third parties are a component of Aetna's efforts to force Plaintiff to enter into a network contract to accept payments for its claims that are less than the reasonable or usual and customary charges for such services, and to discourage the use of services provided by Plaintiff.

244.    Aetna's conduct constitutes interference with contracts and prospective business relations between ProductiveMD and its patients and physicians, in violation of Tennessee statutory and common law.

245.    As a result of this interference with contractual relations and prospective business relations, ProductiveMD is entitled to treble damages for damages resulting from such interference, pursuant to Tenn. Code Ann. § 47-50-109 and Tennessee common law.

### REQUEST FOR RELIEF

**Therefore**, Plaintiff demands a jury as to all non-ERISA claims subject to a right to trial by jury, and requests that Aetna be summoned to appear and answer, and that upon trial, Plaintiff be awarded judgment against Aetna for the following:

a.    Actual damages of not less than the total unpaid amount of Plaintiff's usual charges for its services to the patients listed on Collective Attachment A as damages for breach of the TRPN agreements, and as benefits payable pursuant to 29 U.S.C. §1132(a)(1)(B) ;

b.    Applicable statutory penalties and interest, including penalties under 29 U.S.C 1132(c) prejudgment interest;

c.    Plaintiff's court costs and reasonable attorneys' fees, including fees as

53

provided in 29 U.S.C. 1132(g)(1);

d.     Pre- and post-judgment interest at the highest rate allowed by law;

e.     Treble damages for interference with contract and prospective business relationships;

f.     Injunctive relief prohibiting interference with Plaintiff's contracts and prospective business relations;

g.     Injunctive and declaratory relief clarifying the rights of beneficiaries, and requiring Aetna to cease its wrongful rejection of Plaintiff's claims for services, and to enjoin breaches of fiduciary duties pursuant to 29 U.S.C. §1132(a)(3) as described herein;

h.     That as to any patient whose claims are found to not have been administratively exhausted, and that such exhaustion would not be futile, that a stay be granted as to those patients' claims until the appeals procedure is completed.

i.     For an evidentiary hearing as to Aetna's bias, conflict of interest in light of its apparent effect upon the adjudication of claims submitted by Plaintiff;

i.     Such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

s/ David L. Steed
David L. Steed        (BPR # 7361)
CORNELIUS & COLLINS, LLP
1500 Nashville City Center
511 Union Street
Nashville, TN 37219
Ph:  615-244-1440
Fax: 615-254-9477

Attorney for Plaintiff, Productive MD, LLC

## CERTIFICATE OF SERVICE

I do hereby certify that a true and exact copy of the foregoing has been served via the Court's
ECF system, upon the following on this ___th day of _____, 2013:

Waverly D. Crenshaw, Jr., Esq.
John E.B. Gerth, Esq.
Waller Lansden Dortch & Davis, LLP
Nashville City Center
511 Union Street, Suite 2700
Nashville, TN  37219

James C. Crumlish, III
Elliott Greenleaf & Siedzikowski, P.C.
925 Harvest Drive
Blue Bell, PA 19422

Attorneys for Aetna

s/ David L. Steed
David L. Steed

55

| PATIENT IDENTIFIER NUMBER | PLAN SPONSOR | DATE OF SVC | BILLED | APPLIED | BALANCE | FULLY/SELF INSURED |
|---|---|---|---|---|---|---|
| 1 - Deleted | | | | | | |
| 2 - Deleted | | | | | | |
| 3 | Cynergies Consulting, Inc. | 08/26/10 | 2,676.00 | 0.00 | 2,676.00 | Fully |
| 4 | Dell, Inc. | 02/23/10 | 573.00 | 0.00 | 573.00 | Self |
| 5 | Dell, Inc. | 10/16/09 | 2,706.00 | 0.00 | 2,706.00 | Self |
| 6 | Rich Products Corp. | 10/11/11 | 2,718.00 | 0.00 | 2,718.00 | Self |
| 7 | Federal Employees Health Benefits Program | 11/22/11 | 2,718.00 | 0.00 | 2,718.00 | Fully |
| 8 | AT&T, Inc./Bell South Corp. | 09/09/09 | 2,706.00 | 0.00 | 2,706.00 | Self |
| 9 | Lifeway Christian Resources | 06/24/09 | 2,706.00 | 0.00 | 2,706.00 | Fully |
| 10 - Deleted | | | | | | |
| 11 | Cox Enterprises, Inc. | 08/27/09 | 2,706.00 | 0.00 | 2,706.00 | Self |
| 12 | Vanderbilt University | 10/03/11 | 2,718.00 | 0.00 | 2,718.00 | Self |
| 13 | HSN, Inc. | 03/09/10 | 2,676.00 | 0.00 | 2,676.00 | Self |
| 14 | Suntrust Banks, Inc. | 02/23/10 | 2,676.00 | 0.00 | 2,676.00 | Self |
| 15 | HCA Management Services | 03/07/11 | 2,676.00 | 0.00 | 2,676.00 | Self |
| 16 | HCA Management Services | 05/03/11 | 1,105.00 | 0.00 | 1,105.00 | Self |
| 17 | Expeditors International of Washington, LP | 02/15/11 | 2,676.00 | 0.00 | 2,676.00 | Split Funded Group Plan - Unfunded |
| 18 | HSN, Inc. | 09/20/11 | 2,718.00 | 0.00 | 2,718.00 | Self |
| 19 | Railroad Employees National Health and Welfar Plan | 01/13/10 | 983.00 | 0.00 | 983.00 | Self |
| 20 | Home Depot USA, Inc. | 07/07/10 | 2,676.00 | 0.00 | 2,676.00 | Self |
| 21 - Deleted | | | | | | |
| 22 | Affiliated Computer Services, Inc. (ACS) | 02/14/11 | 1,105.00 | 271.70 | 569.30 | Self |
| 23 | Walgreen's | 07/09/09 | 1,105.00 | 0.00 | 1,105.00 | Fully |
| 24 - Deleted | | | | | | |
| 25 | Gaylord Entertainment Co. | 07/10/09 | 2,706.00 | 0.00 | 2,706.00 | Self |
| 26 | HCA Management Services | 09/13/11 | 2,568.00 | 0.00 | 2,568.00 | Self |
| 27 | Willis North America, Inc. | 11/15/11 | 2,718.00 | 0.00 | 2,718.00 | Self |
| 28 | Gaylord Entertainment Co. | 03/09/10 | 2,676.00 | 0.00 | 2,676.00 | Self |
| 29 | UPS, Inc. | 09/13/10 | 2,676.00 | 0.00 | 2,676.00 | Self |
| 30 | Rock-Tenn Co. | 08/26/09 | 2,706.00 | 0.00 | 2,706.00 | Self |
| 31 | The Christie Cookie Co. | 10/29/09 | 2,706.00 | 0.00 | 2,706.00 | Fully |
| 32 | HCA Management Services | 02/28/11 | 1,105.00 | 0.00 | 1,105.00 | Self |
| 33 | HCA Management Services | 07/14/09 | 2,706.00 | 0.00 | 2,706.00 | Self |
| 34 | Ingersoll Rand Co. | 09/03/10 | 1,105.00 | 0.00 | 1,105.00 | Self |
| 35 | Comcast Corp. | 07/15/11 | 1,105.00 | 0.00 | 1,105.00 | Self |
| 36 | Vanderbilt University | 09/24/10 | 2,676.00 | 0.00 | 2,676.00 | Self |
| 37 | Computer Sciences Corp. | 09/23/11 | 2,718.00 | 0.00 | 2,718.00 | Self |
| 38 | Hewlett-Packard Co. | 02/03/10 | 2,676.00 | 0.00 | 2,676.00 | Self |
| 39 | High-Tech Institute/TCI Education | 09/03/10 | 1,105.00 | 0.00 | 1,105.00 | Fully |
| 40 | Gaylord Entertainment Co. | 04/07/10 | 2,676.00 | 0.00 | 2,676.00 | Self |
| 41 | HCA Management Services | 12/11/09 | 2,706.00 | 0.00 | 2,706.00 | Self |
| 42 | Deloitte, LLP | 04/21/11 | 2,676.00 | 0.00 | 2,676.00 | Self |

| PATIENT IDENTIFIER NUMBER | PLAN SPONSOR | DATE OF SVC | BILLED | APPLIED | BALANCE | FULLY/SELF INSURED |
|---|---|---|---|---|---|---|
| 43 | HCA Management Services | 08/03/11 | 2,718.00 | 0.00 | 2,718.00 | Self |
| 44 | DELETED | | - | - | 0.00 | |
| 45 | Gaylord Entertainment Co. | 08/10/10 | 2,676.00 | 0.00 | 2,676.00 | Self |
| 46 | Rite Aid Corp. | 04/22/10 | 2,676.00 | 0.00 | 2,676.00 | Self |
| 47 | Marriott International Inc. | 08/06/09 | 2,706.00 | 0.00 | 2,706.00 | Self |
| 48 | Hewlett-Packard Co. | 02/24/10 | 2,676.00 | 0.00 | 2,676.00 | Self |
| 49 | Deloitte, LLP | 02/04/10 | 2,676.00 | 0.00 | 2,676.00 | Self |
| 50 | Hudson Group, Inc. | 08/26/11 | 2,718.00 | 0.00 | 2,718.00 | Fully |
| 51 | UBS Financial | 11/04/10 | 2,676.00 | 0.00 | 2,676.00 | Self |
| 52 | L-1 Identity Solutions Operating Co. | 08/09/11 | 2,718.00 | 0.00 | 2,718.00 | Self |
| 53 | Spectal Industries USA Inc./J-DAK | 06/24/11 | 2,676.00 | 0.00 | 2,676.00 | Fully |
| 54 | Bank Of America Corp. | 01/20/10 | 2,676.00 | 0.00 | 2,676.00 | Self |
| 55 | Bank Of America Corp. | 10/28/09 | 573.00 | 0.00 | 573.00 | Self |
| 56 | Genesco, Inc. | 06/01/09 | 2,706.00 | 0.00 | 2,706.00 | Fully |
| 57 | | DELETED | | - | 0.00 | |
| 58 | American General Financial Group/AIG, Inc. | 08/10/10 | 2,676.00 | 0.00 | 2,676.00 | Self |
| 59 | Deloitte, LLP | 05/27/10 | 2,676.00 | 0.00 | 2,676.00 | Self |
| 60 | Dell, Inc. | 11/05/09 | 2,706.00 | 0.00 | 2,706.00 | Self |
| 61 | Rockwell Automation, Inc. | 12/15/09 | 2,706.00 | 0.00 | 2,706.00 | Self |
| 62 | Starbucks Corp. | 07/21/09 | 2,706.00 | 0.00 | 2,706.00 | Self |
| 63 | HCA Management Services | 03/22/11 | 2,676.00 | 0.00 | 2,676.00 | Self |
| 64 | UPS, Inc. | 11/22/11 | 2,718.00 | 0.00 | 2,718.00 | Self |
| 65 | Burlington Coat Factory Warehouse Corp. | 06/04/09 | 1,105.00 | 0.00 | 1,105.00 | Self |
| 66 | ERM Group, Inc. | 08/10/11 | 2,568.00 | 0.00 | 2,568.00 | Self |
| 67 | HCA Management Services | 11/07/11 | 2,718.00 | 0.00 | 2,718.00 | Self |
| 68 | IBM, Inc. | 04/20/10 | 2,676.00 | 0.00 | 2,676.00 | Fully |
| 69 | Allstate Insurance Co. | 05/17/10 | 2,676.00 | 0.00 | 2,676.00 | Self |
| 70 | Metropolitan Nashville Airport Authority | 12/01/09 | 2,706.00 | 0.00 | 2,706.00 | Self |
| 71 | Madison Paving, LLC | 06/01/10 | 1,310.00 | 0.00 | 1,310.00 | Fully |
| 72 | HCA Management Services | 06/19/09 | 2,706.00 | 0.00 | 2,706.00 | Self |
| 73 | UPS, Inc. | 07/09/09 | 1,105.00 | 0.00 | 1,105.00 | Self |
| 74 | Dell, Inc. | 03/08/10 | 2,676.00 | 0.00 | 2,676.00 | Self |
| 75 | Ladies' Hermitage Assn. | 11/05/09 | 2,706.00 | 0.00 | 2,706.00 | Fully |
| 76 | RTG Furniture Corp. & Affiliates | 09/14/11 | 2,718.00 | 0.00 | 2,718.00 | Self |
| 77 | AmeriGas Propane, Inc. | 03/19/10 | 2,676.00 | 0.00 | 2,676.00 | Self |
| 78 | Schering-Plough Corp. | 02/11/10 | 2,676.00 | 0.00 | 2,676.00 | Self |
| 79 | Suntrust Banks, Inc. | 12/04/09 | 2,706.00 | 0.00 | 2,706.00 | Self |
| 80 | EF Precision, Inc. | 07/19/11 | 2,718.00 | 0.00 | 2,718.00 | Fully |
| 81 | UPS, Inc. | 11/11/09 | 2,706.00 | 0.00 | 2,706.00 | Self |
| 82 | First Baptist Church | 06/12/09 | 2,706.00 | 0.00 | 2,706.00 | Fully |
| 83 | HCA Management Services | 02/01/11 | 2,676.00 | 0.00 | 2,676.00 | Self |
| 84 | HCA Management Services | 02/18/11 | 2,676.00 | 0.00 | 2,676.00 | Self |
| 85 | Comcast Corp. | 12/16/10 | 1,105.00 | 0.00 | 1,105.00 | Self |

| PATIENT IDENTIFIER NUMBER | PLAN SPONSOR | DATE OF SVC | BILLED | APPLIED | BALANCE | FULLY/SELF INSURED |
|---|---|---|---|---|---|---|
| 86 | Tyco International Management Co. | 07/12/10 | 2,676.00 | 0.00 | 2,676.00 | Self |
| 87 | Comcast Corp. | 07/22/10 | 1,105.00 | 0.00 | 1,105.00 | Self |
| 88 | Gaylord Entertainment Co. | 05/19/10 | 2,676.00 | 0.00 | 2,676.00 | Self |
| 89 | Cross Country Healthcare, Inc. | 10/12/09 | 2,706.00 | 215.00 | 2,491.00 | Self |
| 90 | UPS, Inc. | 08/05/10 | 2,676.00 | 0.00 | 2,676.00 | Self |
| 91 | Rug Doctor, Inc. | 03/29/10 | 2,676.00 | 0.00 | 2,676.00 | Self |
| 92 | HCA Management Services | 09/26/11 | 2,718.00 | 0.00 | 2,718.00 | Self |
| 93 | Harleysville Insurance Co. | 03/17/11 | 2,676.00 | 0.00 | 2,676.00 | Self |
| 94 | Lifeway Christian Resources | 09/08/09 | 2,706.00 | 0.00 | 2,706.00 | Fully |
| 95 | Willis North America, Inc. | 10/17/11 | 2,718.00 | 0.00 | 2,718.00 | Self |
| 96 | Nationwide Argosy Solutions, LLC | 08/12/10 | 2,676.00 | 0.00 | 2,676.00 | Self |
| 97 | Grange Mutual Casualty Co. | 04/05/10 | 573.00 | 0.00 | 573.00 | Self |
| 98 | HCA Management Services | 07/23/09 | 2,706.00 | 0.00 | 2,706.00 | Self |
| 99 | Comcast | 11/23/10 | 1,105.00 | 0.00 | 1,105.00 | Self |
| 100 | HCA Management Services | 11/01/11 | 2,718.00 | 0.00 | 2,718.00 | Self |
| 101 | Comcast | 09/01/09 | 2,706.00 | 0.00 | 2,706.00 | Self |
| 102 | Interline Brands | 09/07/11 | 2,718.00 | 0.00 | 2,718.00 | Fully |
| 103 | Borders Group, Inc. | 02/23/10 | 2,676.00 | 0.00 | 2,676.00 | Self |
| 104 | Suntrust Banks, Inc. | 07/10/09 | 2,706.00 | 0.00 | 2,706.00 | Self |
| 105 | New Prosys Corp/Bell Microproducts, Inc. | 04/05/10 | 2,676.00 | 0.00 | 2,676.00 | Fully |
| 106 | Borders Group, Inc. | 05/23/11 | 2,676.00 | 0.00 | 2,676.00 | Self |
| 107 | Deloitte, LLP | 08/08/11 | 2,718.00 | 0.00 | 2,718.00 | Self |
| 108 | Dynamics Research Corp. | 07/06/09 | 2,706.00 | 0.00 | 2,706.00 | Self |
| 109 | Home Depot USA, Inc. | 03/29/11 | 2,676.00 | 0.00 | 2,676.00 | Self |
| 110 | Quest Diagnostics, Inc. | 01/11/10 | 573.00 | 0.00 | 573.00 | Self |
| 111 | Vanderbilt University | 06/20/11 | 1,105.00 | 0.00 | 1,105.00 | Self |
| 112 | American General Financial Group/AIG, Inc. | 12/27/10 | 940.00 | 0.00 | 940.00 | Self |
| 113 | Suntrust Banks, Inc. | 08/03/11 | 2,718.00 | 0.00 | 2,718.00 | Self |
| 114 | Mars, Inc. | 04/23/10 | 1,105.00 | 0.00 | 1,105.00 | Self |
| 115 | Gaylord Entertainment Co. | 02/11/10 | 2,676.00 | 0.00 | 2,676.00 | Self |
| 116 | Costco Wholesale Corp. | 05/24/11 | 573.00 | 0.00 | 573.00 | Self |
| 117 | Genesco, Inc. | 06/25/10 | 2,676.00 | 0.00 | 276.00 | Fully |
| 118 | Gaylord Entertainment Co. | 01/21/10 | 2,676.00 | 0.00 | 2,676.00 | Self |
| 119 | Gevity Actives | 01/20/10 | 2,676.00 | 0.00 | 2,676.00 | Fully |
| 120 | HCA Management Services | 08/29/11 | 2,718.00 | 0.00 | 2,718.00 | Self |
| 121 | Bruegger's Enterprises, Inc. | 05/16/11 | 2,676.00 | 0.00 | 2,676.00 | Self |
| 122 | Willis North America, Inc. | 06/23/09 | 2,706.00 | 0.00 | 2,706.00 | Self |
| 123 | Computer Sciences Corp. | 02/15/11 | 2,676.00 | 0.00 | 2,676.00 | Self |
| 124 | Borders Group, Inc. | 08/19/10 | 2,718.00 | 0.00 | 2,718.00 | Self |
| 125 | Home Depot USA, Inc. | 07/28/10 | 2,676.00 | 0.00 | 2,676.00 | Self |
| 126 | Conso International Corp. | 07/08/11 | 2,718.00 | 0.00 | 2,718.00 | Fully |
| 127 | Railroad Employees National Health and Welfare Plan | 12/08/09 | 2,706.00 | 0.00 | 2,706.00 | Self |
| 128 | Comcast Corp. | 06/27/11 | 2,676.00 | 0.00 | 2,676.00 | Self |

**Attachment A-1***

**Aetna Unpaid Claims from May 1, 2009 to November 30, 2011**

| PATIENT IDENTIFIER NUMBER | PLAN SPONSOR | DATE OF SVC | BILLED | APPLIED | BALANCE | FULLY/SELF INSURED |
|---|---|---|---|---|---|---|
| 129 | Gaylord Entertainment Co. | 01/18/10 | 1,090.00 | 300.00 | 790.00 | Self |
| 130 | National Carriers and United Transportation Union (NRC/UTU) Health and Welfare Plan | 07/09/09 | 1,105.00 | 0.00 | 1,105.00 | Self |
| 131 | Dell, Inc. | 06/07/10 | 2,676.00 | 0.00 | 2,676.00 | Self |
| 132 | Rich Products Corp. | 08/17/11 | 2,566.00 | 0.00 | 2,566.00 | Self |
| 133 | Suntrust Banks, Inc. | 03/08/10 | 2,676.00 | 0.00 | 2,676.00 | Self |
| 134 - Deleted | | | | | | |
| 135 | HCA Management Services | 06/07/10 | 2,676.00 | 0.00 | 2,676.00 | Self |
| 136 | UPS, Inc. | 11/01/11 | 2,718.00 | 0.00 | 2,718.00 | Self |
| 137 | HCA Management Services | 01/13/10 | 983.00 | 0.00 | 983.00 | Self |
| 138 | Vanderbilt University | 04/28/10 | 2,676.00 | 0.00 | 2,676.00 | Self |
| 139 | Deloitte, LLP | 03/19/10 | 2,676.00 | 0.00 | 2,676.00 | Self |
| 140 | HCA Management Services | 08/16/11 | 2,718.00 | 0.00 | 2,718.00 | Self |
| 141 | Aetna Advantage PPO Plan | 08/30/11 | 2,718.00 | 0.00 | 2,718.00 | Fully |
| 142 | Randstad USA | 07/14/11 | 2,718.00 | 0.00 | 2,718.00 | Fully |
| 143 | Triumph Aerostructures | 11/21/11 | 2,718.00 | 0.00 | 2,718.00 | Self |
| **Total of Unpaid Claims from 5-1-2009 to 11-30-2011** | | | | | **317,303.30** | |

*Revised 1/13

## Attachment A-2
### Additional Aetna Unpaid Claims through February 29, 2012

| PATIENT IDENTIFIER NUMBER | GROUP | DATE OF SVC | BILLED | APPLIED | BALANCE | FULLY/SELF INSURED |
|---|---|---|---|---|---|---|
| 144 | HSN, Inc. | 9/23/2010 | 2676 | 0 | 2676 | Self |
| 145 | Bright Horizons Children's Center LLC | 02/06/12 | 340.00 | 0.00 | 340.00 | Self |
| 146 | Bright Horizons Children's Center LLC | 02/06/12 | 2,060.00 | 0.00 | 2,060.00 | Self |
| 147 | HCA Management Services | 12/08/11 | 2,718.00 | 0.00 | 2,718.00 | Self |
| 148 | Comcast Corp. | 02/01/12 | 340.00 | 0.00 | 340.00 | Self |
| 149 | Aetna Individual Advantage | 02/06/12 | 340.00 | 0.00 | 340.00 | Fully |
| 150 | Aetna Individual Advantage | 02/06/12 | 2,060.00 | 0.00 | 2,060.00 | Fully |
| 151 | UPS, Inc. | 02/28/12 | 340.00 | 0.00 | 340.00 | Self |
| 152 | UPS, Inc. | 02/28/12 | 2060.00 | 0.00 | 2060.00 | Self |
| 153 | Tyco International Management | 02/21/12 | 2060.00 | 0.00 | 2060.00 | Self |
| 154 | Hewlett-Packard, Co. | 12/19/11 | 2,718.00 | 0.00 | 2,718.00 | Self |
| 155 | Southwest Business Corp. | 02/22/12 | 340.00 | 0.00 | 340.00 | Self |
| 156 | Southwest Business Corp. | 02/22/12 | 2060.00 | 0.00 | 2060.00 | Self |
| 157 | Bank of America Corp. | 12/1/2010 | 2676 | 0 | 2,676.00 | Self |
| 158 | Southwest Business Corp. | 01/30/12 | 340.00 | 0.00 | 340.00 | Self |
| 159 | HCA Management Services | 12/22/11 | 2,718.00 | 0.00 | 2,718.00 | Self |
| 160 | Guideposts A Church | 01/26/12 | 2,060.00 | 0.00 | 2,060.00 | Fully |
| 161 | La Petite Academy/Learning Care Group, Inc. | 4/19/2011 | 2718 | 0 | 2,718.00 | Self |
| 162 | UPS, Inc. | 01/25/12 | 2,060.00 | 0.00 | 2,060.00 | Self |
| 163 | Triumph Group | 11/30/11 | 2718.00 | 342.75 | 2375.25 | Self |
| 164 | Mars, Inc. | 01/12/12 | 600.00 | 0.00 | 600.00 | Self |
| 165 | Lincoln Tech Institute | 01/16/12 | 2,060.00 | 0.00 | 2,060.00 | Fully |
| 166 | HCA Management Services | 12/15/11 | 2,718.00 | 0.00 | 2,718.00 | Self |
| 167 | Automatic Data | 12/29/11 | 450.00 | 0.00 | 450.00 | Self |
| 168 | Gaylord Entertainment Co. | 11/29/11 | 2,718.00 | 0.00 | 2718.00 | Self |
| 169 | Emory University | 01/27/12 | 2,060.00 | 0.00 | 2,060.00 | Self |
| 170 | UPS, Inc. | 2/9/2011 | 2718 | 0 | 2,718.00 | Self |
| 171 | Lockheed Martin | 11/30/2011 | 2718 | 0 | 2,718.00 | Self |
| 172 | UPS, Inc. | 01/11/12 | 2,060.00 | 0.00 | 2,060.00 | Self |
| 173 | E. I. Dupont | 12/29/2009 | 863 | 43.51 | 823.59 | Self |
| 174 | Catholic Healthcare Audit | 02/08/12 | 340.00 | 0.00 | 340.00 | Fully |
| 175 | Washington Inventory Service | 02/27/12 | 340.00 | 0.00 | 340.00 | Self |
| 176 | Washington Inventory Service | 02/27/12 | 2060.00 | 0.00 | 2060.00 | Self |
| 177 | Ingersoll Rand Co. | 02/13/12 | 340.00 | 0.00 | 340.00 | Self |
| 178 | Ingersoll Rand Co. | 02/13/12 | 2,060.00 | 0.00 | 2,060.00 | Self |
| 179 | Deloitte, LLP | 12/15/11 | 2,718.00 | 0.00 | 2,718.00 | Self |
| 180 | Associated Press | 01/10/12 | 600.00 | 0.00 | 600.00 | Self |
| 181 | AARP Essential Premier Health Insurance | 02/06/12 | 340.00 | 0.00 | 340.00 | Fully |
| 182 | AARP Essential Premier Health Insurance | 02/06/12 | 2,060.00 | 0.00 | 2,060.00 | Fully |
| Total of Additional Unpaid Claims through 2-29-2012 | | | | | 64,842.84 | |

| | |
|---|---|
| **Total of Unpaid Claims through 2-29-2012** | **382,146.14** |

| PATIENT ID # | Plan Name | Agent for Service of Process/ Lawsuit |
|---|---|---|
| 3 | Aetna Choice C Ded) | |
| 4 | Dell, Inc. Comprehensive Welfare Benefits Plan | Benefits Administration Committee<br>Dell Inc Comprehensive Welfare Benefits Plan<br>c o Global Benefits Director<br>One Dell Way<br>RR1 Box 42<br>Round Rock Texas 78682 |
| 5 | Dell, Inc. Comprehensive Welfare Benefits Plan | Benefits Administration Committee<br>Dell Inc Comprehensive Welfare Benefits Plan<br>c o Global Benefits Director<br>One Dell Way<br>RR1 Box 42<br>Round Rock Texas 78682 |
| 6 | RICH PRODUCTS CORPORATION INSURED WELFARE BENEFITS PLAN | |
| 7 | | |
| 8 | ATT Umbrella Benefit Plan No 1 | ATT Inc<br>P 0Box 29690<br>San Antonio TX 78229 |
| 9 | | Tennessee Department of Commerce and Insurance<br>Attn HMO Grievance Coordinator<br>500 James Robertson Parkway 4 th Floor<br>Nashville Tennessee 37243 0582 |
| 11 | COX ENTERPRISES, INC. WELFARE BENEFIT PLAN | |
| 12 | Employee Welfare Benefit Plan | Aetna Life Insurance Company<br>151 Farmington Avenue<br>Hartford CT 06156 |
| 13 | Erisa, HSN, INC. EMPLOYEE HEALTH AND WELFARE BENEFITS PLAN<br>Choice POS II, 000429 | HSN Inc<br>General Counsel<br>1 HSN Dr<br>St Petersburg FL33705 |
| 14 | GB&T BANCSHARES MEDICAL DENTAL PLAN | SUNTRUST BANK<br>CRAFT, SUSAN S<br>5350 POPLAR AVE<br>STE 100<br>MEMPHIS, TN 38119-3662 USA |
| 15 | HCA Health & Benefits Plan | General CounselSecretary<br>HCA Inc<br>One Park Plaza i2E<br>Nashville TN 37203 |

| PATIENT ID # | Plan Name | Agent for Service of Process/ Lawsuit |
|---|---|---|
| 16 | HCA Health & Benefits Plan | General CounselSecretary<br>HCA Inc<br>One Park Plaza i2E<br>Nashville TN 37203 |
| 17 | MEDICAL, DENTAL AND VISION PLANS | |
| 18 | HSN, INC. Employee Health and Welfare Benefits Plan | |
| 19 | The Railroad Employees National Health and Welfare Plan | |
| 20 | HOME DEPOT MEDICAL AND DENTAL PLAN | |
| 22 | The Affiliated Computer Company Funded Welfare Benefit Plan | Affiliated Computer Services Inc<br>General Counsel andor Benefits Plan Administrator<br>2828 N Haskell<br>Dallas TX 75204<br>214841 6111 |
| 23 | WALGREEN CO. HEALTH AND WELFARE BENEFITS TRUST | Grievance Coordinator<br>Aetna Health Inc<br>1801 West End Avenue<br>Suite 500 |
| 25 | GAYLORD ENTERTAINMENT COMPANY EMPLOYEE HEALTH AND WELFARE PLAN | |
| 26 | HCA Health & Benefits Plan | General CounselSecretary<br>HCA Inc<br>One Park Plaza i2E<br>Nashville TN 37203 |
| 27 | Willis North America Inc. Medical Expense Benefit Plan | Adam Rosman<br>Willis North America Inc<br>Secretary and General Counsel<br>One World Financial Center |
| 28 | GAYLORD ENTERTAINMENT COMPANY EMPLOYEE HEALTH AND WELFARE PLAN | |
| 29 | The UPS National Health Plan for Part Time Employees | Hyatt Legal Plans<br>1111 Superior Avenue<br>Cleveland OH 44114 |
| 30 | Rock Tenn Company Group Benefit Plan | Rock Tenn Company<br>POBox 4098<br>Norcross GA 30091 0048 |
| 31 | Grievance Coordinator<br>Aetna Health Inc<br>1801 West End Avenue<br>Suite 500 | |

| PATIENT ID # | Plan Name | Agent for Service of Process/ Lawsuit |
|---|---|---|
| 32 | HCA Health & Benefits Plan | General CounselSecretary<br>HCA Inc<br>One Park Plaza i2E<br>Nashville TN 37203 |
| 33 | HCA Health & Benefits Plan | General CounselSecretary<br>HCA Inc<br>One Park Plaza i2E<br>Nashville TN 37203 |
| 34 | The Ingersoll Rand Company Health and Welfare Benefit Plan | CT Corporation Systems<br>820 Bear Tavern Road<br>West Trenton NJ 08628 |
| 35 | NBCUniversal Comprehensive Health and Welfare Benefit Plan | NBCUniversal<br>30 Rockefeller Center<br>New York NY 10112<br>877 6706228 NBCUniversal |
| 36 | NBCUniversal Comprehensive Health and Welfare Benefit Plan | NBCUniversal<br>30 Rockefeller Center<br>New York NY 10112<br>877 6706228 NBCUniversal |
| 37 | CSC HMO Healthcare Plans | CSC<br>Corporate Employee Benefits Department<br>2100 East Grand Ave<br>El Segundo CA 90245 |
| 38 | | Hewlett Packard Company<br>co CT Corporation System<br>818 West 7th Street<br>Los Angeles CA 90017 |
| 39 | | HighTech Institute Inc TCI Education Inc<br>16404 N Black Canyon hwy 180<br>Phoenix AZ 85053 |
| 40 | GAYLORD ENTERTAINMENT COMPANY EMPLOYEE HEALTH AND WELFARE PLAN | |
| 41 | HCA Health & Benefits Plan | General CounselSecretary<br>HCA Inc<br>One Park Plaza i2E<br>Nashville TN 37203 |
| 42 | DELOITTE & TOUCHE WELFARE BENEFIT PLAN | Deloitte LLP<br>1633 Broadway<br>New York NY 10019<br>co General Counsel |
| 43 | HCA Health & Benefits Plan | General CounselSecretary<br>HCA Inc<br>One Park Plaza i2E<br>Nashville TN 37203 |
| 45 | GAYLORD ENTERTAINMENT COMPANY EMPLOYEE HEALTH AND WELFARE PLAN | |
| 46 | Master Welfare Benefit Plan | Rite Aid Corporation—GVP Payroll Benefits Shared Services<br>PO Box 3165Harrisburg PA 17105<br>200 Newberry Commons Etters PA 17319 |

| PATIENT ID # | Plan Name | Agent for Service of Process/ Lawsuit |
|---|---|---|
| 47 | MARRIOTT INTERNATIONAL, INC. MEDICAL BENEFITS PLAN | |
| 48 | HEWLETT-PACKARD COMPANY HEALTH MAINTENANCE ORGANIZATION PROGRAM | Hewlett Packard Company<br>co CT Corporation System<br>818 West 7th Street<br>Los Angeles CA 90017 |
| 49 | Welfare Medical Aetna Select Open Access | Deloitte LLP<br>1633 Broadway<br>New York NY 10019<br>co General Counsel |
| 50 | The Hudson Group Plan | Hudson Group HG Inc<br>10300 NW19th Street<br>Miami FL33172 |
| 51 | UBS FINANCIAL SERVICES INC. GROUP HEALTH AND WELFARE BENEFITS PLAN | Head of Benefits<br>UBS Financial Services Inc<br>1000 Harbor Boulevard 10th Floor<br>Weehawken NJ 07086<br>8888279647 |
| 52 | Aetna Choice POS II Medical Plan | L1 Identity Solutions Operating Company<br>Corporate Human Resources Department Head<br>177 Broad Street<br>12th Floor<br>Stamford CT 06901 |
| 53 | SpectAL Industries USA Inc JDAK Health and Welfare Plan | SpectAl Industries USA Inc J DAK<br>6257 Highway 76 East<br>Springfield TN<br>37172 |
| 54 | MBNA CORPORATION MEDICAL PLAN<br><br>The only thing I could find. | Bank of America Plan Administrator<br>901 W Trade Street<br>NC10030330<br>Charlotte NC 28255 |
| 55 | MBNA CORPORATION MEDICAL PLAN<br><br>The only thing I could find. | Bank of America Plan Administrator<br>901 W Trade Street<br>NC10030330<br>Charlotte NC 28255 |
| 56 | GENESCO EMPLOYEE BENEFIT PLAN | |
| 58 | American International Group Inc Medical Plan | General Counsel<br>American International Group Inc<br>70 Pine Street<br>New York New York 10270<br>212.770.7000 |
| 59 | DELOITTE & TOUCHE WELFARE BENEFIT PLAN | Deloitte LLP<br>1633 Broadway<br>New York NY 10019<br>co General Counsel |
| 60 | Dell, Inc. Comprehensive Welfare Benefits Plan | DELL INC<br>Benefits Administration Committee<br>One Dell Way<br>Round Rock, Texas 78682 |

| PATIENT ID # | Plan Name | Agent for Service of Process/ Lawsuit |
|---|---|---|
| 61 | Rockwell Automation Employee Health Plan | Corporate Secretary<br>Rockwell Automation<br>1201 Second Street<br>Milwaukee WI 53204 |
| 62 | Starbucks U.S. Benefits and Savings Plans | Starbucks Corporation co General Counsel<br>2401 Utah Avenue South Mail Stop SLA1<br>Seattle WA 98134<br>206 4471575 |
| 63 | HCA Health & Welfare Benefits Plan | General CounselSecretary<br>HCA Inc<br>One Park Plaza i2E<br>Nashville TN 37203 |
| 64 | The Flexible Benefits Plan | Hyatt Legal Plans<br>1111 Superior Avenue<br>Cleveland OH 44114 |
| 65 | BURLINGTON COAT FACTORY WAREHOUSE CORPORATION MEDICAL PLAN | Burlington Coat Factory Warehouse Corp Benefits<br>Burlington Coat Factory Warehouse Corp<br>1830 Route 130 North<br>Burlington NJ 08016 |
| 66 | Aetna Choice POS II Medical Plan | ERM Group Inc<br>350 Eagleview Blvd Suite 200<br>Exton PA 19341 |
| 67 | HCA Health & Benefits Plan | General CounselSecretary<br>HCA Inc<br>One Park Plaza i2E<br>Nashville TN 37203 |
| 68 | IBM EMPLOY EES HEALTH ASSOCIATION SUPPLEMENATRY MEOICAL PLAN | |
| 69 | Allstate Cafeteria Plan | Plan Administrator Allstate Cafeteria Plan<br>Allstate Insurance Company<br>2775 Sanders Road Suite E5<br>Northbrook IL 600626127<br>847 4028827 |
| 70 | Aetna Choice POS II Medical Plan | |
| 71 | Gatekeeper PPO Medical Plan | Madison Paving LLC<br>21 Edenwold Road<br>Madison TN 37115 |
| 72 | HCA Health & Benefits Plan | General CounselSecretary<br>HCA Inc<br>One Park Plaza i2E<br>Nashville TN 37203 |
| 73 | The Flexible Benefits Plan | Hyatt Legal Plans<br>1111 Superior Avenue<br>Cleveland OH 44114 |
| 74 | Dell, Inc. Comprehensive Welfare Benefits Plan | |

| PATIENT ID # | Plan Name | Agent for Service of Process/ Lawsuit |
|---|---|---|
| 75 | | |
| 76 | RTG Furniture Corp Affiliates HMO Plan | RTG Furniture Corp Affiliates<br>11540 Highway92 East<br>Seffner FL 33584<br>8136235400 |
| 77 | Comprehensive (Indemnity) Medical Plan | AmeriGas Propane Inc<br>460 North Gulph Road<br>King of Prussia PA 19406 |
| 78 | ScheringPlough Schering Corporation<br>Group Benefits<br>Plan | Office of Corporate Secretary<br>ScheringPlough Corporation<br>2000 Galloping Hill Road<br>Kenilworth NJ 07033<br>9082984000 |
| 79 | GB&T BANCSHARES MEDICAL DENTAL PLAN | |
| 80 | | |
| 81 | The UPS National Health Plan<br>for Part Time Employees | Hyatt Legal Plans<br>1111 Superior Avenue<br>Cleveland OH 44114 |
| 82 | | |
| 83 | HCA Health & Benefits Plan | General CounselSecretary<br>HCA Inc<br>One Park Plaza i2E<br>Nashville TN 37203 |
| 84 | HCA Health & Benefits Plan | General CounselSecretary<br>HCA Inc<br>One Park Plaza i2E<br>Nashville TN 37203 |
| 85 | NBCUniversal Comprehensive Health and Welfare<br>Benefit<br>Plan | NBCUniversal<br>30 Rockefeller Center<br>New York NY 10112<br>877 6706228 NBCUniversal |
| 86 | | |
| 87 | NBCUniversal Comprehensive Health and Welfare<br>Benefit<br>Plan | NBCUniversal<br>30 Rockefeller Center<br>New York NY 10112<br>877 6706228 NBCUniversal |
| 88 | GAYLORD ENTERTAINMENT COMPANY EMPLOYEE<br>HEALTH AND WELFARE PLAN | |

| PATIENT ID # | Plan Name | Agent for Service of Process/ Lawsuit |
|---|---|---|
| 89 | Your Group Plan Cross Country Healthcare Inc | Cross Country Healthcare Inc 6551 Park of Commerce Blvd Boca Raton FL 33487 |
| 90 | The UPS Health and Welfare Package Select | Hyatt Legal Plans 1111 Superior Avenue Cleveland OH 44114 |
| 91 | Rug Doctor Inc Heath and Welfare Plan | Rug Doctor Inc 4701 Old Shepard Place Plano TX 75093 |
| 92 | HCA Health & Benefits Plan | General CounselSecretary HCA Inc One Park Plaza i2E Nashville TN 37203 |
| 93 | HARLEYSVILLE GROUP INC - MEDICAL PLAN | Harleysville Group Inc 355 Maple Avenue Harleysville PA 19438 |
| 94 | | |
| 95 | Willis North America Inc Medical Expense Benefit Plan | Adam Rosman Willis North America Inc Secretary and General Counsel One World Financial Center 200 Liberty Street New York NY 102811003 |
| 96 | Nationwide Graphics Inc Health Welfare Plan | Nationwide Graphics Inc 2500 West Loop South Suite 500 Houston TX 77027 |
| 97 | | Steve Paxton 650 South Front Street Columbus OH 43206 |
| 98 | HCA Health & Benefits Plan | General CounselSecretary HCA Inc One Park Plaza i2E Nashville TN 37203 |
| 99 | Comcast Comprehensive Health and Welfare Benefit Plan | Comcast Corporation 1701 John F Kennedy Blvd Philadelphia PA 19103 215 6651700 |
| 100 | HCA Health & Benefits Plan | General CounselSecretary HCA Inc One Park Plaza i2E Nashville TN 37203 |
| 101 | Comcast Comprehensive Health and Welfare Benefit Plan | Comcast Corporation 1701 John F Kennedy Blvd Philadelphia PA 19103 215 6651700 |

| PATIENT ID # | Plan Name | Agent for Service of Process/ Lawsuit |
|---|---|---|
| 102 | INTERLINE BRANDS, INC. EMPLOYEE BENEFIT PLAN | |
| 103 | | Secretary<br>Borders Group Inc<br>100 Phoenix Drive<br>Ann Arbor Michigan 48108 |
| 104 | GB&T BANCSHARES MEDICAL DENTAL PLAN | |
| 105 | Open Access Gatekeeper Plan | New Prosys Corp<br>4900 Avalon Ridge Parkway<br>Norcross GA 30071 |
| 106 | Borders Group Inc Medical Dental and Health Care FSA Plan | Secretary<br>Borders Group Inc<br>100 Phoenix Drive<br>Ann Arbor Michigan 48108 |
| 107 | Aetna Open Access Select Plan | Deloitte LLP<br>1633 Broadway<br>New York NY 10019<br>co General Counsel<br>1 212 489 1600 |
| 108 | DYNAMICS RESEARCH CORPORATION GROUP INSURANCE PLAN | Dynamics Research Corporation<br>60 Frontage Road<br>Andover MA 01810 |
| 109 | Home Depot Medical and Dental Plan | |
| 110 | Group Welfare Plan for Quest Diagnostics Incorporated | Corporate Vice President Legal and Compliance General Counsel<br>Quest Diagnostics Incorporated<br>Three Giralda Farms<br>Madison NJ 07940 |
| 111 | Aetna Choice II Standard Option | Aetna Life Insurance Company<br>151 Farmington Avenue<br>Hartford CT 06156 |
| 112 | Amer can International Group Inc Medical Plan | General Counsel<br>American International Group Inc<br>70 Pine Street<br>New York New York 10270 |
| 113 | GB&T BANCSHARES MEDICAL DENTAL PLAN | |
| 114 | Mars Incorporated Health Care Plan | US Benefit Plans Committee<br>co Mars Incorporated<br>ATTN Americas Treasury and Benefits Center<br>100 International Drive |
| 115 | Gaylord Entertainment Company Health and Welfare Plan | |

| PATIENT ID # | Plan Name | Agent for Service of Process/ Lawsuit |
|---|---|---|
| 116 | Costco Wholesale Corporation Employee Benefits Program | Rich Olin General Counsel Costco Wholesale 999 Lake Drive Issaquah WA 98027 |
| 117 | CHARTER OPEN ACCESS PLAN | |
| 118 | GAYLORD ENTERTAINMENT COMPANY EMPLOYEE HEALTH AND WELFARE PLAN | |
| 119 | GEVITY HR INC FLEXIBLE BENEFITS PLAN TriNet- AETNA AFFORDABLE HEALTH CHOICES | |
| 120 | HCA Health & Benefits Plan | General CounselSecretary HCA Inc One Park Plaza i2E Nashville TN 37203 |
| 121 | Open Access Managed Choice Open Access Gatekeeper PPO Plan | Bruegger's Enterprises Inc 159 Bank Street Burlington VT 05401 |
| 122 | Willis North America Inc Medical Expense Benefit Plan | Adam Rosman Willis North America Inc Secretary and General Counsel One World Financial Center 200 Liberty Street New York NY 102811003 |
| 123 | CSC HMO Healthcare Plans | |
| 124 | BORDERS GROUP, INC. MEDICAL, DENTAL & HEALTH CARE FSA PLAN | |
| 125 | Home Depot Medical and Dental Plan | |
| 126 | Refer to the Plan Administrator for this information | Conso International Corporation 6050 Dana Way Antioch TN 37013 |
| 127 | The Railroad Employees National Health and Welfare Plan | |
| 128 | NBCUniversal Comprehensive Health and Welfare Benefit Plan | NBCUniversal 30 Rockefeller Center New York NY 10112 877 6706228 NBCUniversal |

| PATIENT ID # | Plan Name | Agent for Service of Process/ Lawsuit |
|---|---|---|
| 129 | GAYLORD ENTERTAINMENT COMPANY EMPLOYEE HEALTH AND WELFARE PLAN | |
| 130 | The National Railway Carriers and United Transportation Union Health and Welfare Plan | |
| 131 | Dell Inc Comprehensive Welfare Benefits Plan | Dell Inc<br>Benefits Administration Committee<br>One Dell Way<br>Round Rock Texas 78682 |
| 132 | RICH PRODUCTS CORPORATION SELF-INSURED WELFARE BENEFITS PLAN or 2004 RICH PRODUCTS CORPORATION INSURED WELFARE BENEFITS PLAN | Attn Legal Department    Rich Products Corporation<br>One Robert Rich Way<br>PO Box 245<br>Buffalo NY 14240 0245 |
| 133 | GB&T BANCSHARES MEDICAL DENTAL PLAN | |
| 135 | HCA Health & Benefits Plan | General CounselSecretary<br>HCA Inc<br>One Park Plaza i2E<br>Nashville TN 37203 |
| 136 | The UPS Retired Employees Health Care Plan | Hyatt Legal Plans<br>1111 Superior Avenue<br>Cleveland OH 44114 |
| 137 | HCA Health & Benefits Plan | General CounselSecretary<br>HCA Inc<br>One Park Plaza i2E<br>Nashville TN 37203 |
| 138 | GROUP HEALTH CARE FOR VANDERBILT UNIVERSITY | Aetna Life Insurance Company<br>151 Farmington Avenue<br>Hartford CT 06156 |
| 139 | Aetna Open Access Select Plan | Deloitte LLP<br>1633 Broadway<br>New York NY 10019<br>co General Counsel<br>1 212 489 1600 |
| 140 | HCA Health & Benefits Plan | General CounselSecretary<br>HCA Inc<br>One Park Plaza i2E<br>Nashville TN 37203 |
| 141 | | |
| 142 | RANDSTAD NORTH AMERICA HEALTH AND WELFARE BENEFITS PLAN | Randstad North America<br>2015 South Park Place<br>Atlanta GA 30339 |

| PATIENT ID # | Plan Name | Agent for Service of Process/ Lawsuit |
|---|---|---|
| 143 | TRIUMPH GROUP HEALTH & WELFARE PLAN | William M Bauer DirectorRisk Management<br>In addition the Plan Administrator may be served with legal papers.<br>Triumph Group Inc<br>899 Cassatt Road Suite 210<br>Berwyn PA 19312 |
| 144 | Erisa, HSN, INC. EMPLOYEE HEALTH AND WELFARE BENEFITS PLAN<br>Choice POS II, 000426 | HSN Inc<br>General Counsel<br>1 HSN Dr<br>St Petersburg FL33705 |
| 145 | Medical Plan under Bright Horizons Flexible Benefit Plan | Bright HorizonsChildren's Center LLC<br>Plan Administrator<br>200 Talcott Avenue South<br>Watertown MA 02472 |
| 146 | Medical Plan under Bright Horizons Flexible Benefit Plan | Bright HorizonsChildren's Center LLC<br>Plan Administrator<br>200 Talcott Avenue South<br>Watertown MA 02472<br>617 673 8000 |
| 147 | HCA Health & Benefits Plan | General CounselSecretary<br>HCA Inc<br>One Park Plaza i2E<br>Nashville TN 37203 |
| 148 | NBCUniversal Comprehensive Health and Welfare Benefit Plan | NBCUniversal<br>30 Rockefeller Center<br>New York NY 10112<br>877 6706228 NBCUniversal |
| 149 | | |
| 150 | | |
| 151 | The UPS Health and Welfare Package Select | Hyatt Legal Plans<br>1111 Superior Avenue<br>Cleveland OH 44114 |
| 152 | The UPS Health and Welfare Package Select | Hyatt Legal Plans<br>1111 Superior Avenue<br>Cleveland OH 44114 |
| 153 | TYCO INTERNATIONAL HEALTH AND WELFARE BENEFITS PLAN-2002 | |
| 154 | HEWLETT-PACKARD COMPANY COMPREHENSIVE WELFARE BENEFITS PLAN | Hewlett Packard Company<br>co CT Corporation System<br>818 West 7th Street<br>Los Angeles CA 90017<br>1213 6278252 or 1800888 9207 |
| 155 | Southwest Business Corporation Health and Welfare Plan | Southwest Business Corporation<br>9311 San Pedro<br>Suite 600<br>San Antonio TX 78216 |

| PATIENT ID # | Plan Name | Agent for Service of Process/ Lawsuit |
|---|---|---|
| 156 | Southwest Business Corporation Health and Welfare Plan | Southwest Business Corporation 9311 San Pedro Suite 600 San Antonio TX 78216 |
| 157 | MBNA CORPORATION MEDICAL PLAN | Bank of America Benefits Appeals Committee NC10030330 901 W Trade Street Charlotte NC 28255 |
| 158 | Southwest Business Corporation Health and Welfare Plan | Southwest Business Corporation 9311 San Pedro Suite 600 San Antonio TX 78216 |
| 159 | HCA Health & Benefits Plan | General CounselSecretary HCA Inc One Park Plaza i2E Nashville TN 37203 |
| 160 | TV GUIDE LLC GROUP HEALTH AND WELFARE PLAN | |
| 161 | Learning Care Group Employee Health Care Plan | Learning Care Group 21333 Haggerty Road Suite 300 Novi MI 48375 |
| 162 | The UPS National Health Plan for Part Time Employees | Hyatt Legal Plans 1111 Superior Avenue Cleveland OH 44114 |
| 163 | | William M Bauer DirectorRisk Management In addition the Plan Administrator may be served with legal papers |
| 164 | Mars Incorporated Health Care Plan | US Benefit Plans Committee do Mars Incorporated ATTN Mars Treasury and Benefits 100 International Drive Mount Olive NJ 07828 |
| 165 | LINCOLN TECHNICAL INSTITUTE, INC. PLAN | Lincoln Technical Institute Inc 200 Executive Drive West Orange NJ 07052 |
| 166 | HCA Health & Benefits Plan | General CounselSecretary HCA Inc One Park Plaza i2E Nashville TN 37203 |
| 167 | Automatic Data Processing Inc Employee Welfare Plan | |
| 168 | GAYLORD ENTERTAINMENT COMPANY EMPLOYEE HEALTH AND WELFARE PLAN | |
| 169 | EMORY UNIVERSITY HEALTHCARE PLAN | |

| PATIENT ID # | Plan Name | Agent for Service of Process/ Lawsuit |
|---|---|---|
| 170 | The UPS Retired Employees Health Care Plan | Hyatt Legal Plans<br>1111 Superior Avenue<br>Cleveland OH 44114 |
| 171 | Lockfieed Martin Corporation Group Benefits Plan | Lockheed Martin Corror ation<br>6801 Rockledge Drive<br>Bethesda MD 20817<br>3015482301 |
| 172 | The UPS Health and Welfare Package Select | Hyatt Legal Plans<br>1111 Superior Avenue<br>Cleveland OH 44114 |
| 173 | DuPont Medical Plan | E I du Pont de Nemours and Company<br>1007 Market Street<br>Wilmington DE 19898<br>Phone 1302 774 1000 |
| 174 | Catholic Healthcare Audit Network LLC DBA Chan Healthcare Auditors Welfare Plan | Catholic Healthcare Audit Network LLC DBA Chan Healthcare Auditors<br>231 S Bcmiston Ave<br>Ste 300<br>Clayton MO 63105 |
| 175 | WIS INTERNATIONAL/WASHINGTON INVENTORY SERVICE MEDICAL, DENTAL, VISION, EAP AND FSA PLAN | |
| 176 | WIS INTERNATIONAL/WASHINGTON INVENTORY SERVICE MEDICAL, DENTAL, VISION, EAP AND FSA PLAN | |
| 177 | The Ingersoll Rand Company Health and Welfare Benefit Plan | CT Corporation Systems<br>820 Bear Tavern Road<br>West Trenton NJ 08628 |
| 178 | The Ingersoll Rand Company Health and Welfare Benefit Plan | CT Corporation Systems<br>820 Bear Tavern Road<br>West Trenton NJ 08628 |
| 179 | Aetna Open Access Select Plan | Deloitte LLP<br>1633 Broadway<br>New York NY 10019<br>co General Counsel |
| 180 | Associated Press Health and Welfare Plan | Associated Press<br>450 West 33rd Street<br>New York NY 10001 |
| 181 | AARP Essential Premier Health Insurance Plans IL Plan | |
| 182 | AARP Essential Premier Health Insurance Plans IL Plan | |

**Attachment C**

**ProductiveMD Charges by CPT Code**

**TO BE SUPPLEMENTED**

1

| PATIENT ID # | 93000 | 93005 | 93017 | 93018 | 94060 | 94150 | 94010 | 94200 | 94240 | 94360 | 94370 | 94375 | 94620 | 94681 | 94727 | 94729 | 94720 | 94761 | 99091 | 93923 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3 | | $106 | $215 | | $242 | $53 | $91 | | $166 | $152 | $174 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 4 | $106 | $106 | $215 | | $242 | $53 | $91 | | $166 | $152 | $174 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 5 | $106 | | | | | | | | | | | | | | | | | | | |
| 6 | | $106 | | | $242 | $53 | $91 | | $166 | $152 | $174 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 7 | | $106 | $215 | | $242 | $53 | $91 | | $166 | $152 | $174 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 8 | | $106 | $215 | | $242 | $53 | $91 | | $166 | $230 | $174 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 9 | | $106 | $215 | | $242 | $53 | $91 | | $166 | $152 | $126 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 11 | | $106 | $215 | | $242 | $53 | $91 | | $166 | $152 | $174 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 12 | | $106 | $215 | | $242 | $53 | $91 | | $166 | $152 | $174 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 13 | | $106 | $215 | | $242 | $53 | $91 | | $166 | $152 | $174 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 14 | | $106 | $215 | | $242 | $53 | $91 | | $166 | $152 | $42 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 15 | | $106 | $215 | | $242 | $53 | $91 | | $166 | $152 | $126 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 16 | | $106 | $215 | | $242 | $53 | $91 | | $166 | $152 | $174 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 17 | | $106 | $215 | | $242 | $53 | $91 | | $166 | $152 | $42 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 18 | | $106 | $215 | | $242 | $53 | $91 | | $166 | $152 | $174 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 19 | | $106 | $215 | | $242 | $120 | $91 | | $166 | $152 | $174 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 20 | $106 | | $215 | | $242 | $53 | $91 | | $166 | $152 | $174 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 22 | | | | | | | | | | | | | | | | | | | | |
| 23 | | | $215 | | $242 | $53 | $91 | | $166 | $152 | $253 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 25 | | $106 | $215 | | $242 | $53 | $91 | | $166 | $152 | $174 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 26 | | $106 | $215 | | $242 | $53 | $91 | | $166 | $152 | $126 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 27 | | $106 | $215 | | $242 | $53 | $91 | | $166 | $152 | $42 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 28 | | $106 | $215 | | $242 | $53 | $91 | | $166 | $230 | $174 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 29 | | $106 | $215 | | $242 | $53 | $91 | | $166 | $230 | $174 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 30 | | $106 | $215 | | $242 | $53 | $91 | | $166 | $230 | $174 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 31 | | $106 | $215 | | $242 | $53 | $91 | | $166 | $152 | $174 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 32 | | $106 | $215 | | $242 | $53 | $91 | | $166 | $230 | $174 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 33 | $106 | | $215 | | $242 | $53 | $91 | | $166 | $230 | $174 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 34 | | $106 | $215 | | $242 | $53 | $91 | | $166 | $230 | $253 | $147 | $419 | $467 | | | $153 | $110 | $150 | |
| 35 | | $106 | $215 | | $242 | $53 | $91 | | $166 | $126 | $253 | $147 | $419 | $467 | | | $153 | $110 | $150 | |
| 36 | | $106 | $215 | | $242 | $53 | $120 | | $166 | $166 | $253 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 37 | | $106 | $215 | | $242 | $53 | $91 | | $166 | $152 | $174 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 38 | | $106 | $215 | | $242 | $53 | $91 | | $166 | $152 | $42 | $147 | $419 | $467 | | | $153 | $110 | $150 | |
| 39 | | $106 | | | $242 | $53 | $91 | | $166 | $152 | $174 | $147 | $419 | $467 | | | $153 | $110 | $150 | |
| 40 | | $106 | $215 | | $242 | $53 | $91 | | $166 | $230 | $174 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 41 | | $106 | $215 | | $242 | $53 | $91 | | $166 | $152 | $126 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 42 | | $106 | $215 | | $242 | $53 | $91 | | $166 | $152 | $174 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 43 | | $106 | $215 | | $242 | $53 | $91 | | $166 | $174 | $42 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 44 | | | | | | | | | | | | | | | | | | | | |
| 45 | | | | | | | | | | | | | | | | | | | | |
| 46 | | $106 | $215 | | $242 | $53 | $91 | | $166 | $152 | $126 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 47 | | $106 | $215 | | $242 | $53 | $91 | | $166 | $152 | $126 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 48 | | $106 | $215 | | $242 | $53 | $91 | | $166 | $152 | $174 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 49 | | $106 | $215 | | $242 | $53 | $91 | | $166 | $152 | $174 | $147 | $419 | $467 | | | $184 | $110 | $150 | |

**Attachment C**
**ProductiveMD Charges by CPT Code**
**TO BE SUPPLEMENTED**

| PATIENT ID # | 93000 | 93005 | 93017 | 93018 | 94060 | 94150 | 94010 | 94200 | 94240 | 94350 | 94360 | 94370 | 94375 | 94620 | 94681 | 94727 | 94729 | 94720 | 94761 | 99091 | 93923 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 50 | | | | | | | | | | | | | | | | | | | | | |
| 51 | | | | | | | | | | | | | | | | | | | | | |
| 52 | | $106 | $215 | | $242 | $53 | $91 | $166 | | $152 | $174 | | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 53 | | $106 | $215 | | $242 | $53 | $91 | $166 | | $152 | $174 | | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 54 | | | | | | | | | | | | | | | | | | | | | |
| 55 | | | | | | | | | | | | | | | | | | | | | |
| 56 | | | | | | | | | | | | | | | | | | | | | |
| 57 | | | | | | | | | | | | | | | | | | | | | |
| 58 | | $106 | $215 | | | $113 | $91 | $166 | | $152 | $174 | | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 59 | | $106 | $215 | | $242 | $53 | $91 | $166 | | $230 | $174 | $42 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 60 | | | | | | | | | | | | | | | | | | | | | |
| 61 | | $106 | $215 | | $242 | $53 | $91 | $166 | | $152 | $174 | | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 62 | | $106 | $215 | | $242 | $53 | $91 | $166 | | $230 | $174 | $126 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 63 | | $106 | $215 | | $242 | $53 | $91 | $166 | | $152 | $174 | | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 64 | | $106 | $215 | | $242 | $53 | $91 | $166 | | $152 | $174 | | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 65 | | $106 | $215 | | $242 | $53 | $91 | $166 | | $152 | $174 | $42 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 66 | | $106 | $215 | | $242 | $53 | $91 | $166 | | $152 | $174 | | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 67 | | $106 | $215 | | $242 | $53 | $91 | $166 | | $152 | $174 | $42 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 68 | | $106 | $215 | | $242 | $53 | $91 | $166 | | $152 | $174 | | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 69 | | $106 | $215 | | $242 | $53 | $91 | $166 | | $152 | $174 | | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 70 | | | | | | | | | | | | | | | | | | | | | |
| 71 | | $106 | $215 | | | | $91 | | | | | | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 72 | | $106 | $215 | | $242 | $53 | $91 | $166 | | $152 | $174 | $126 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 73 | | $106 | $215 | | $242 | | | | | | $174 | | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 74 | | $106 | $215 | | $242 | $53 | $91 | $166 | | $152 | $174 | | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 75 | | | | | | | | | | | | | | | | | | | | | |
| 76 | | | | | | | | | | | | | | | | | | | | | |
| 77 | | $106 | $215 | | $242 | $53 | $91 | $166 | | $230 | $174 | | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 78 | | | | | | | $91 | | | $230 | | $126 | | | | | | | | | |
| 79 | | $106 | $215 | | $242 | $53 | $91 | $166 | | $152 | $174 | $42 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 80 | | $106 | $215 | | $242 | | | $166 | | $152 | $174 | $126 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 81 | | | | | | | | | | | | | | | | | | | | | |
| 82 | | | | | | | | | | | | | | | | | | | | | |
| 83 | | | | | | | | | | | | | | | | | | | | | |
| 84 | | $106 | $215 | | $242 | $53 | $91 | $166 | | $152 | $174 | $253 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 85 | | | | | $242 | $53 | | $166 | | $152 | $174 | $253 | | | | | | $153 | | | |
| 86 | | | | | | $53 | | | | | | | | | | | | | | | |
| 87 | | | | | $242 | $53 | $91 | $166 | | | | | | | | | | $153 | | | |
| 88 | | $106 | $215 | | $242 | $53 | $91 | $166 | | $230 | $174 | | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 89 | | $106 | $215 | | $242 | $53 | $91 | $166 | | $152 | $174 | | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 90 | | $106 | $215 | | $242 | $53 | $91 | $166 | | $152 | $174 | | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 91 | | | | | | | | | | | | | | | | | | | | | |
| 92 | | $106 | $215 | | $242 | $53 | $91 | $166 | | $152 | $174 | | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 93 | | $106 | $215 | | $242 | $53 | $91 | $166 | | $152 | $174 | | $147 | $419 | $467 | | | $184 | $110 | $150 | |

**Attachment C**
**ProductiveMD Charges by CPT Code**
**TO BE SUPPLEMENTED**

| PATIENT ID# | 93000 | 93005 | 93017 | 93018 | 94060 | 94150 | 94010 | 94200 | 94240 | 94350 | 94360 | 94370 | 94375 | 94620 | 94681 | 94727 | 94729 | 94720 | 94761 | 99091 | 93923 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 94 | | $106 | $215 | $242 | $53 | | $91 | $166 | | $230 | $174 | $126 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 95 | | $106 | $215 | $242 | $53 | | $91 | $166 | | $152 | $174 | $126 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 96 | | $106 | $215 | $242 | $53 | | $91 | $166 | | $152 | $174 | $42 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 97 | $106 | | | | | | | | | | | | | | | | | $153 | | | |
| 98 | | $106 | $215 | $242 | $53 | | $91 | $166 | | $230 | $174 | $126 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 99 | | $106 | $215 | $242 | $53 | | $91 | $166 | | | | $253 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 100 | | $106 | $215 | $242 | $53 | | $91 | $166 | | $152 | $174 | $42 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 101 | | $106 | $215 | $242 | $53 | | $91 | $166 | | $152 | $174 | $126 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 102 | | $106 | $215 | $242 | $53 | | $91 | $166 | | $152 | $174 | $42 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 103 | | $106 | $215 | $242 | $53 | | $91 | $166 | | $152 | $174 | $126 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 104 | | $106 | $215 | $242 | $53 | | $91 | $166 | | $230 | $174 | $126 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 105 | | $106 | $215 | $242 | $53 | | $91 | $166 | | $152 | $174 | $126 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 106 | | $106 | $215 | $242 | $53 | | $91 | $166 | | $152 | $174 | $126 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 107 | | $106 | $215 | $242 | $53 | | $91 | $166 | | $152 | $174 | $42 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 108 | | $106 | $215 | $242 | $53 | | $91 | $166 | | $152 | $174 | $126 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 109 | | | | | | | | | | | | | | | | | | | | | |
| 110 | | | | | | | | | | | | | | | | | | | | | |
| 111 | | | | | | | | | | | | | | | | | | | | | |
| 112 | | | | | | | | | | | | | | | | | | | | | |
| 113 | | $106 | $215 | $242 | $53 | | $91 | $166 | | $152 | $174 | $253 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 114 | | $106 | $215 | $242 | $53 | | $91 | $166 | | $152 | $174 | $42 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 115 | | $106 | $215 | $242 | $53 | | $91 | $166 | | $152 | $174 | $253 | $147 | $419 | $467 | | | $153 | $110 | $150 | |
| 116 | $106 | | | | | | | | | | | | | | | | | | | | |
| 117 | | | | | | | | | | | | | | | | | | | | | |
| 118 | | $106 | $215 | $242 | $53 | | $91 | $166 | | $152 | $174 | | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 119 | | $106 | $215 | $242 | $53 | | $91 | $166 | | $152 | $174 | | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 120 | | $106 | $215 | $242 | $53 | | $91 | $166 | | $152 | $174 | $42 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 121 | | $106 | $215 | $242 | $53 | | $91 | $166 | | $152 | $174 | $42 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 122 | | $106 | $215 | $242 | $53 | | $91 | $166 | | $230 | $174 | $126 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 123 | | $106 | $215 | $242 | $53 | | $91 | $166 | | $152 | $174 | $147 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 124 | | $106 | $215 | $242 | $53 | | $91 | $166 | | $152 | $174 | $42 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 125 | | $106 | $215 | $242 | $53 | | $91 | $166 | | $152 | $174 | $42 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 126 | | $106 | $215 | $242 | $53 | | $91 | $166 | | $152 | $174 | $42 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 127 | | | | | | | | | | | | | | | | | | | | | |
| 128 | | | | | | | | | | | | | | | | | | | | | |
| 129 | | | | | | | | | | | | | | | | | | | | | |
| 130 | | $106 | $215 | $242 | $53 | | $91 | $166 | | $152 | $174 | $147 | $147 | $419 | $467 | | | $153 | $110 | $150 | |
| 131 | | $106 | $215 | $242 | $53 | | $91 | $166 | | $152 | $174 | $147 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 132 | | $106 | $215 | $242 | $53 | | $91 | $166 | | $152 | $174 | $147 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 133 | | $106 | $215 | $242 | $53 | | $91 | $166 | | $152 | $174 | $147 | $147 | $419 | $467 | | | $184 | $110 | $150 | |
| 134 | | | | | | | | | | | | | | | | | | | | | |
| 135 | | | | | | | | | | | | | | | | | | | | | |
| 136 | | | | | | | | | | | | | | | | | | | | | |
| 137 | | | | | | | | | | | | | | | | | | | | | |
| 138 | | $106 | $215 | $242 | $53 | | $91 | $166 | | $152 | $174 | $147 | $147 | $419 | $467 | | | $184 | $110 | $150 | |

Case 3:12-cv-00052   Document 98   Filed 01/22/13   Page 76 of 127 PageID #: 2240

**Attachment C**
**ProductiveMD Charges by CPT Code**
**TO BE SUPPLEMENTED**

| PATIENT ID # | 93000 | 93005 | 93017 | 93018 | 94060 | 94150 | 94010 | 94200 | 94240 | 94350 | 94360 | 94370 | 94375 | 94620 | 94681 | 94727 | 94729 | 94720 | 94761 | 99091 | 93923 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 139 | | $106 | $215 | | $242 | $53 | | | $166 | $152 | $174 | $42 | $147 | $419 | $467 | $174 | $184 | $184 | $110 | $150 | |
| 140 | | $106 | $215 | | $242 | $53 | $91 | | $166 | $152 | $174 | $42 | $147 | $419 | $467 | $174 | $184 | $184 | $110 | $150 | |
| 141 | | $106 | $215 | | $242 | $53 | $91 | | $166 | $152 | $174 | $42 | $147 | $419 | $467 | $174 | $184 | $184 | $110 | $150 | |
| 142 | | $106 | $215 | | $242 | $53 | $91 | | $166 | $152 | $174 | $42 | $147 | $419 | $467 | $174 | $184 | $184 | $110 | $150 | |
| 143 | | $106 | $215 | | $242 | $53 | | | $166 | $152 | $174 | $42 | $147 | $419 | $467 | $174 | $184 | $184 | $110 | $150 | |
| 144 | | $106 | $215 | $143 | $242 | $53 | | | $166 | $152 | $174 | $42 | $147 | $419 | $467 | | $184 | $184 | $110 | $150 | |
| 145 | | | | | | | | | | | | | | | | | | | | | |
| 146 | | $106 | $215 | | $242 | $53 | $91 | | $166 | $152 | $174 | $42 | $147 | $419 | $467 | $174 | $184 | $184 | $110 | $150 | |
| 147 | | $106 | $215 | $143 | $242 | $53 | | | $166 | $152 | $174 | $42 | $147 | $419 | $467 | $174 | $184 | $184 | $110 | $150 | |
| 148 | | $106 | $215 | | $242 | $53 | $91 | | $166 | $152 | $174 | $42 | $147 | $419 | $467 | $174 | $184 | $184 | $110 | $150 | $340 |
| 149 | | | | | | | | | | | | | | | | | | | | | |
| 150 | | | | | | | | | | | | | | | | | | | | | |
| 151 | | $106 | $215 | $143 | $242 | $53 | | | $166 | $152 | $174 | $42 | $147 | $419 | $467 | $174 | $184 | $184 | $110 | $150 | |
| 152 | | $106 | $215 | | $242 | $53 | | | $166 | $152 | $174 | $42 | $147 | $419 | $467 | $174 | $184 | $184 | $110 | $150 | $340 |
| 153 | | $106 | $215 | $143 | $242 | $53 | | | $166 | $152 | $174 | $42 | $147 | $419 | $467 | $174 | $184 | $184 | $110 | $150 | |
| 154 | | $106 | $215 | $143 | $242 | $53 | $91 | | $166 | $152 | $174 | $42 | $147 | $419 | $467 | $174 | $184 | $184 | $110 | $150 | |
| 155 | | | | | | | | | | | | | | | | | | | | | |
| 156 | | | | | | | | | | | | | | | | | | | | | |
| 157 | | | | | | | | | | | | | | | | | | | | | |
| 158 | | | | | | | | | | | | | | | | | | | | | |
| 159 | | $106 | $215 | $143 | $242 | $53 | $91 | | $166 | $152 | $174 | $42 | $147 | $419 | $467 | $174 | $184 | $184 | $110 | $150 | |
| 160 | | $106 | $215 | $143 | $242 | $53 | $91 | | $166 | $152 | $174 | $42 | $147 | $419 | $467 | $174 | $184 | $184 | $110 | $150 | |
| 161 | | $106 | $215 | | $242 | $53 | | | $166 | $152 | $174 | $42 | $147 | $419 | $467 | $174 | $184 | $184 | $110 | $150 | |
| 162 | | $106 | $215 | $143 | $242 | $53 | | | $166 | $152 | $174 | $42 | $147 | $419 | $467 | $174 | $184 | $184 | $110 | $150 | |
| 163 | | | | | | | | | | | | | | | | | | | | | |
| 164 | | $106 | $215 | $143 | $242 | $53 | | | $166 | $152 | $174 | $42 | $147 | $419 | $467 | $174 | $184 | $184 | $110 | $150 | |
| 165 | | $106 | $215 | | $242 | $53 | | | $166 | $152 | $174 | $42 | $147 | $419 | $467 | $174 | $184 | $184 | $110 | $150 | |
| 166 | | $106 | $215 | | $242 | $53 | $91 | | $166 | $152 | $174 | $42 | $147 | $419 | $467 | $174 | $184 | $184 | $110 | $150 | |
| 167 | | | | | | | | | | | | | | | | | | | | | |
| 168 | | | | | | | | | | | | | | | | | | | | | |
| 169 | | $106 | $215 | $143 | $242 | $53 | | | $166 | $152 | $174 | $42 | $147 | $419 | $467 | $174 | $184 | $184 | $110 | $150 | |
| 170 | | $106 | $215 | | $242 | $53 | | | $166 | $152 | $174 | $42 | $147 | $419 | $467 | $174 | $184 | $184 | $110 | $150 | |
| 171 | | $106 | $215 | $143 | $242 | $53 | $91 | | $166 | $152 | $174 | $42 | $147 | $419 | $467 | $174 | $184 | $184 | $110 | $150 | |
| 172 | | $106 | $215 | | $242 | $53 | | | $166 | $152 | $174 | $42 | $147 | $419 | $467 | $174 | $184 | $184 | $110 | $150 | |
| 173 | | | | | | $120 | | | | | | $253 | $147 | | | | | $153 | | | |
| 174 | | | | | | | | | | | | | | | | | | | | | |
| 175 | | $106 | $215 | $143 | $242 | | | | | | | | | | | | | $184 | $110 | $150 | |
| 176 | | $106 | $215 | | $242 | | | | | | | | | | | | | $184 | $110 | $150 | $340 |
| 177 | | | | | | | | | | | | | | | | | | | | | $340 |
| 178 | | $106 | $215 | $143 | $242 | | | | | | | | $147 | | | $174 | | $184 | $110 | $150 | $340 |
| 179 | | $106 | $215 | | $242 | | | | | | | $42 | | | | $174 | | $184 | $110 | $150 | $340 |
| 180 | | $106 | $215 | | $242 | | | | | | | | | | | | | $184 | $110 | $150 | |
| 181 | | | | | | | | | | | | | | | | | | | | | |
| 182 | | $106 | $215 | $143 | $242 | | | | | | | | | | | | | $184 | $110 | $150 | $340 |

## Attachment C
## ProductiveMD Charges by CPT Code
## TO BE SUPPLEMENTED

| PATIENT ID # | 93000 | 93005 | 93017 | 93018 | 94060 | 94150 | 94010 | 94200 | 94240 | 94350 | 94360 | 94370 | 94375 | 94620 | 94681 | 94727 | 94729 | 94720 | 94761 | 99091 | 93923 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | | | | | | |

5

# Attachment D
## Aetna Paid/Allowed Professional Components  Compiled from Aetna Documents

KEY
A - Allowed
P - Paid
O - Denied
* - Also billed by ProductiveMD
Blank Cell - No claim filed.

| Pt. # | DOS | 93000 * ECG (PMD 93005) | 93016* CV Stress Supervision only (PMD 93017) | 93018* Interpret and Report only (PMD 93017) | 94060 * Bronc. Resp., Spir. | 94010* Spirometry | 94200 * MVV | 94240 * lung volumes | 94350 * nitro washout | 94360 * airway resistance | 94375 * flow volume | 94620 * pulm str test | 94681 * VO2/VCO2 | 94720 * CO Diffus. Capac. | 94150 * Total vital capacity | 94370 * closing volume | Admitted/Denied? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3 | 08/26/10 | | | | | | P | P | P | | P | P | P | P | P | 0 | |
| 4 | 02/23/10 | A | | | | | | | | | | | A | | 0 | | |
| 5 | 10/16/09 | | AP | | | AP | AP | AP | AP | | | | AP | AP | 0 | 0 | |
| 7 | 11/22/11 | | AP | A | A | | A | A | A | A | A | A | A | A | 0 | 0 | |
| 8 | 09/09/09 | | | | 0 | | 0 | P | P | | 0 | P | P | P | P | 0 | |
| 9 | 06/24/09 | | | | P | | P | P | P | | P | P | P | 0 | P | 0 | |
| 11 | 08/27/09 | | AP | AP | | | AP | AP | AP | | AP | | AP | AP | 0 | | |
| 12 | 10/03/11 | | AP | | | AP | AP | AP | | | | | | | 0 | | |
| 144 | 09/23/10 | | AP | AP | AP | | AP | AP | AP | | AP | AP | AP | AP | AP | 0 | |
| 13 | 03/09/10 | | A | AP | A | | A | A | A | | A | A | A | A | A | 0 | |
| 14 | 02/23/10 | | A | AP | AP | AP | AP | AP | | | AP | AP | AP | AP | 0 | | |
| 15 | 03/07/11 | | AP | 0 | AP | A | AP | AP | AP | AP | AP | AP | AP | AP | 0 | 0 | |
| 16 | 05/03/11 | | | | | A | A | A | | A | A | | | A | | | |
| 17 | 02/15/11 | | AP | AP | 0 | | 0 | AP | AP | | 0 | AP | AP | AP | 0 | | |
| 18 | 09/20/11 | | AP | | | AP | AP | AP | | | | AP | AP | AP | 0 | | |
| 145, 146 | 02/06/12 | | AP | | AP | | | | | | | AP | AP | | | | |
| 147 | 12/08/11 | | AP | A | A | | A | A | A | AP | AP | AP | AP | AP | AP | 0 | |
| 19 | 01/13/10 | | | | | AP | AP | AP | AP | | AP | | | AP | | 0 | |
| 20 | 07/07/10 | | | | | AP | AP | AP | AP | | AP | AP | AP | AP | AP | 0 | |
| 23 | 07/09/09 | | | | P | | P | P | P | | P | | | P | | 0 | |
| 25 | 07/10/09 | | AP | | | A | A | A | A | | | A | A | A | 0 | 0 | |
| 26 | 09/13/11 | | AP | AP | AP | | AP | AP | AP | AP | AP | AP | AP | AP | 0 | 0 | |
| 27 | 11/15/11 | | AP | | | | AP | AP | AP | AP | AP | AP | AP | AP | 0 | 0 | |
| 28 | 03/09/10 | | AP | AP | AP | | AP | AP | AP | | AP | AP | AP | AP | AP | 0 | |
| 29 | 09/13/10 | | AP | 0 | | AP | AP | AP | | | AP | AP | AP | AP | AP | 0 | |
| 30 | 08/26/09 | | | | P | | P | P | P | | P | P | P | P | P | 0 | |
| 31 | 10/29/09 | | P | | | P | P | P | P | | | P | P | P | 0 | 0 | |
| 175, 176 | 02/27/12 | | A | | A | | | | | | | A | A | | | | |
| 32 | 02/28/11 | | | | | | A | A | A | | A | | | A | | 0 | |
| 33 | 07/14/09 | | AP | AP | 0 | | 0 | AP | AP | | 0 | AP | AP | AP | 0 | | |
| 34 | 09/03/10 | | | | | AP | AP | AP | AP | | AP | | | AP | | 0 | |
| 35 | 07/15/11 | | | | AP | | AP | AP | AP | | AP | | | AP | | 0 | |

KEY
A - Allowed
P - Paid
O - Denied
* - Also billed by ProductiveMD
Blank Cell - No claim filed.

# Attachment D
## Aetna Paid/Allowed Professional Components  Compiled from Aetna Documents

| Pt. # | DOS | 93000 * ECG (PMD 93005) | 93016* CV Stress Supervision only (PMD 93017) | 93018* Interpret and Report only (PMD 93017) | 94060 * Bronc. Resp., Spir. | 94010* Spirometry | 94200 * MVV | 94240 * lung volumes | 94350 * nitro washout | 94360 * airway resistance | 94375 * flow volume | 94620 * pulm str test | 94681 * VO2/VCO2 | 94720 * CO Diffus. Capac. | 94150 * Total vital capacity | 94370 * closing volume | Admitted/Denied? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 36 | 09/24/10 | AP | AP | | AP | | AP | AP | AP | | | AP | AP | AP | AP | 0 | |
| 151, 152 | 02/28/12 | AP | | | AP | | | | | | | AP | AP | | | | |
| 37 | 09/23/11 | AP | AP | A | | | A | AP | AP | A | A | A | A | A | 0 | 0 | |
| 39 | 09/03/10 | | | AP | | | AP | AP | AP | | AP | | | AP | | 0 | |
| 40 | 04/07/10 | AP | | | | AP | AP | AP | 0 | | AP | AP | AP | AP | AP | 0 | |
| 41 | 12/11/09 | AP | | | 0 | | AP | AP | | | | AP | AP | AP | 0 | 0 | |
| 153 | 02/21/12 | AP | | A | | | AP | AP | | | | AP | AP | AP | | 0 | |
| 42 | 04/21/11 | AP | AP | AP | | | AP | AP | | AP | | AP | AP | AP | | 0 | |
| 43 | 08/03/11 | AP | AP | AP | | | AP | AP | | AP | | AP | AP | AP | | 0 | |
| 45 | 08/10/10 | AP | AP | AP | | | AP | AP | | | | AP | AP | AP | AP | 0 | |
| 154 | 12/19/11 | A | | | | | A | A | | A | | A | A | A | 0 | 0 | |
| 46 | 04/22/10 | A | A | A | | | A | A | | A | | A | A | A | | 0 | |
| 47 | 08/06/09 | 0 | | | P | P | P | P | | | | P | P | P | | 0 | |
| 48 | 02/24/10 | A | A | A | | | A | A | | A | | A | A | A | | 0 | |
| 49 | 02/04/10 | AP | AP | AP | | | AP | AP | | AP | | AP | AP | AP | | 0 | |
| 159 | 12/22/11 | AP | | | AP | | | | | | | AP | AP | | | 0 | |
| 160 | 01/26/12 | AP | | | AP | | | | | | | AP | AP | | | | |
| 52 | 08/09/11 | AP | | | AP | | AP | AP | AP | | AP | AP | AP | AP | | 0 | |
| 53 | 08/24/11 | AP | AP | | AP | | AP | AP | AP | | AP | AP | AP | AP | | 0 | |
| 162 | 01/15/12 | | | | | AP | AP | | | | | AP | AP | | 0 | | |
| 58 | 08/10/10 | AP | | | AP | | | | | | | | | | | | |
| 164 | 01/12/12 | AP | | | | | | | | | | | | | | | |
| 59 | 05/27/10 | | | | | | AP | | | | AP | AP | AP | AP | | 0 | |
| 61 | 11/06/09 | AP | | | 0 | 0 | AP | AP | | | 0 | AP | AP | AP | | 0 | |
| 62 | 07/21/09 | AP | AP | AP | | AP | AP | AP | | | AP | AP | AP | AP | | 0 | |
| 63 | 03/22/11 | AP | AP | A | | | A | A | | A | A | A | A | A | | | |
| 64 | 01/22/11 | AP | | | AP | | AP | AP | | | AP | AP | AP | AP | | 0 | |
| 65 | 06/04/09 | | | | P | P | P | P | | | P | | | P | | 0 | |
| 66 | 08/10/11 | AP | | | AP | | AP | AP | AP | | AP | AP | AP | AP | 0 | 0 | |
| 165 | 01/16/12 | 0 | | | AP | | | | | | | AP | AP | | | | |
| 166 | 12/15/11 | AP | AP | 0 | | 0 | AP | | | | | | | | 0 | 0 | |
| 67 | 11/07/11 | AP | AP | AP | | | AP | AP | AP | A | A | A | A | A | 0 | A | |

# Aetna Paid/Allowed Professional Components Compiled from Aetna Documents

KEY
A - Allowed
P - Paid
O - Denied
* - Also billed by ProductiveMD
Blank Cell - No claim filed.

| Pt. # | DOS | 93000 * ECG (PMD 93005) | 93016* CV Stress Supervision only (PMD 93017) | 93018* Interpret and Report only (PMD 93017) | 94060 * Bronc. Resp., Spir. | 94010* Spirometry | 94200 * MVV | 94240 * lung volumes | 94350 * nitro washout | 94360 * airway resistance | 94375 * flow volume | 94620 * pulm str test | 94681 * VO2/VCO2 | 94720 * CO Diffus. Capac. | 94150 * Total vital capacity | 94370 * closing volume | Admitted/Denied? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 68 | 04/20/10 | | | | P | P | P | P | P | | 0 | 0 | 0 | 0 | P | 0 | |
| 69 | 05/17/10 | | AP | | | AP | AP | AP | AP | | | AP | AP | AP | AP | 0 | |
| 71 | 11/29/11 | | AP | A | AP | | AP | AP | AP | AP | AP | AP | AP | AP | 0 | AP | |
| 72 | 06/19/09 | | AP | | | AP | AP | AP | AP | | | AP | AP | AP | 0 | 0 | |
| 74 | 03/08/10 | | AP | AP | A | | A | A | A | | A | A | A | A | A | 0 | |
| 77 | 03/19/10 | | AP | AP | A | | A | A | A | | | AP | AP | AP | AP | 0 | |
| 79 | 12/04/09 | | AP | | | AP | AP | AP | AP | | | AP | AP | AP | 0 | 0 | |
| 80 | 07/19/11 | | P | P | P | | P | P | P | P | | | | P | 0 | | |
| 84 | 02/18/11 | | AP | | A | | A | A | A | | A | A | A | A | A | 0 | |
| 85 | 12/16/10 | | | | | AP | AP | AP | AP | | AP | | | AP | | 0 | |
| 169 | 01/27/12 | | AP | | AP | | AP | | | | | AP | AP | | 0 | | |
| 86 | 07/12/10 | | AP | | | A | | A | A | | | A | A | A | A | 0 | |
| 87 | 07/22/10 | | | | | AP | AP | AP | | | AP | | | AP | | 0 | |
| 88 | 06/19/10 | | AP | AP | AP | | AP | AP | AP | | AP | AP | AP | AP | AP | 0 | |
| 171 | 11/30/11 | | AP | AP | AP | | AP | AP | AP | | AP | AP | AP | AP | 0 | 0 | |
| 89 | 10/12/09 | AP | AP | | | AP | AP | AP | | | AP | AP | AP | AP | AP | 0 | |
| 90 | 08/05/10 | | AP | AP | AP | | AP | AP | AP | | AP | AP | AP | AP | AP | 0 | |
| 172 | 01/11/12 | | AP | | | | | | | AP | | AP | AP | | | | |
| 92 | 09/26/11 | | AP | AP | AP | | AP | AP | AP | AP | AP | AP | AP | AP | 0 | 0 | |
| 173 | 12/29/09 | | | | AP | AP | AP | AP | | | 0 | | | AP | | A | |
| 93 | 03/17/11 | | P | 0 | P | | P | P | P | | P | P | P | P | 0 | 0 | |
| 94 | 09/08/09 | | | | P | | P | P | | P | P | P | P | P | P | 0 | |
| 95 | 10/17/11 | | AP | AP | AP | | AP | AP | AP | AP | AP | AP | AP | AP | AP | 0 | |
| 96 | 08/12/10 | | AP | AP | AP | | AP | AP | AP | | AP | AP | | AP | AP | 0 | |
| 97 | 04/05/10 | AP | | | | | | | | | | | A | | | | |
| 98 | 07/23/09 | | AP | | | AP | AP | AP | AP | | | AP | AP | AP | | 0 | |
| 99 | 11/23/10 | | | | P | | P | P | P | | P | | | P | | 0 | |
| 100 | 11/01/11 | | AP | AP | AP | | AP | AP | AP | AP | AP | AP | AP | AP | AP | 0 | |
| 101 | 09/01/09 | | | | 0 | | 0 | P | P | | 0 | P | P | P | 0 | 0 | |
| 102 | 09/07/11 | | 0 | | | P | P | P | | | P | P | P | P | 0 | 0 | |
| 103 | 02/23/10 | | AP | | | AP | AP | AP | AP | | AP | AP | AP | AP | AP | 0 | |
| 104 | 07/10/09 | | | | | AP | AP | AP | AP | | | AP | AP | AP | 0 | 0 | |

KEY
A - Allowed
P - Paid
O - Denied
* - Also billed by ProductiveMD
Blank Cell - No claim filed.

# Attachment D
## Aetna Paid/Allowed Professional Components  Compiled from Aetna Documents

| Pt. # | DOS | 93000 * ECG (PMD 93005) | 93016* CV Stress Supervision only (PMD 93017) | 93018* Interpret and Report only (PMD 93017) | 94060 * Bronc. Resp., Spir. | 94010* Spirometry | 94200 * MVV | 94240 * lung volumes | 94350 * nitro washout | 94360 * airway resistance | 94375 * flow volume | 94620 * pulm str test | 94681 * VO2/VCO2 | 94720 * CO Diffus. Capac. | 94150 * Total vital capacity | 94370 * closing volume | Admitted/Denied? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 105 | 04/05/10 |  | A | AP | AP |  | AP | AP | AP |  | AP | AP | AP | AP | 0 | 0 |  |
| 106 | 05/23/11 |  | AP |  | AP |  |  |  | AP | AP | AP | AP | AP | AP | 0 | 0 |  |
| 107 | 08/08/11 |  |  | AP | AP |  |  | AP | AP |  | AP | AP | AP | AP | 0 | 0 |  |
| 108 | 07/06/09 |  | AP | AP | 0 |  | 0 | A | A |  | 0 | A | A | A | 0 | 0 |  |
| 111 | 06/20/11 |  |  |  |  |  | A | A | A | 0 |  |  | A |  |  | A |  |
| 113 | 08/03/11 |  | AP |  |  | AP | AP | AP |  |  | AP | AP |  |  | 0 |  |  |
| 114 | 04/23/10 |  |  |  |  | AP | AP | AP |  |  | AP |  |  | AP |  | 0 |  |
| 115 | 02/11/10 |  |  |  | AP |  | 0 | AP |  |  |  |  |  | AP |  |  |  |
| 116 | 05/24/11 | AP |  |  |  |  |  |  |  |  |  |  | A |  |  |  |  |
| 117 | 06/25/10 |  |  |  | P |  | P | P | P |  | P | P | P | P | P | 0 |  |
| 118 | 01/21/10 |  | AP | AP | AP |  | A | A | A |  | A | A | A | A | 0 |  |  |
| 120 | 08/29/11 |  | AP | AP | AP |  | AP | AP | AP |  | AP | AP | AP | AP | 0 | 0 |  |
| 121 | 05/16/11 |  | AP | AP | 0 |  | 0 | AP | AP |  | 0 | AP | AP | AP | 0 | 0 |  |
| 122 | 06/23/09 |  | AP | AP | 0 |  | 0 | AP | AP |  | 0 | A | A | A | 0 | 0 |  |
| 177, 178 | 02/13/12 |  | AP |  |  |  |  |  |  |  |  |  | AP | A |  |  |  |
| 179 | 12/15/11 |  | AP | AP | AP |  | AP | AP | AP |  | AP | AP | AP | AP | 0 |  |  |
| 123 | 02/15/11 |  | AP |  | A |  | A | A | A |  | A | A | A | A | 0 |  |  |
| 124 | 08/19/11 |  | AP |  | AP |  | AP | AP | AP |  | AP | AP | AP | AP | 0 | 0 |  |
| 180 | 01/10/12 |  |  |  |  |  |  | A |  |  |  | A |  |  |  |  |  |
| 125 | 07/28/10 |  | A | AP | AP |  | AP | AP | AP |  | AP | AP | AP | AP | 0 |  |  |
| 126 | 07/08/11 |  |  |  | AP | AP |  | AP | AP |  | AP | AP | AP | AP | 0 |  |  |
| 181, 182 | 02/06/12 |  | A |  | A |  |  |  |  |  |  | A | A |  |  |  |  |
| 130 | 07/09/09 |  | AP | AP |  | AP | AP | AP | AP |  | AP | AP | AP | AP | 0 |  |  |
| 131 | 06/07/10 |  | AP | AP | A |  | A | A | A |  | A | A | A | A | 0 |  |  |
| 132 | 08/17/11 |  | AP |  |  | AP | AP | AP |  |  |  | A | A | A | 0 |  |  |
| 133 | 03/08/10 |  | A | AP | AP |  | AP | AP | AP |  | AP | AP | AP | AP | 0 |  |  |
| 135 | 06/07/10 |  | AP | AP | 0 |  | 0 | AP | AP |  | 0 | AP | AP | AP | 0 |  |  |
| 138 | 04/28/10 |  | A | AP | AP |  | A | A | A |  | A | A | A | A | 0 |  |  |
| 139 | 03/19/10 |  | AP | AP | AP |  | AP | AP | AP |  | AP | AP | AP | AP | 0 |  |  |
| 140 | 08/16/11 |  | A |  |  | A | A | A |  |  | A | A | A | A | 0 | 0 |  |
| 141 | 08/30/11 |  | AP | AP | AP |  |  | AP | AP |  | AP | AP | AP | AP | 0 | 0 |  |
| 143 | 11/21/11 |  | AP | AP | A |  | A | A | A | A | A | A | A | A | 0 | 0 |  |

| PATIENT ID # | PLAN SPONSOR | FULLY/SELF INSURED | SUBJECT TO ERISA REGULATION? Y/N |
|---|---|---|---|
| 3 | Cynergies Consulting, Inc. | Fully | Y |
| 4 | Dell, Inc. | Self | Y |
| 5 | Dell, Inc. | Self | Y |
| 6 | Rich Products Corp. | Self | Y |
| 7 | Federal Employees Health Benefits Program | Fully | N |
| 8 | AT&T, Inc./Bell South Corp. | Self | Y |
| 9 | Lifeway Christian Resources | Fully | N |
| 11 | Cox Enterprises, Inc. | Self | Y |
| 12 | Vanderbilt University | Self | Y |
| 13 | HSN, Inc. | Self | Y |
| 14 | Suntrust Banks, Inc. | Self | Y |
| 15 | HCA Management Services | Self | Y |
| 16 | HCA Management Services | Self | Y |
| 17 | Expeditors International of Washington, LP | Split Funded Group Plan - Unfunded | Y |
| 18 | HSN, Inc. | Self | Y |
| 19 | Railroad Employees National Health and Welfar Plan | Self | Y |
| 20 | Home Depot USA, Inc. | Self | Y |
| 22 | Affiliated Computer Services, Inc. (ACS) | Self | Y |
| 23 | Walgreen's | Fully | Y |
| 25 | Gaylord Entertainment Co. | Self | Y |
| 26 | HCA Management Services | Self | Y |
| 27 | Willis North America, Inc. | Self | Y |
| 28 | Gaylord Entertainment Co. | Self | Y |
| 29 | UPS, Inc. | Self | Y |
| 30 | Rock-Tenn Co. | Self | Y |
| 31 | The Christie Cookie Co. | Fully | Y |
| 32 | HCA Management Services | Self | Y |
| 33 | HCA Management Services | Self | Y |

| | | | |
|---|---|---|---|
| 34 | Ingersoll Rand Co. | Self | Y |
| 35 | Comcast Corp. | Self | Y |
| 36 | Vanderbilt University | Self | Y |
| 37 | Computer Sciences Corp. | Self | Y |
| 38 | Hewlett-Packard Co. | Self | Y |
| 39 | High-Tech Institute/TCI Education | Fully | Y |
| 40 | Gaylord Entertainment Co. | Self | Y |
| 41 | HCA Management Services | Self | Y |
| 42 | Deloitte, LLP | Self | Y |
| 43 | HCA Management Services | Self | Y |
| 45 | Gaylord Entertainment Co. | Self | Y |
| 46 | Rite Aid Corp. | Self | Y |
| 47 | Marriott International Inc. | Self | Y |
| 48 | Hewlett-Packard Co. | Self | Y |
| 49 | Deloitte, LLP | Self | Y |
| 50 | Hudson Group, Inc. | Fully | N |
| 51 | UBS Financial | Self | Y |
| 52 | L-1 Identity Solutions Operating Co. | Self | Y |
| 53 | Spectal Industries USA Inc./J-DAK | Fully | Y |
| 54 | Bank Of America Corp. | Self | Y |
| 55 | Bank Of America Corp. | Self | Y |
| 56 | Genesco, Inc. | Fully | Y |
| 58 | American General Financial Group/AIG, Inc. | Self | Y |
| 59 | Deloitte, LLP | Self | Y |
| 60 | Dell, Inc. | Self | Y |
| 61 | Rockwell Automation, Inc. | Self | Y |
| 62 | Starbucks Corp. | Self | Y |
| 63 | HCA Management Services | Self | Y |
| 64 | UPS, Inc. | Self | Y |
| 65 | Burlington Coat Factory Warehouse Corp. | Self | Y |
| 66 | ERM Group, Inc. | Self | Y |

2

| | | | |
|---|---|---|---|
| 67 | HCA Management Services | Self | Y |
| 68 | IBM, Inc. | Fully | N - Medicare Plan |
| 69 | Allstate Insurance Co. | Self | Y |
| 70 | Metropolitan Nashville Airport Authority | Self | N |
| 71 | Madison Paving, LLC | Fully | Y |
| 72 | HCA Management Services | Self | Y |
| 73 | UPS, Inc. | Self | Y |
| 74 | Dell, Inc. | Self | Y |
| 75 | Ladies' Hermitage Assn. | Fully | Y |
| 76 | RTG Furniture Corp. & Affiliates | Self | Y |
| 77 | AmeriGas Propane, Inc. | Self | Y |
| 78 | Schering-Plough Corp. | Self | Y |
| 79 | Suntrust Banks, Inc. | Self | Y |
| 80 | EF Precision, Inc. | Fully | Y |
| 81 | UPS, Inc. | Self | Y |
| 82 | First Baptist Church | Fully | N |
| 83 | HCA Management Services | Self | Y |
| 84 | HCA Management Services | Self | Y |
| 85 | Comcast Corp. | Self | Y |
| 86 | Tyco International Management Co. | Self | Y |
| 87 | Comcast Corp. | Self | Y |
| 88 | Gaylord Entertainment Co. | Self | Y |
| 89 | Cross Country Healthcare, Inc. | Self | Y |
| 90 | UPS, Inc. | Self | Y |
| 91 | Rug Doctor, Inc. | Self | Y |
| 92 | HCA Management Services | Self | Y |
| 93 | Harleysville Insurance Co. | Self | Y |
| 94 | Lifeway Christian Resources | Fully | N |
| 95 | Willis North America, Inc. | Self | Y |
| 96 | Nationwide Argosy Solutions, LLC | Self | Y |
| 97 | Grange Mutual Casualty Co. | Self | Y |

| | | | |
|---|---|---|---|
| 98 | HCA Management Services | Self | Y |
| 99 | Comcast | Self | Y |
| 100 | HCA Management Services | Self | Y |
| 101 | Comcast | Self | Y |
| 102 | Interline Brands | Fully | Y |
| 103 | Borders Group, Inc. | Self | Y |
| 104 | Suntrust Banks, Inc. | Self | Y |
| 105 | New Prosys Corp/Bell Microproducts, Inc. | Fully | Y |
| 106 | Borders Group, Inc. | Self | Y |
| 107 | Deloitte, LLP | Self | Y |
| 108 | Dynamics Research Corp. | Self | Y |
| 109 | Home Depot USA, Inc. | Self | Y |
| 110 | Quest Diagnostics, Inc. | Self | Y |
| 111 | Vanderbilt University | Self | Y |
| 112 | American General Financial Group/AIG, Inc. | Self | Y |
| 113 | Suntrust Banks, Inc. | Self | Y |
| 114 | Mars, Inc. | Self | Y |
| 115 | Gaylord Entertainment Co. | Self | Y |
| 116 | Costco Wholesale Corp. | Self | Y |
| 117 | Genesco, Inc. | Fully | Y |
| 118 | Gaylord Entertainment Co. | Self | Y |
| 119 | Gevity Actives | Fully | Y |
| 120 | HCA Management Services | Self | Y |
| 121 | Bruegger's Enterprises, Inc. | Self | Y |
| 122 | Willis North America, Inc. | Self | Y |
| 123 | Computer Sciences Corp. | Self | Y |
| 124 | Borders Group, Inc. | Self | Y |
| 125 | Home Depot USA, Inc. | Self | Y |
| 126 | Conso International Corp. | Fully | Y |
| 127 | Railroad Employees National Health and Welfare Plan | Self | Y |
| 128 | Comcast Corp. | Self | Y |
| 129 | Gaylord Entertainment Co. | Self | Y |
| 130 | National Carriers and United Transportation Union (NRC/UTU) Health and Welfare Plan | Self | Y |
| 131 | Dell, Inc. | Self | Y |
| 132 | Rich Products Corp. | Self | Y |

4

| | | | |
|------|------|------|------|
| 133 | Suntrust Banks, Inc. | Self | Y |
| 135 | HCA Management Services | Self | Y |
| 136 | UPS, Inc. | Self | Y |
| 137 | HCA Management Services | Self | Y |
| 138 | Vanderbilt University | Self | Y |
| 139 | Deloitte, LLP | Self | Y |
| 140 | HCA Management Services | Self | Y |
| 141 | Aetna Advantage PPO Plan | Fully | N |
| 142 | Randstad USA | Fully | N |
| 143 | Triumph Aerostructures | Self | Y |
| 144 | HSN, Inc. | Self | Y |
| 145 | Bright Horizons Children's Center LLC | Self | Y |
| 146 | Bright Horizons Children's Center LLC | Self | Y |
| 147 | HCA Management Services | Self | Y |
| 148 | Comcast Corp. | Self | Y |
| 149 | Aetna Individual Advantage Plan | Fully | N |
| 150 | Aetna Individual Advantage Plan | Fully | N |
| 151 | UPS, Inc. | Self | Y |
| 152 | UPS, Inc. | Self | Y |
| 153 | Tyco International Management | Self | Y |
| 154 | Hewlett-Packard, Co. | Self | Y |
| 155 | Southwest Business Corp. | Self | Y |
| 156 | Southwest Business Corp. | Self | Y |
| 157 | Bank of America Corp. | Self | Y |
| 158 | Southwest Business Corp. | Self | Y |
| 159 | HCA Management Services | Self | Y |
| 160 | Guideposts A Church Corporation | Fully | N |
| 161 | La Petite Academy/Learning Care Group, Inc. | Self | Y |
| 162 | UPS, Inc. | Self | Y |
| 163 | Triumph Group | Self | Y |
| 164 | Mars, Inc. | Self | Y |
| 165 | Lincoln Tech Institute | Fully | Y |
| 166 | HCA Management Services | Self | Y |
| 167 | Automatic Data | Self | Y |

| | | | |
|---|---|---|---|
| 168 | Gaylord Entertainment Co. | Self | Y |
| 169 | Emory University | Self | Y |
| 170 | UPS, Inc. | Self | Y |
| 171 | Lockheed Martin | Self | Y |
| 172 | UPS, Inc. | Self | Y |
| 173 | E. I. Dupont | Self | Y |
| 174 | Catholic Healthcare Audit Network | Fully | Y |
| 175 | Washington Inventory Service | Self | Y |
| 176 | Washington Inventory Service | Self | Y |
| 177 | Ingersoll Rand Co. | Self | Y |
| 178 | Ingersoll Rand Co. | Self | Y |
| 179 | Deloitte, LLP | Self | Y |
| 180 | Associated Press | Self | Y |
| 181 | AARP Essential Premier Health Insurance | Fully | N |
| 182 | AARP Essential Premier Health Insurance | Fully | N |

| PATIENT ID # | Aetna Concedes Ripe? | Not Exhausted per Aetna | Not Exhausted and Invalid Assign. Per Aetna | Invalid Assignment per Aetna | Claims that have been Admin. Exhaust. | No Prohibition on Assignments |
|---|---|---|---|---|---|---|
| 3 | N | X | | | | X |
| 4 | N | X | | | | |
| 5 | N | X | | | | X |
| 6 | N | X | | | | X |
| 7 | N | | | | X | |
| 8 | N | X | | | | |
| 9 | N | | X | | | |
| 11 | N | X | | | | X |
| 12 | N | | X | | | |
| 13 | N | | X | | | |
| 14 | N | X | | | | X |
| 15 | N | X | | | | X |
| 16 | Y | | | | X | X |
| 17 | N | | X | | | |
| 18 | N | | | X | X | |
| 19 | N | X | | | | X |
| 20 | N | X | | | | X |
| 22 | N | X | | | | X |
| 23 | N | | X | | | |
| 25 | N | X | | | | X |
| 26 | Y | | | | X | X |
| 27 | N | X | | | | X |
| 28 | N | X | | | | X |

| PATIENT ID # | Aetna Concedes Ripe? | Not Exhausted per Aetna | Not Exhausted and Invalid Assign. Per Aetna | Invalid Assignment per Aetna | Claims that have been Admin. Exhaust. | No Prohibition on Assignments |
|---|---|---|---|---|---|---|
| 29 | N | X | | | | X |
| 30 | N | X | | | | X |
| 31 | Y | | | | X | X |
| 32 | N | X | | | | X |
| 33 | N | | X | | | |
| 34 | N | | X | | | |
| 35 | N | X | | | | X |
| 36 | N | | X | | | |
| 37 | Y | | | | X | X |
| 38 | N | | X | | | |
| 39 | N | | X | | | |
| 40 | N | X | | | | X |
| 41 | N | | X | | | |
| 42 | Y | | | | X | X |
| 43 | N | X | | | | X |
| 45 | N | X | | | | X |
| 46 | N | X | | | | X |
| 47 | N | X | | | | X |
| 48 | N | | X | | | |
| 49 | N | X | | | | X |
| 50 | N | | X | | | |
| 51 | N | | X | | | |
| 52 | N | | X | | | |

| PATIENT ID # | Aetna Concedes Ripe? | Not Exhausted per Aetna | Not Exhausted and Invalid Assign. Per Aetna | Invalid Assignment per Aetna | Claims that have been Admin. Exhaust. | No Prohibition on Assignments |
|---|---|---|---|---|---|---|
| 53 | N | | X | | | |
| 54 | N | X | | | | X |
| 55 | N | X | | | | X |
| 56 | N | | X | | | |
| 58 | N | | | X | X | |
| 59 | N | X | | | | X |
| 60 | N | X | | | | X |
| 61 | N | | X | | | |
| 62 | N | X | | | | X |
| 63 | N | X | | | | X |
| 64 | Y | | | | X | X |
| 65 | N | X | | | | X |
| 66 | N | | X | | | |
| 67 | Y | | | | X | X |
| 68 | N | | | | X | |
| 69 | Y | | | | X | X |
| 70 | N | | | | X | |
| 71 | N | | X | | | |
| 72 | N | | X | | | |
| 73 | N | X | | | | X |
| 74 | N | X | | | | X |
| 75 | Y | | | | X | X |
| 76 | Y | | | | X | X |

| PATIENT ID # | Aetna Concedes Ripe? | Not Exhausted per Aetna | Not Exhausted and Invalid Assign. Per Aetna | Invalid Assignment per Aetna | Claims that have been Admin. Exhaust. | No Prohibition on Assignments |
|---|---|---|---|---|---|---|
| 77 | N | | X | | | |
| 78 | N | X | | | | X |
| 79 | N | X | | | | X |
| 80 | N | X | | | | X |
| 81 | N | X | | | | X |
| 82 | N | | | | X | |
| 83 | N | X | | | | X |
| 84 | N | X | | | | X |
| 85 | N | X | | | | X |
| 86 | N | X | | | | |
| 87 | Y | | | | X | X |
| 88 | Y | | | | X | X |
| 89 | N | | X | | | |
| 90 | Y | | | | X | X |
| 91 | N | | X | | | |
| 92 | N | X | | | | X |
| 93 | N | | X | | | |
| 94 | N | | X | | | |
| 95 | N | X | | | | X |
| 96 | N | | X | | | |
| 97 | N | | | X | X | |
| 98 | N | | X | | | |
| 99 | N | X | | | | X |

| PATIENT ID # | Aetna Concedes Ripe? | Not Exhausted per Aetna | Not Exhausted and Invalid Assign. Per Aetna | Invalid Assignment per Aetna | Claims that have been Admin. Exhaust. | No Prohibition on Assignments |
|---|---|---|---|---|---|---|
| 100 | Y | | | | X | X |
| 101 | N | X | | | | X |
| 102 | N | | | X | X | |
| 103 | Y | X | | | | X |
| 104 | N | X | | | | X |
| 105 | N | | | X | X | |
| 106 | N | | | | X | |
| 107 | N | X | | | | X |
| 108 | N | | X | | | |
| 109 | Y | | | | | X |
| 110 | N | X | | | | X |
| 111 | N | | | X | X | |
| 112 | N | | | X | X | |
| 113 | N | X | | | | X |
| 114 | N | X | | | | X |
| 115 | N | X | | | | X |
| 116 | N | X | | | | X |
| 117 | N | | X | | | |
| 118 | N | X | | | | X |
| 119 | N | | X | | | |
| 120 | Y | | | | X | X |
| 121 | N | | X | | | |
| 122 | N | X | | | | X |

Aetna Position Regarding Exhaustion of Administrative Remedies and Assignment

| PATIENT ID # | Aetna Concedes Ripe? | Not Exhausted per Aetna | Not Exhausted and Invalid Assign. Per Aetna | Invalid Assignment per Aetna | Claims that have been Admin. Exhaust. | No Prohibition on Assignments |
|---|---|---|---|---|---|---|
| 123 | N | X | | | | X |
| 124 | Y | | | | X | X |
| 125 | N | X | | | | X |
| 126 | N | | X | | | |
| 127 | N | X | | | | X |
| 128 | N | X | | | | X |
| 129 | N | X | | | | X |
| 130 | N | X | | | | X |
| 131 | N | X | | | | X |
| 132 | Y | | | | X | X |
| 133 | N | X | | | | X |
| 135 | N | | X | | | |
| 136 | N | | X | | | |
| 137 | N | | X | | | |
| 138 | N | | X | | | |
| 139 | N | X | | | | X |
| 140 | Y | | | | X | X |
| 141 | N | | | | X | |
| 142 | N | | X | | | |
| 143 | N | | | X | X | |
| 144 | N | | X | | | |
| 145 | N | | | X | X | |
| 146 | N | | | X | X | |

| PATIENT ID # | Aetna Concedes Ripe? | Not Exhausted per Aetna | Not Exhausted and Invalid Assign. Per Aetna | Invalid Assignment per Aetna | Claims that have been Admin. Exhaust. | No Prohibition on Assignments |
|---|---|---|---|---|---|---|
| 147 | N | X | | | | X |
| 148 | N | X | | | | X |
| 149 | N | | | | X | |
| 150 | N | | | | X | |
| 151 | N | | | | X | |
| 152 | N | X | | | | X |
| 153 | N | X | | | | X |
| 154 | N | | | X | X | |
| 155 | N | | X | | | |
| 156 | N | | X | | | |
| 157 | N | X | | | | X |
| 158 | N | | X | | | |
| 159 | Y | | | | X | X |
| 160 | N | | X | | | |
| 161 | Y | | | | X | X |
| 162 | Y | | | | X | X |
| 163 | N | | | X | X | |
| 164 | N | X | | | | X |
| 165 | N | | | X | X | |
| 166 | Y | | | | X | X |
| 167 | N | X | | | | X |
| 168 | Y | | | | X | X |
| 169 | N | | | X | X | |

| PATIENT ID # | Aetna Concedes Ripe? | Not Exhausted per Aetna | Not Exhausted and Invalid Assign. Per Aetna | Invalid Assignment per Aetna | Claims that have been Admin. Exhaust. | No Prohibition on Assignments |
|---|---|---|---|---|---|---|
| 170 | N | | | X | X | |
| 171 | Y | | | | X | X |
| 172 | Y | | | | X | X |
| 173 | N | X | | | | X |
| 174 | N | | X | | | |
| 175 | N | | X | | | |
| 176 | N | | X | | | |
| 177 | N | | X | | | |
| 178 | N | | X | | | |
| 179 | N | X | | | | X |
| 180 | N | | X | | | |
| 181 | N | | | | X | |
| 182 | N | | | | X | |

# Attachment

# G

## Patient Consent Form

### √ Cardiopulmonary Stress testing

The cardiopulmonary exercise that I am about to undergo is a voluntary test that should better inform myself and my physician about the condition of my heart, my lungs, and my circulation. I understand that I will be asked to ride a stationary bicycle with progressive increases in workload until my work tolerance has been achieved and that I will be asked to make a maximum effort. I also understand that I may ask that the test be stopped at any time if I develop chest discomfort, air hunger, lightheadedness, leg cramps, or any other condition that I feel should cause the test to be terminated. During the test important data regarding the ability of my heart and my lungs to function properly will be collected.

I understand that this test will be conducted by a trained professional who will make every effort to assure the safety of this test, but I am also aware that there are risks associated with vigorous exercise, among which are lightheadedness, dizziness, muscle cramps, soreness, sprains, elevated blood pressure, heart attacks, heart rate and rhythm problems, strokes, and even death. I fully understand that other providers of this service may be selected by me and that I will be assisted in referral to those providers if I so choose. Consent and authorization are given to ProductiveMd, to proceed with the test.

### √ Pulmonary Function Testing

The pulmonary function test that I am about to undergo is a voluntary test that should better inform myself and my physician about the condition of my lungs. I understand that this test will consist of several exercises, each of which will measure different aspects of lung function. I will be asked to listen carefully to the instruction given before each exercise and to perform each to the best of my ability. During these studies important data regarding the ability of my lungs to function properly will be collected. I fully understand that other providers of this service may be selected by me and that I will be assisted in referral to those providers if I so choose.

Consent and authorization is herby given to ProductiveMd to release information gathered during these assessments to any physician, exercise physiologist, clinical specialist, assistant, or designee for the purpose(s) of medical review, clinical research, determination of programmatic and prescriptive needs, provision of additional healthcare, payment, or healthcare operations. I release ProductiveMd from any liability that might result from the release of this information.

Patient's Signature ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓          Date  9-20-11

I authorize payment of medical benefits to Productive MD for services rendered. I authorize the release of any medical or other information necessary to process this claim. I also request payment of government benefits either to myself or to Productive MD.

Patient Signature ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓          Date  9-20-11

I understand my physician has a financial relationship with ProductiveMD, and I have the right to choose an alternative provider of cardiopulmonary exercise testing services.

Patient Signature ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓          Date  9-20-11

# Attachment

# H

## THREE RIVERS PROVIDER NETWORK
## AGREEMENT WITH

This Agreement is made this _21_ day of _July_ 2008, by and between Three Rivers Provider Network, Inc., a Nevada Corporation ("TRPN") and _ProductiveMD LLC_ , a Facility of health care services. TRPN contracts with hospitals, physicians, ancillaries and entities hereinafter referred to as "Facility" rendering medical and health care services at pre-determined rates as follows.

1. Clients, Covered Services, Contract Rates: TRPN contracts with insurance companies, third party administrators, health plans, individuals and entities hereinafter referred to as "Clients" that directly or indirectly access TRPN contracted providers for covered services. Covered Services shall include all services that are medically necessary including health, workers' compensation, automobile and general liability. The rate used in conjunction with this Agreement will be a twenty percent (20%) discount off of Provider's usual charge for covered services, less any applicable co-payments, co-insurance or deductibles. Clients are obligated to make payment directly to provider only at the contracted rate as payment in full. Provider shall not balance bill the patient upon receipt of payment in full at the contracted rate. TRPN has no responsibility to make payments on behalf of Clients. Payments shall be made within thirty (30) calendar days of receipt of clean claim. Where a state mandated fee schedule exists for workers compensation, provider agrees to accept a ten percent (10%) discount below the state schedule for that service. Payments made and cashed by the provider shall be accepted as payment in full providing the total payment including the member's portion is not less than the contracted rate.

2. Licenses, Standards of Care: Provider agrees to deliver health care services that meet all legal standards of care complying with applicable Federal, State and Local laws and maintains the standards of NCQA and/or JCAHO. The provider is delegated by TRPN to carry out and/or assign credentialing responsibilities. Evidence of such licenses, certificates and standards shall be made available to TRPN upon request.

3. Term and Termination: This Agreement shall continue in effect for a period of two (2) years with automatic successive one (1) year terms. This Agreement may be terminated by either party without cause with a ninety (90) day prior written notice to the other party at the mailing addresses listed under the signatures. This Agreement may be immediately terminated with cause by TRPN should Provider lose applicable licenses, malpractice coverage, fail to honor the applicable contracted rates pursuant to this Agreement, or if any information provided in Attachment A is illegible, incomplete, or invalid.

4. Dispute Resolution: This Agreement shall be construed and interpreted in accordance with the laws of the State of Nevada. Provider agrees to meet and confer in good faith to resolve any disputes that may arise under this Agreement. If a dispute between TRPN and Provider arises out of this Agreement and is not resolved, either party may submit the dispute to arbitration which shall be commenced and conducted in accordance with the Rules of Practice and Procedures of the Judicial Arbitration and Mediation Services, Inc. ("JAMS") as in effect at the time ("JAMS Rules").

5. Attachment A: All information provided in Attachment A of this Agreement is complete and accurate to the best of Provider's knowledge and Provider shall immediately notify TRPN of any changes thereto. Provider agrees to mark "N/A" next to any blank that is not applicable to Provider's business.

6. Faxed Signatures: The parties agree that facsimile signatures of authorized representatives of the parties shall legally bind the parties to the terms and conditions of this Agreement as if the signatures were original and shall be considered evidence of a fully executed Agreement.

Page 1

Case 3:12-cv-00052   Document 98   Filed 01/22/13   Page 100 of 127 PageID #: 2264

IN WITNESS WHEREOF, the authorized parties hereto have executed this Agreement and intend to
be bound thereby.

Provider Name (please print):                     TRPN: Attn: Micky Musolf - Contracting
                                                  THREE RIVERS PROVIDER NETWORK

_Productive MD, LLC_

Signature: _J. V. Nu. LP_            Signature _[signature]_

                                    Name:  Todd Breeden Chief Operating Officer
Title: _President /CEO_             Mailing Address: 1620 Fifth Avenue Suite 900
                                    San Diego, CA 92101     Phone: (619) 230-0531
Date: _7/21/08_                     Date: _7-28-08_

Attachment A:  FACILITY INFORMATION

Tax ID: _200319606_                          Practice Name: _Productive MD, LLC_

NPI: _1578560785_
     National Provider Identifier            Group / IPA Affiliation: _____

Subspecialty 1: _Cardiopulmonary Exercise_
_~~Testis~~ Test_

Subspecialty 2: _Pulmonary Function Test_   Primary Address: _330 Mallory Station Rd_
Subspecialty 3 - _Resting Metabolic Rate Test_
State Lic#: _Not Required_  / Yr.____         _F17, Franklin TN 37067_

_ProductiveMD performs tests in_             County: _Williamson_
_PCP's office under his/her_                 Phone: _6157780348_ Fax: _6157780470_
_Supervision - We file the technical_        Email: _jmc@productivemd.com_
_component while pcp files_
_professional component._                    _Other Practice and/or Billing Address?_ Yes €/ No €
                                             _If "yes", attach page with additional information_

                                             Hospital Affiliations (list name, date and type):

**Provider agrees to mark "N/A" next to any blank that is not applicable to Provider's business.**

Page 2



Dear Provider:

Welcome to Three Rivers Provider Network. Enclosed with this contract, is a Quick Reference guide to assist your staff in working with the TRPN members.

We request that you send all updates monthly, so we can forward this information to our payers. We notify our payers of the changes, additions, and terminations on every fifteenth of the month. These updates may be mailed, faxed (619-230-1500), or emailed to trpndataentry@trpnppo.com to the attention of Cristina Maldonado (619-230-8695). If you have any questions, comments or concerns please contact Mylessa Esmele at (619-233-2884).

Again, we welcome you to Three Rivers Provider Network and look forward to a long and mutually prosperous relationship.


Sincerely,

*Blaine D Pollah*

Blaine D. Pollock,
President


1620 5th Avenue San Diego, CA 92101
619-230-0502 · 800-966-8770 · FAX 619 230-1500

# THREE RIVERS PROVIDER NETWORK
## Quick Reference Guide

1620 5th Avenue Suite 900
San Diego, CA 92101

**Provider Contracting:**

| | | |
|---|---|---|
| | Cande Quintana<br>cquintana@trpnppo.com | 619-230-0502 |
| | Micky Musolf<br>mmusolf@trpnppo.com | 619-230-0531 |
| | Susan Antonio<br>santonio@trpnppo.com | 619-233-2883 |
| | Lani Hazelton<br>lhazelton@trpnppo.com | 619-358-9429 |
| | Regina Wolgamott<br>rwolgamott@trpnppo.com | 619-564-8264 |
| | Christopher Majomut<br>cmajomut@trpnppo.com | 619-269-3796 |
| | Josh Majomut<br>jmajomut@trpnppo.com | 619-230-0424 |
| | Seth Breeden<br>sbreeden@trpnppo.com | 619-230-0530 |
| **Provider Relations/Updates:** | Mylessa Esmele<br>mesmele@trpnppo.com | 619-233-2884 |
| | Cristina Maldonado<br>trpndataentry@trpnppo.com | 619-230-8695 |
| **Contracting & Appeals Contact:** | Customer Service | 800-966-8776 |
| | Trinh Mach<br>mach@trpnppo.com | 619-546-8452 |
| | Deborah Hay<br>dhay@trpnppo.com | 619-230-0503 |
| | Camille Wheeler<br>cwheeler@trpnppo.com | 619-230-0769 |

1

|                                   | Erika Fuerte<br>efuerte@trpnppo.com        | 619-230-6616 |
|-----------------------------------|--------------------------------------------|--------------|
|                                   | Arthur Maldonado<br>amaldonado@trpnppo.com | 619-230-0534 |
|                                   | Leyna Ragsdale<br>lragsdale@trpnppo.com    | 619-230-0532 |
| **Medical Management:**           | See ID Card                                |              |
| **Customer/Member Services:**     | See ID Card                                |              |
| **Claims Inquiry:**               | See ID Card                                |              |
| **Prior Auth./Benefits & Eligibility:** | See ID Card                          |              |
| **Co-pays:**                      | See ID Card                                |              |
| **Electronic Claims Submission**  | Available, but not required                |              |
| **Mail Claims to:**               | See ID Card                                |              |
| **Claim Filing Limit:**           | 180 days from date of service              |              |
| **Claim Appeal Limit:**           | 90 days from date of receipt of payment    |              |
| **Claim Appeals/Problems:**       | 800-966-8776<br>FAX: 619-230-1500          |              |
| **Contracted Labs:**              | see web site<br>www.trpnppo.com            |              |
| **Contracted Radiology:**         | see web site<br>www.trpnppo.com            |              |

**TRPN does not assign Primary Care Providers**

| **Contracted Hospitals** | see web site<br>www.trpnppo.com |
|--------------------------|----------------------------------|

## TRPN QUICK REFERENCE GUIDE

**Ownership:** Blaine Pollock, President

**Provider Information:** TRPN clients agree to list all participating providers in provider directories and maintain the information as long as the agreement is in effect.

2

TRPN has a new web site where members and providers may access providers nationally: www.trpnppo.com

**Payment:** TRPN shall require Clients to process and reimburse the "Provider" within thirty (30) calendar days upon the receipt by the Claims Administrator of *clean* claims.

**Medical Records:** If required to process claim, records shall be requested within ten (10) calendar days of original receipt of claim, such claims shall then be processed promptly and payment made to Provider within ten (10) calendar days of the receipt by the Claims Administrator of the requested records.

**Reimbursement:** Providers and facilities will be paid according to reimbursement information as listed in Attachment A of the contract for all **covered** service

3



# THREE RIVERS PROVIDER NETWORK

## 1620 FIFTH AVE

### SAN DIEGO, CA  92101

### 619-230-0531

### FAX - 619-230-8213

---

### FACSIMILE TRANSMITTAL SHEET

---

From ~~To~~: Jean                    To ~~FROM~~ MICKY MUSOLF - (619)230-0531

---

DATE:

---

FAX NUMBER  615-778-0470          TOTAL # OF PAGES INC. COVER:

---

THIS CAN BE FAXED BACK UPON COMPLETION

---

Thank you for giving me the opportunity to send out information for you to review. Three Rivers is a nationwide PPO network with offices in New York and California. Our members have nominated your providers and facility to participate with our PPO network. We want to be able to direct our members to the best physicians, facilities, and top services possible. Through our unique relationships with our over 300 payors we are able to offer our providers no fee schedules and higher reimbursement rates on total billed charges. I am sending you a contract proposal to review with a higher reimbursement rate than what is usually offered to our providers, **80% reimbursement** on your total billed charges.

If there is any additional information you may need or and questions you may have please feel free to email me or call me. Hope to hear from you soon.

Thanks,

Micky Musolf
mmusolf@trpnppo.com

## THREE RIVERS PROVIDER NETWORK
## AGREEMENT WITH

This Agreement is made this  21  day of July 2008, by and between Three Rivers Provider Network, Inc., a Nevada Corporation ("TRPN") and  Productive MD, LLC , a **Facility** of health care services. TRPN contracts with hospitals, physicians, ancillaries and entities hereinafter referred to as "Facility" rendering medical and health care services at pre-determined rates as follows.

1. Clients, Covered Services, Contract Rates: TRPN contracts with insurance companies, third party administrators, health plans, individuals and entities hereinafter referred to as "Clients" that directly or indirectly access TRPN contracted providers for covered services. Covered Services shall include all services that are medically necessary including health, workers' compensation, automobile and general liability. The rate used in conjunction with this Agreement will be a twenty percent (**20%**) discount off of Provider's usual charge for covered services, less any applicable co-payments, co-insurance or deductibles. Clients are obligated to make payment directly to provider only at the contracted rate as payment in full. Provider shall not balance bill the patient upon receipt of payment in full at the contracted rate. TRPN has no responsibility to make payments on behalf of Clients. Payments shall be made within thirty (30) calendar days of receipt of clean claim. Where a state mandated fee schedule exists for workers compensation, provider agrees to accept a ten percent (10%) discount below the state schedule for that service. Payments made and cashed by the provider shall be accepted as payment in full providing the total payment including the member's portion is not less than the contracted rate.

2. Licenses, Standards of Care: Provider agrees to deliver health care services that meet all legal standards of care complying with applicable Federal, State and Local laws and maintains the standards of NCQA and/or JCAHO. The provider is delegated by TRPN to carry out and/or assign credentialing responsibilities. Evidence of such licenses, certificates and standards shall be made available to TRPN upon request.

3. Term and Termination: This Agreement shall continue in effect for a period of two (2) years with automatic successive one (1) year terms. This Agreement may be terminated by either party without cause with a ninety (90) day prior written notice to the other party at the mailing addresses listed under the signatures. This Agreement may be immediately terminated with cause by TRPN should Provider lose applicable licenses, malpractice coverage, fail to honor the applicable contracted rates pursuant to this Agreement, or if any information provided in Attachment A is illegible, incomplete, or invalid.

4. Dispute Resolution: This Agreement shall be construed and interpreted in accordance with the laws of the State of Nevada. Provider agrees to meet and confer in good faith to resolve any disputes that may arise under this Agreement. If a dispute between TRPN and Provider arises out of this Agreement and is not resolved, either party may submit the dispute to arbitration which shall be commenced and conducted in accordance with the Rules of Practice and Procedures of the Judicial Arbitration and Mediation Services, Inc. ("JAMS") as in effect at the time ("JAMS Rules").

5. Attachment A: All information provided in Attachment A of this Agreement is complete and accurate to the best of Provider's knowledge and Provider shall immediately notify TRPN of any changes thereto. Provider agrees to mark "N/A" next to any blank that is not applicable to Provider's business.

6. Faxed Signatures: The parties agree that facsimile signatures of authorized representatives of the parties shall legally bind the parties to the terms and conditions of this Agreement as if the signatures were original and shall be considered evidence of a fully executed Agreement.

Page 1

IN WITNESS WHEREOF, the authorized parties hereto have executed this Agreement and intend to be bound thereby.

**Provider Name (please print):**

Productive MD, LLC

**TRPN: Attn: Micky Musolf - Contracting**
**THREE RIVERS PROVIDER NETWORK**

Signature: _____

Signature _____

Title: President / CEO

Date: 7/21/08

Name: Todd Breeden Chief Operating Officer
Mailing Address: 1620 Fifth Avenue Suite 900
San Diego, CA 92101    Phone: (619) 230-0531
Date: _____

**Attachment A:  FACILITY INFORMATION**

Tax ID: 200319606

NPI: 1578560785
National Provider Identifier

Subspecialty 1: Cardiopulmonary Exercise ~~~~~~ Test

Subspecialty 2: Pulmonary Function Test
Subspecialty 3 - Resting Metabolic Rate Test
State Lic#: Not Required / Yr _____

ProductiveMD performs tests in PCP's office under his/her supervision. We file the technical component while pcp files professional component.

Practice Name: Productive MD, LLC

_____

Group / IPA Affiliation: _____

_____

Primary Address: 330 Mallory Station Rd
F 17, Franklin TN 37067

County: Williamson
Phone: 615 7758348 Fax: 615-778-0470

Email: jmc@productivemd.com

*Other Practice and/or Billing Address? Yes €/ No €*
*If "yes", attach page with additional information*

Hospital Affiliations (list name, date and type):

_____

_____

_____

_____

Provider agrees to mark "N/A" next to any blank that is not applicable to Provider's business.

Page 2

Case 3:12-cv-00052  Document 98  Filed 01/22/13  Page 108 of 127 PageID #: 2272

Y - TRPN Noted
N - TRPN Not Noted
Blank - Unable to Determine

**Attachment I**
**TRPN Notation on EOBs**
Total of 113 Claims Include TRPN

| PATIENT IDENTIFIER NUMBER | TRPN on EOB? Y/N |
|---|---|
| 3 | |
| 4 | Y |
| 5 | Y |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 11 | Y |
| 12 | |
| 13 | |
| 14 | Y |
| 15 | |
| 16 | Y |
| 17 | Y/N |
| 18 | Y |
| 19 | Y |
| 20 | Y |
| 22 | |
| 23 | |
| 25 | Y |
| 26 | Y |
| 27 | |
| 28 | Y |
| 29 | Y |
| 30 | |
| 31 | |
| 32 | Y |
| 33 | Y |
| 34 | Y |
| 35 | |
| 36 | Y |

**Attachment I**
**TRPN Notation on EOBs**
Total of 113 Claims Include TRPN

| | |
|---|---|
| 37 | Y |
| 38 | Y |
| 39 | Y |
| 40 | Y |
| 41 | Y |
| 42 | Y |
| 43 | |
| 45 | Y |
| 46 | Y |
| 47 | |
| 48 | Y |
| 49 | Y |
| 50 | |
| 51 | Y |
| 52 | |
| 53 | |
| 54 | Y |
| 55 | Y |
| 56 | |
| 58 | Y |
| 59 | Y |
| 60 | |
| 61 | Y |
| 62 | |
| 63 | Y |
| 64 | |

Y - TRPN Noted
N - TRPN Not Noted
Blank - Unable to Determine

| | |
|---|---|
| 65 | |
| 66 | Y |
| 67 | |
| 68 | |
| 69 | Y |
| 70 | N |
| 71 | |
| 72 | Y |
| 73 | Y |
| 74 | Y |
| 75 | |
| 76 | |
| 77 | |
| 78 | Y |
| 79 | Y |
| 80 | |
| 81 | Y |
| 82 | |
| 83 | Y |
| 84 | Y |
| 85 | Y |
| 86 | Y |
| 87 | N |
| 88 | Y |
| 89 | Y/N |

Y - TRPN Noted
N - TRPN Not Noted
Blank - Unable to Determine

| | |
|-----|---|
| 90 | Y |
| 91 | Y |
| 92 | |
| 93 | |
| 94 | |
| 95 | |
| 96 | N |
| 97 | Y |
| 98 | Y |
| 99 | |
| 100 | Y |
| 101 | |
| 102 | |
| 103 | Y |
| 104 | Y |
| 105 | Y |
| 106 | Y |
| 107 | Y |
| 108 | Y |
| 109 | Y |
| 110 | Y |

Y - TRPN Noted
N - TRPN Not Noted
Blank - Unable to Determine

**Attachment I**
**TRPN Notation on EOBs**
Total of 113 Claims Include TRPN

| | |
|-----|-----|
| 111 | Y/N |
| 112 | Y/N |
| 113 | |
| 114 | Y |
| 115 | Y |
| 116 | Y |
| 117 | |
| 118 | Y |
| 119 | |
| 120 | Y |
| 121 | Y |
| 122 | |
| 123 | Y |
| 124 | Y |
| 125 | Y |
| 126 | |
| 127 | |
| 128 | |
| 129 | |
| 130 | Y |
| 131 | Y |

**Attachment I**
**TRPN Notation on EOBs**
Total of 113 Claims Include TRPN

| | |
|---|---|
| 132 | Y/N |
| 133 | Y/N |
| 135 | Y |
| 136 | |
| 137 | Y |
| 138 | Y |
| 139 | Y |
| 140 | Y |
| 141 | Y |
| 142 | |
| 143 | Y |
| 144 | Y |
| 145 | Y |
| 146 | Y |
| 147 | Y |
| 148 | Y |
| 149 | Y |
| 150 | |
| 151 | |
| 152 | |
| 153 | Y |
| 154 | Y |
| 155 | Y |
| 156 | |
| 157 | Y/N |
| 158 | Y |

Y - TRPN Noted
N - TRPN Not Noted
Blank - Unable to Determine

**Attachment I**
**TRPN Notation on EOBs**
Total of 113 Claims Include TRPN

| | |
|-----|---|
| 159 | Y |
| 160 | Y |
| 161 | Y |
| 162 | Y |
| 163 | Y |
| 164 | Y |
| 165 | Y |
| 166 | Y |
| 167 | |
| 168 | Y |
| 169 | Y |
| 170 | N |
| 171 | Y |
| 172 | Y |
| 173 | N |
| 174 | Y |
| 175 | Y |
| 176 | Y |
| 177 | |
| 178 | Y |
| 179 | Y |
| 180 | Y |
| 181 | |
| 182 | Y |

# ATTACHMENT J

**Additional Detail Regarding Appeal Status:**

Plaintiff has attempted to provide the appropriate level of specific detail regarding the specific status of Aetna's last communication regarding Plaintiff's claims and appeals.[1] To the extent that the Court deems additional detail appropriate, Plaintiff seeks leave to provide more specific information as to these individual claims. Claims that Aetna does not admit have been administratively exhausted vary by patient, and it is not feasible to describe each situation in this exhibit.

The claims fall into the general categories as follows:

1) Defendant admits that Plaintiff exhausted administrative remedies;

2) Plaintiff's files reflect a formal appeal letter;

3) No response has been received by Plaintiff despite the passage of an inordinate amount of time since Plaintiff's last step in the process;

4) Defendant has contended that information provided by Plaintiff in response to Defendants' requests was insufficient to enable Defendants to process the claims, or not received, without providing any indication in the communication that an appeal of the

---

[1] The Second Amended Complaint describes why further efforts by Plaintiff are futile, and why Plaintiff's actions adequately exhaust administrative remedies, even if Aetna has not sent a response expressly stating that the administrative remedies are exhausted.

decision was available or permitted, but has failed to consider this a "final adjudication;"

5) Other.

Plaintiff has complied with appeal procedures specified by Defendant to the maximum extent possible as of the filing of the Complaint. Aetna's conduct demonstrates that further actions will be futile and that Plaintiff has adequately exhausted administrative remedies.

2

| PATIENT ID # | Last Response from Aetna | Final Determination Letter | Aetna Response Overdue | Claims that Aetna concedes have been Admin. Exhaust. |
|---|---|---|---|---|
| 3 | add info requested 9/9/2010 add info sent 10/7/2010 | | X | |
| 4 | EOB dated 03/23/2010 stating expenses need further review and requested add info. Second EOB dated 05/12/2010 stating the information previously requested was not received. | | | |
| 5 | LAST APPEAL SENT 5/22/12 NO RESPONSE RECEIVED FROM AETNA | | X | |
| 6 | Last response from Aetna EOB dated 05/12/11 stating original decision upheld | X | | |
| 7 | FINAL 3/28/2011 | X | | X |
| 8 | Plaintiff is compiling additional information. | | | |
| 9 | 1 EOB (requested info not received) | | | |
| 11 | last response from aetna EOB DATED 10/21/11 (THESE EXPENSES REQUIRE FUTHER REVIEW) | | X | |
| 12 | Last response from aetna was EOB dated 1/13/2011 stating the information previously requested was not received. | | | |
| 13 | FINAL: PREVIOUS DETERMINATION UPHELD 11/27/12 | X | | |
| 14 | final 11/27/12 | X | | |
| 15 | Final received 10/4/2011 previous determination upheld | X | | |
| 16 | Last response from aetna was EOB dated 05/02/2011 stating based on info received these services were not provided | | | X |
| 17 | Last response from aetna wass a letter stating that aetna did not receive the appeal request within the allowed timeframe. | | | |
| 18 | Final received 6/13/12 previous dtermination upheld | X | | X |
| 19 | Last Response from Aetna was EOB dated 09/15/2010 stating info requested was never received. Add. Info was sent 9/8/2010. | | X | |
| 20 | EOB dated 6/24/2009 stating Services by a provider who does not participate with Aetna Requires Pre-certification. Also stated that these expenses need further review. lst Appeal sent 7/12009, second appeal sent 08/12/2009 | | X | |

| PATIENT ID # | Last Response from Aetna | Final Determination Letter | Aetna Response Overdue | Claims that Aetna concedes have been Admin. Exhaust. |
|---|---|---|---|---|
| 22 | EOB dated 8/4/2009 stating add info will be requested. !st appeal sent 8/17/2009. EOB dated 4/15/2010 stating DID, DSN, DLW. Second appeal sent 5/20/2010. No other responses on file | | X | |
| 23 | EOB dated 08/04/2009 stating add info will be requested. ProductiveMD appeal dated 8/17/2009 and second Appeal dated 05/20/2010 | | X | |
| 25 | Plaintiff is compiling additional information. | | | |
| 26 | Final 4/15/12 | X | | X |
| 27 | add info requested 12/5/11, add info sent 12/20/11, add info sent again 2/15/12, EOB dated 12/9/12 stating add info never received. EOB dated 1/27/12 stating add info never received. | | | |
| 28 | Last response from Aetna was EOB dated 3/26/2010 stating these expenses require further review | | | |
| 29 | letter from Aetna Requesting add info 9/23/2010. Add info sent 10/6/2010 | | X | |
| 30 | Plaintiff is compiling additional information. | | | |
| 31 | FINAL 2/15/2010 | X | | X |
| 32 | Located aetna letter dated 3/10/2011 requesting add info. Add info sent by productivemd 3/31/2011. EOB dated 4/29/2011 stating the information was never received. | Final EOB? | | |
| 33 | Plaintiff is compiling additional information. | | | |
| 34 | aetna letter dated 9/14/10 requesting add info. Add. Info sent 10/7/10.EOB dated 10/29/10 stating expenses need further review.EOB dated 11/5/2010 stating based on information received services were not provided. | | | |
| 35 | aetna letter dated 8/1/2011 requesting add info. 2nd level appeal sent 8/10/2011 | | X | |
| 36 | EOB stating these expenses require further review and add info is needed (not sure of date of EOB) | | X | |
| 37 | Final 1/24/12 previous determination upheld | X | | X |
| 38 | Plaintiff is compiling additional information. | | | |

| PATIENT ID # | Last Response from Aetna | Final Determination Letter | Aetna Response Overdue | Claims that Aetna concedes have been Admin. Exhaust. |
|---|---|---|---|---|
| 39 | add info requested 9/16/10. add info sent to aetna 10/7/10. EOB dated 11/09/10 stating based on info received these services were not provided. | | | |
| 40 | EOB dated 4/23/10 stating these expenses need further review. Aetna letter dated 4/28/10 requesting add info. EOB dated 5/7/10 stating these expenses need further review. No other responses or appeals on file | | | |
| 41 | Aetna letter dated 3/21/11 requesting add info. Add. Info sent 3/31/11. EOB dated 5/4/11 stating based on the informatin provided this expense does not meet the requirement od necessity of the members plan benefits and is not covered. | | | |
| 42 | FINAL 9/22/2011another final letter sent 11/3/2011 | X | | X |
| 43 | Aetna letter dated 8/22/11 requesting add info. Add info was sent 8/29/141. Appeal letter 3rd level dated 2/29/12. No other aetna response on file. | | X | |
| 45 | | | | X |
| 46 | letter from aetna dated 5/5/10 requesting add. Info. EOB dated 5/14/10 stating these expenses n eed further review.Appeal 1st level sent 6/17/10. | | X | |
| 47 | Plaintiff is compiling additional information. | | | |
| 48 | EOB dated 03/31/10 stating these expenses need further review. EOB dated 4/9/10 stating these expenses require further review. EOB dated 5/19/10 stating the information previously requested was never received.the claim was denied. EOB dated 5/28/10 the information requested was never received.Multiplan expedited agreement was faxed on 3/31/10 (less deductible, co-insurance, or co-payment) for the amount of 199.02. we did not agree to the expedited agreement | | | |
| 49 | Aetna letter dated 2/25/10 requesting add info. EOB dated 2/26/10 stating these expenses require further reviwe.Appeal letter dated 3/10/10 1st level. EOB dated 4/12/10 stating add info never received. | Final EOB? | | |

| PATIENT ID # | Last Response from Aetna | Final Determination Letter | Aetna Response Overdue | Claims that Aetna concedes have been Admin. Exhaust. |
|---|---|---|---|---|
| 50 | add info faxed 8/31/11.add info sent 9/12/11. EOB dated 11/15/11 stating that need add info. 1st level appeal sent 11/22/11 | | X | |
| 51 | add info requested 11/18/10. Add. Info sent 12/16/10. no other appeals or responses on file | | X | |
| 52 | add info rerquested 8/18/11. add info sent 9/1/11.Appeal letter 3rd level sent. | | X | |
| 53 | Aetna requested add info 7/14/2011. Add info was sent 11/7/2011.!st level appeal sent 2/29/12. No other response or appeals on file. | | X | |
| 54 | Letter from aetna dated 2/22/10 requestimng add info. EOB dated 2/23/2010 stating FR. Add. Info sent 3/4/10. !st level of appeal sent 3/10/10. EOB dated 3/22/10 stating FR. 3/23/10 stating FR. EOB dated 3/25/10 stating FR. EOB stating FR not sure of date on this one. @nd level appeal sent 5/20/10 | | X | |
| 55 | EOB dated 11/23/2009 stating FR. EOB dated 1/11/2010. No other responses or appeals on file for this claim, | | | |
| 56 | Plaintiff is compiling additional information. | | | |
| 58 | Add. Info sent 9/8/10. EOB Dated10/28/2010 stating code 415. 1st level appeal sent 11/7/2010. This is the only info I have on this patient at this moment. | | X | X |
| 59 | Letter from Aetna Requesting add. Info dated 6/10/2010. EOB dated 6/11/2010 stating FR. !st level of appeal sent 6/21/2010. EOB stating code 415. Add. Info sent 8/19/2010 | | X | |
| 60 | Letter from aetna requesting add. Info dated 11/18/2009.EOB dated 11/20/2009 stateing code FR. Add. Info sent 12/10/2009. 1st Level of Appeal sent 12/4/2010. EOB dated 1/7/2010 stating code F17 | | X | |
| 61 | EOB dated 12/25/2009 stating code FR. Letter from Aetna requseting add. Info dated 12/30/2009.EOB dated 1/8/2010 stating code FR.Add. Inof sent 1/12/2010.EOB dated 2/4/2010 stating code FR.1st level appeal sent 3/10/2010. No other responses from aetna. | | X | |

| PATIENT ID # | Last Response from Aetna | Final Determination Letter | Aetna Response Overdue | Claims that Aetna concedes have been Admin. Exhaust. |
|---|---|---|---|---|
| 62 | 1st level appeal sent 8/17/2009 this is all I can locate on this patient At this moment | | X | |
| 63 | Letter from Aetna dated 3/23/2011stating member is responsbile because of non - participating provider was used.EOB dated 6/1/11stating code F17.3rd level of appeal sent 9/9/2011.EOB dated 9/16/2011 stating code 415. | Final EOB? | | |
| 64 | FINAL 5/21/12 | X | | X |
| 65 | Plaintiff is compiling additional information. | | | |
| 66 | Add info requested 8/19/2011. Add. Info sent 8/19/2011. EOB dated 10/10/2011 stating F17 and E73. add info sent a third time on 10/21/2011(not sure when it was sent the second time) | | X | |
| 67 | letter from aetna requesting add info dated 12/1/2011.Add. Info sent 12/20/11.EOB dated 1/20/12 stating F17 and E73.Add. Info sent a second time 2/29/12. 1st level appeal sent 4/4/2012. Letter from aetna dated 4/17/12 upholding original decision. 2nd appeal resent 4/26/12. 3rd appeal 6/4/2012 | | X | X |
| 68 | EOB dated 6/4/2010 stating code DSF.EOB dated 6/7/2010 stating DSF.Add. Info sent 6/16/2010. 1st appeal sent 6/21/2010. EOB dated 7/9/2010 Aetna paid 177.68 on the claim . Letter from aetna dated 7/16/2010 stating denial upheld. 2nd appeal sent 7/20/2010. | | X | X |
| 69 | Letter requesting add info dated 5/26/2010. Add. Info sent 6/22/2010. EOB dated 7/15/2010 stating information requested was never received.EOB dated 9/9/10 stating based on info received services were not provided, the members plan of benefits provides coverage for services or supplies that aetna determines necessary. | | | X |
| 70 | EOB dated 2/5/2010 stating these expenses need further review.EOB dated 2/19/2010 stating these expenses require further review.Appeal dated 3/10/2010 !st level. NO other responses on file. | | X | X |

| PATIENT ID # | Last Response from Aetna | Final Determination Letter | Aetna Response Overdue | Claims that Aetna concedes have been Admin. Exhaust. |
|---|---|---|---|---|
| 71 | Plaintiff is compiling additional information. | | | |
| 72 | EOB dated 7/3/2009 stating these expenses require further review. EOB dated7/10/2009 stating these expenses require further review.Letter from Aetna Dated 8/4/2009 requesting add info.Add. Info was sent 8/12/2009.EOB dated 8/26/2009 stating the information was never received. EOB dated 8/27/2009 stating the information was never received. Appeal letter dated 9/8/2009 1st level. | | X | |
| 73 | Plaintiff is compiling additional information. | | | |
| 74 | EOB dated 4/8/2010 stating these expenses require further review.EOB dated 5/27/2010 stating infor requested never received.unable to locate any othe responses or appeals. | | X | |
| 75 | Final 8/3/2010 | X | | X |
| 76 | Final 11/5/2011 | X | | X |
| 77 | Plaintiff is compiling additional information. | | | |
| 78 | Plaintiff is compiling additional information. | | | |
| 79 | Plaintiff is compiling additional information. | | | |
| 80 | Plaintiff is compiling additional information. | | | |
| 81 | Plaintiff is compiling additional information. | | | |
| 82 | | | | X |
| 83 | Plaintiff is compiling additional information. | | | |
| 84 | Plaintiff is compiling additional information. | | | |
| 85 | Plaintiff is compiling additional information. | | | |
| 86 | Plaintiff is compiling additional information. | | | |
| 87 | FINAL 9/27/2011 | X | | X |
| 88 | FINAL 3/17/2011 | X | | X |
| 89 | Plaintiff is compiling additional information. | | | |
| 90 | Final 9/27/2011 | X | | X |
| 91 | Plaintiff is compiling additional information. | | | |

| PATIENT ID # | Last Response from Aetna | Final Determination Letter | Aetna Response Overdue | Claims that Aetna concedes have been Admin. Exhaust. |
|---|---|---|---|---|
| 92 | Plaintiff is compiling additional information. | | | |
| 93 | Plaintiff is compiling additional information. | | | |
| 94 | Plaintiff is compiling additional information. | | | |
| 95 | Plaintiff is compiling additional information. | | | |
| 96 | Plaintiff is compiling additional information. | | | |
| 97 | FINAL 9/27/2011 | X | | X |
| 98 | Plaintiff is compiling additional information. | | | |
| 99 | Plaintiff is compiling additional information. | | | |
| 100 | FINAL 2/24/2012 | X | | X |
| 101 | Plaintiff is compiling additional information. | | | |
| 102 | | | | X |
| 103 | Plaintiff is compiling additional information. | | | |
| 104 | Plaintiff is compiling additional information. | | | |
| 105 | FINAL 9/27/2011 | X | | X |
| 106 | Final 9/21/2011 | X | | X |
| 107 | Plaintiff is compiling additional information. | | | |
| 108 | Plaintiff is compiling additional information. | | | |
| 109 | Final 9/21/2011 another Final sent 11/3/2011 | X | | X |
| 110 | Plaintiff is compiling additional information. | | | |
| 111 | Final 10/18/2011 | X | | X |
| 112 | FINAL 9/27/2011 | X | | X |
| 113 | Plaintiff is compiling additional information. | | | |
| 114 | Plaintiff is compiling additional information. | | | |
| 115 | Plaintiff is compiling additional information. | | | |
| 116 | Plaintiff is compiling additional information. | | | |
| 117 | Plaintiff is compiling additional information. | | | |
| 118 | Plaintiff is compiling additional information. | | | |
| 119 | Plaintiff is compiling additional information. | | | |

# Attachment J
## Additional Detail Regarding Appeal Status

| PATIENT ID # | Last Response from Aetna | Final Determination Letter | Aetna Response Overdue | Claims that Aetna concedes have been Admin. Exhaust. |
|---|---|---|---|---|
| 120 | FINAL 12/5/2011 | X | | X |
| 121 | Plaintiff is compiling additional information. | | | |
| 122 | Plaintiff is compiling additional information. | | | |
| 123 | Plaintiff is compiling additional information. | | | |
| 124 | FINAL 1/10/2012 | X | | X |
| 125 | Plaintiff is compiling additional information. | | | |
| 126 | Plaintiff is compiling additional information. | | | |
| 127 | Plaintiff is compiling additional information. | | | |
| 128 | Plaintiff is compiling additional information. | | | |
| 129 | Plaintiff is compiling additional information. | | | |
| 130 | Plaintiff is compiling additional information. | | | |
| 131 | Plaintiff is compiling additional information. | | | |
| 132 | FINAL 12/16/2011 | X | | X |
| 133 | Plaintiff is compiling additional information. | | | |
| 135 | Plaintiff is compiling additional information. | | | |
| 136 | Plaintiff is compiling additional information. | | | |
| 137 | Plaintiff is compiling additional information. | | | |
| 138 | Plaintiff is compiling additional information. | | | |
| 139 | Plaintiff is compiling additional information. | | | |
| 140 | Final 1/16/2012 | X | | X |
| 141 | Final 12/19/2011 | X | | X |
| 142 | Plaintiff is compiling additional information. | | | |
| 143 | | | | X |
| 144 | Last response from aetna wasEOB dated 4/22/2010 stating these expenses need further review Last appeal sent was 06/21/2010 | | X | |
| 145 | | | | X |
| 146 | Final received 6/13/12 previous dtermination upheld | X | | X |
| 147 | the only appeal I have on record was sent 3/14/12 it was for add. info | | X | |

| PATIENT ID # | Last Response from Aetna | Final Determination Letter | Aetna Response Overdue | Claims that Aetna concedes have been Admin. Exhaust. |
|---|---|---|---|---|
| 148 | This patients claim was resubmitted to Healthspring | | | |
| 149 | EOB dated 2/17/12 stating expenses need further review, requested add info. Aetna letter dated 2/16/12 requesting add inof. Add. Info sent by productiveMD 2/24/12 | | X | X |
| 150 | EOB dated 2/17/12 stating expenses need further review, requested add info. Aetna letter dated 2/16/12 requesting add inof. Add. Info sent by productiveMD 2/24/12 | | X | X |
| 151 | | | | X |
| 152 | Final 12/18/2012 Aetna paid 966.40 on this test | X | | |
| 153 | Final 11/21/12 | X | | |
| 154 | FINAL 4/20/12 | X | | X |
| 155 | FINAL 8/29/12 | X | | |
| 156 | FINAL 8/29/12 | X | | |
| 157 | FINAL 10/11/2011 | X | | |
| 158 | Letter from aetna requesting add info dated 3/8/12. Appeal dated 4/12/12 1st level. EOB stating these expenses require further review. | Final EOB? | | |
| 159 | FINAL 4/23/12 | X | | X |
| 160 | Add. Info requested 2/14/12. Add. Info sent 2/21/12. EOB dated 2/27/12 stating these expenses require further review. EOB dated 3/9/12 stating these expenses require further review. EOB dated 3/16/12 stating remark code 413. | | | |
| 161 | FINAL 10/6/2011 | X | | X |
| 162 | EOB dated 3/15/12 stating FR and requesting add info. Add. Info sent 3/16/12. EOB dated 4/11/12 stating code 413. !st level appeal sent 4/12/12. EOB stating FR not sure on the date of this EOB. | | | X |
| 163 | Final 3/10/2012 | X | | X |
| 164 | Add. Info sent 3/14/12. Add info sent again 3/26/12. 1st level of appeal sent 4/12/12. No other response or appeals on file. | | X | |
| 165 | FINAL 4/20/2012 | X | | X |
| 166 | FINAL 4/20/2012 | X | | X |
| 167 | Plaintiff is compiling additional information. | | | |
| 168 | final 3/30/2012 | X | | X |
| 169 | FINAL 4/23/2012 | X | | X |

**Attachment J**
**Additional Detail Regarding Appeal Status**

| PATIENT ID # | Last Response from Aetna | Final Determination Letter | Aetna Response Overdue | Claims that Aetna concedes have been Admin. Exhaust. |
|---|---|---|---|---|
| 170 | Final 10/6/2011 | X | | X |
| 171 | | | | X |
| 172 | FINAL 4/14/2012 | X | | X |
| 173 | Plaintiff is compiling additional information. | | | |
| 174 | Plaintiff is compiling additional information. | | | |
| 175 | Plaintiff is compiling additional information. | | | |
| 176 | Plaintiff is compiling additional information. | | | |
| 177 | Plaintiff is compiling additional information. | | | |
| 178 | Plaintiff is compiling additional information. | | | |
| 179 | Plaintiff is compiling additional information. | | | |
| 180 | Plaintiff is compiling additional information. | | | |
| 181 | | | | X |
| 182 | | | | X |