IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

PRODUCTIVE MD, LLC )
) No. 3-12-0052
v. )
)
AETNA HEALTH, INC; and AETNA )
LIFE INSURANCE COMPANY, INC. )

O R D E R

Pursuant to the order entered November 15, 2012 (Docket Entry No. 82), a hearing was held on November 27, 2012, at which time the following matters were addressed:

1. To the extent that the defendants sought to preclude all further discovery in this case, their motion for a protective order (Docket Entry No. 55) was DENIED.

2. To the extent that the defendants rely upon the order entered July 26, 2012 (Docket Entry No. 44) to preclude further discovery, the Court found that the defendants read that order too narrowly inasmuch as the order was only intended to provide that there were no remaining discovery issues encompassed by the referral order entered June 21, 2012 (Docket Entry No. 40).[1]

3. In all other respects, the defendants' motion for protective order (Docket Entry No. 55) was GRANTED in part and DENIED in part and the plaintiff's motion to compel (Docket Entry No. 74) was GRANTED in part and DENIED in part as provided herein.[2]

4. Defendants' counsel contended that they had provided the same information requested by the plaintiff in request for admission no. 29 on three prior occasions, specifically in June of 2012, when they provided a listing of the professional components paid by claim number, date of service, amount requested, and amount paid, see Docket Entry Nos. 33 and 42-2; in July of 2012, when they

---

[1] By the June 21, 2012, order, the "present discovery disputes between the parties," including the then-pending motion to determine compliance (Docket Entry No. 39) were referred to the Magistrate Judge. While discovery issues later ripened into disputes, as of the July 26, 2012, order, all "current discovery issues" had been addressed and resolved.

[2] The portions of the defendants' motion for a protective order (Docket Entry No. 55) and the plaintiff's motion to compel (Docket Entry No. 74) relating to the requests for admission are mirror images of each other, providing the parties' respective positions on the same issues.

provided the same information by CPT code,[3] as the plaintiff had requested, see order entered July 26, 2012 (Docket Entry No. 44); and when they provided the raw data comprising 80,000 documents divided by patient and professional component claim files.

Defendants' counsel conceded that in each production some professional claims are missing. However, defendants' counsel unequivocally represented that no claim files or documents have been withheld. They were not able to provide specific explanations for why those claims would be missing, but conceivable explanations could include that no professional claim was ever made or that the claim was made but subsequently lost.

Counsel for the defendants clearly represented that, while the defendants denied payment, paid some portion of the claim, or paid all of the claim for the claims for the professional component, the defendants did not pay any of the claims for the technical component.

By request for admission no. 29, the plaintiff sought an admission from the defendants that the entries in the plaintiff's chart at Exhibit B to Docket Entry Nos. 54, 62, and 75 (Docket Entry Nos. 54-3, at 21-25; Docket Entry No. 62-1, at 33-37; and Docket Entry No. 75-1, at 33-37) were accurate so that the chart could be used in support of a motion for summary judgment or otherwise in this case. Plaintiff's counsel advised that the information on the chart came exclusively from the information provided by the defendants. Plaintiff's counsel also related that it took his paralegal approximately a week to generate the chart, although he suggested, without any specific support, that the defendants would be able to confirm the accuracy of his information much more quickly.

Although the defendants continued to correctly insist that they had provided the plaintiff with the same information in different iterations on at least three prior occasions, plaintiff's counsel explained that the information in the format set forth in Exhibit B provides specificity on the amounts allowed and paid for specific testing based on CPT codes and what the plaintiff asserts the defendants owe. As a result, the defendants were directed to respond to request no. 29.

---

[3] CPT is the acronym for Current Procedural Terminology. CPT codes are assigned to specific medical and diagnostic services.

Defendants' counsel stressed that the defendants would bear a similar burden to verify the information in the plaintiff's chart and, if ordered to do so, the plaintiff should be required to compensate the defendants for their time. The Court was disinclined to impose the costs and expenses on the plaintiff unless the defendants show that the costs would be exorbitant.

5. The Court found that the requests for admission ¶¶ 14-28, relating to the Network Agreement with Three Rivers Provider Network ("TRPN"), do not relate to any claim or defense that was asserted in this case at that time and Rule 26(b)(1) of the Federal Rules of Civil Procedure should not be read so broadly as to permit discovery for the purpose of having a sufficient basis to file an amended complaint.

The defendants were not required to respond to requests for admission ¶¶ 14-28.

6. The defendants were not required to respond to request for admission no. 30, but were directed to respond to request for admission no. 31.

The Court found that the defendants were not able to respond to the request no. 30 because the defendants do not have any assignments provided to the physicians, but found that the information at issue in request no. 31 was relevant to the issue of standing and non-assignability that will be raised by the defendants and to waiver of contractual non-assignment that the plaintiff anticipates raising in response.

7. The defendants were not required to separately respond to request for admission no. 32 since it was duplicative of request no. 29.

8. Rulings on whether the defendants should be required to respond to request nos. 33 and 35 were reserved because it was not clear whether or not the defendants had an unredacted copy of Exhibit C to Docket Entry No. 54 (Docket Entry No. 54-3, at 31-33). See also Docket Entry No. 62-1, at 38-40, and Docket Entry No. 75-1, at 38-40. The parties were directed to attempt to resolve these issues after they determined the exact contents of Exhibit C.

9. The defendants were not required to respond to request for admission no. 34 because the defendants would have to make inquiry of the plaintiff and possibly the physicians to respond.

In addition, the plaintiff can attest in an affidavit that the tests were determined solely and exclusively by what the doctors ordered.

10. The defendants were not required to respond to request for admission no. 36. However, the plaintiff has leave to serve an interrogatory on the defendants seeking the definition of the term "allowed" as used in the defendants' claim files relating to the adjudication of specific provider claims submitted for healthcare services, to which the defendants shall respond without objection.

11. The defendants were not required to respond to requests nos. 37-40. However, the plaintiff has leave to re-serve the requests with the documents to which they referred in accord with Rule 36(a)(2) of the Federal Rules of Civil Procedure. If the plaintiff is unable to obtain the documents at issue, counsel was directed to so notify the Court.

12. The plaintiff was permitted to take the deposition of Jayna Harley, the Vice President of Networks in the Southeast Region, for no more than four hours. Despite the fact that the defendants emphasized that Ms. Harley had no decision-making role in adjudicating the claims at issue in this case,[4] the Court permitted her limited deposition on the following topics: (1) the defendants' flagging the plaintiff; (2) her letters to other doctors about their using the plaintiff's services; (3) over-utilization and unbundled claims; (4) any comments she made to the plaintiff's president about the plaintiff's out-of-network versus in-network status; and (5) her personal knowledge about documents that the defendants have not produced in response to the plaintiff's discovery requests.[5]

13. Counsel for the parties were directed to meet in person and attempt to resolve or at least narrow the disputes listed in the parties' statement of discovery disputes (Docket Entry No. 85).

---

[4] Ms. Harley did, however, sign the defendants' responses to the plaintiff's interrogatories.

[5] If the parties notify the Court in advance of the date Ms. Harley's deposition is scheduled, the Court will try to be available in the event that any dispute arises relating to the scope of the deposition.

For those disputes upon which the parties are unable to reach any resolution, the parties may file any appropriate discovery motion.

14. A further hearing was scheduled on January 18, 2013, to address the discovery issues raised in the parties' statement of discovery disputes and in any subsequent motion to compel.

15. Counsel advised that they had participated in mediation with Gayle Malone in July of 2012, and had determined that settlement would not be possible at this juncture in the case.

16. Defendants' counsel suggested that it might be possible for the parties to agree to a schedule for the near future, which could include the plaintiff's filing a motion to amend the complaint or an amended complaint without the need for a motion to amend, and permitting the defendants to respond to the amended complaint, presumably with a motion to dismiss and a briefing schedule for such an anticipated motion to dismiss.

Defendants' counsel agreed to confer with the defendants and counsel agreed to confer with each other and convene a telephone conference call with the Court on November 30, 2012, to address what agreement the parties had been able to reach in regard to an amended complaint and short-term scheduling in this case.

As scheduled during the hearing on November 27, 2012, counsel for the parties called the Court on November 30, 2012, at which time the following matters were addressed:

1. Defendants' counsel advised that the defendants did not oppose the plaintiff's filing an amended complaint as long as the defendants were provided an opportunity to review the proposed amended complaint before the plaintiff filed it.

2. The plaintiff was directed to provide a copy of the proposed amended complaint with the defendants by December 19, 2012, and, assuming the defendants had no objection, to file the amended complaint by December 31, 2012.

The time for filing the amended complaint was later extended and the plaintiff's amended complaint was filed on January 22, 2013 (Docket Entry No. 98).

3. Defendants' counsel also advised that they would file a motion to sever by approximately the middle of December of 2012.

The defendants filed their motion to sever on December 26, 2012 (Docket Entry No. 86), which is now fully briefed.

Any party desiring to appeal any order of the Magistrate Judge may do so by filing a motion for review no later than fourteen (14) days from the date of service of the order. The motion for review must be accompanied by a brief or other pertinent documents to apprise the District Judge of the basis for the appeal. See Rule 72.02(b)(1) of the Local Rules of Court and Rule 72(a) of the Federal Rules of Civil Procedure.

It is so ORDERED.

JULIET GRIFFIN
United States Magistrate Judge